**Department of Health and Human Services**

**DEPARTMENTAL APPEALS BOARD**

**Civil Remedies Division**

Mikhail Strutsovskiy, M.D.,
(NPI No. 1699970491),

Petitioner,

v.

Centers for Medicare & Medicaid Services.

Docket No. C-10-48

Decision No. CR2109

Date:  April 9, 2010

**DECISION**

The Centers for Medicare & Medicaid Services' (CMS's) motion for summary judgment is granted, and CMS's determination to revoke Petitioner's billing privileges is upheld.

**I.  Procedural Background**

This matter is before me based on the challenge of Petitioner, Mikhail Strutsovskiy, M.D., to the revocation of his Medicare billing privileges.  At the time of the billing privileges revocation at issue, Petitioner was a licensed physician in the State of New York, who was enrolled in the Medicare program as a supplier of services.[1]  National Government Services (NGS), a Medicare contractor, notified Petitioner by letter, dated June 17, 2009, that his Medicare billing privileges were revoked effective March 9, 2009, as a result of his conviction within the 10 years preceding his enrollment, or revalidation of his enrollment, of a felony offense that CMS determined to be detrimental to the best interests of the Medicare program.  The letter further advised Petitioner that he failed to

---

[1] "Suppliers" include physicians and other non-physician health care practitioners, or an entity, other than a provider, that furnishes health care services under Medicare. "Providers" are hospitals, nursing facilities, or other medical entities.  42 C.F.R. § 400.202.

notify the Medicare contractor of the adverse action ─ his guilty plea to a felony charge of filing false statements in connection with payments for health care benefits.[2] Petitioner was afforded an opportunity to submit a corrective action plan within 30 days of the date of the letter to show he was able to correct the deficiency and thus establish his program eligibility.  Petitioner was also advised that he could request reconsideration of the determination with a Medicare contractor hearing officer.  CMS Ex. 4.  Petitioner sought reconsideration by request letter, dated July 11, 2009.  CMS Ex. 6.  A contractor hearing officer issued an unfavorable decision on August 12, 2009, finding NGS properly revoked Petitioner's billing privileges.

Petitioner then requested a hearing before an administrative law judge (ALJ) by letter, dated September 28, 2009, seeking a reversal of the hearing officer's unfavorable decision.   I held a prehearing conference by telephone on November 24, 2009, and established a schedule for further proceedings.  CMS filed a motion for summary judgment and CMS exhibits (Exs.) 1 through 9 on December 16, 2009.  On January 15, 2010, Petitioner moved for leave to file his response brief after the deadline date outlined in my Order of November 24, 2009.  Petitioner's request was granted by Order of January 19, 2010.  Petitioner filed its Brief in Opposition to Summary Judgment Motion and in Support of the Cross-Motion (P. Brief), accompanied by the proffer of one exhibit, identified as P. Ex. 10, on January 22, 2010.  Petitioner's proffered exhibit was not marked in conformity with the Civil Remedies Division Procedures § 9, in spite of explicit instructions provided to the parties on the importance of correctly marking exhibits in the Order of November 24, 2008.  By Order of January 27, 2010, Petitioner was directed to re-mark his exhibit and proffer it again within 10 days of the date of the Order.  Petitioner was clearly cautioned that "failure to do so in a complete and timely fashion will result in the exhibit being excluded from the evidentiary record in this case."  Petitioner failed to re-file his exhibit, and for that reason, it is excluded from the evidentiary record in this case.  CMS filed a reply brief on February 12, 2010.

Petitioner objects to the admission of CMS Ex. 8, stating that it is not a complete copy of his sentencing memorandum on file with the District Court.  Although Petitioner proffered P. Ex. 10 — which he states is a complete copy of his sentencing memorandum (P. Brief at 8) — as noted above, P. Ex. 10 is not admitted into the evidentiary record.  Accordingly, I overrule Petitioner's objection to CMS Ex. 8 and admit CMS Exs. 1 through 8 as evidence.

My decision is based on the record before me, which includes the documentary evidence admitted and the parties' pleadings.

---

[2]  Because I find Petitioner's felony conviction a sufficient basis for CMS or its Medicare contractor NGS to revoke Petitioner's billing privileges, I do not discuss in this decision the second basis outlined in NGS's March 9, 2009 notice letter to Petitioner.

## II.  Issue

The issue before me in this case is whether Petitioner satisfied the requirements necessary to participate in the Medicare program as a supplier of services.  In order to do so, an entity or individual must meet the standards set forth in 42 C.F.R. § 424.535(a)(3), *inter alia*.

## III.  Controlling Statutes and Regulations

Section 1831 of the Social Security Act (the Act) (42 U.S.C. § 1395j) established the supplementary medical insurance benefits program for the aged and disabled known as Medicare Part B.  Payment under the program for services rendered to Medicare-eligible beneficiaries may only be made to eligible providers of services and suppliers.  Act §§ 1835(a) (42 U.S.C. § 1395n(a)); 1842(h)(1) (42 U.S.C. § 1395(u)(h)(1)).  Contractors administer the Part B program.  Act § 1842(a) (42 U.S.C. § 1395u(a)).  The Act requires the Secretary of the Department of Health and Human Services (Secretary) to issue regulations that establish a process for the enrollment of providers and suppliers.  Pursuant to 42 C.F.R. § 424.505, a provider or supplier must be enrolled in the Medicare program and be issued a billing number to have billing privileges to be eligible to receive payment for services rendered to a Medicare-eligible beneficiary.  *See* Medicare Program Integrity Manual (MPIM), CMS Pub. 100-08, Chapter 10, Healthcare Provider/Supplier Enrollment, § 6.1.1.  To maintain Medicare billing privileges, a provider or supplier must resubmit and recertify the accuracy of its enrollment information every five years.  This process is referred to as "revalidation."  42 C.F.R. § 424.515.  An "off cycle" revalidation may be triggered as a result of random checks that reveals information indicating local health care fraud problems, national initiatives, complaints, or other reasons that cause CMS to question the compliance of the provider or supplier with Medicare enrollment requirements.  42 C.F.R. § 424. 515(d).

Section 1842(h)(8) of the Act (42 U.S.C. § 1395u(h)(8)) grants the Secretary discretion to refuse to enter into an agreement, or to terminate or refuse to renew an agreement, with a provider or supplier that "has been convicted of a felony under Federal or State law for an offense which the Secretary determines is detrimental to the best interests of the program."  CMS may revoke an enrolled provider or supplier's Medicare billing privileges and any provider or supplier agreement for any of the reasons listed in 42 C.F.R. § 424.535, which provides in pertinent part:

> (a)  *Reasons for revocation*.  CMS may revoke a currently enrolled provider or supplier's Medicare billing privileges and any corresponding provider agreement or supplier agreement for the following reasons:

* * * *

> (3) *Felonies.* The provider, supplier, or any owner of the
> provider or supplier, within the 10 years preceding enrollment
> or revalidation of enrollment, was convicted of a Federal or
> State felony offense that CMS has determined to be
> detrimental to the best interests of the program and its
> beneficiaries.
> (i) Offenses include ─
>
> * * * *
>
> (B) Financial crimes, such as extortion, embezzlement,
> income tax evasion, insurance fraud and other similar crimes
> for which the individual was convicted, including guilty pleas
> and adjudicated pretrial diversions.

The regulation is clear on its face that if a provider or supplier, or the owner of a provider or supplier, is convicted of a federal or state felony that the Secretary has determined is detrimental to the program or its beneficiaries, CMS may revoke billing privileges. *See* 42 C.F.R. § 424. 535(a)(3); *see also* Act § 1866(b)(2)(D) (42 U.S.C. § 1395cc(b)(2)(D)). The regulation specifies that the conviction must have occurred within the 10 years preceding enrollment, or revalidation of enrollment, in Medicare.

A revocation determination by CMS or its contractor is an "initial determination" that may be appealed under the procedures found at 42 C.F.R. Part 498, subparts B-E. *See* 42 C.F.R. §§ 498.3(b)(17); 424.545(a).

**IV. Burden of Proof**

The procedures for hearings and appeals are set out in 42 C.F.R. Part 498. Section 1866(j)(2) of the Act allows providers and suppliers equal appeal rights as described by section 1866(h)(1) of the Act. The hearing before an ALJ is a de novo proceeding. *Anesthesiologists Affiliated*, DAB CR65 (1990), *aff'd*, 941 F.2d 678 (8th Cir. 1991); *Emerald Oaks*, DAB No. 1800 at 11 (2001); *Beechwood Sanitarium*, DAB No. 1906 (2004); *Cal Turner Extended Care*, DAB No. 2030 (2006); *Residence at Salem Woods*, DAB No. 2052 (2006). The procedures for hearings and appeals pursuant to 42 C.F.R. Part 498 do not include specific provisions regarding the burden of going forward with the evidence or the burden of persuasion. However, in cases subject to Part 498, the Departmental Appeals Board (Board) has found that CMS must establish a prima facie showing of a regulatory violation, and the regulated entity then bears the burden of persuasion by a preponderance of the evidence to show that it was compliant with the Act or regulations, or that it had a defense. *Batavia Nursing & Convalescent Ctr.*, DAB No. 1904 (2004); *Batavia Nursing & Convalescent Inn*, DAB No. 1911 (2004), *aff'd, Batavia Nursing & Convalescent Ctr. v. Thompson*, 129 Fed. Appx. 181 (6th Cir. 2005); *Emerald Oaks*, DAB No. 1800 (2001); *Cross Creek Health Care Ctr.*, DAB No. 1665 (1998);

*Evergreene Nursing Care Center*, DAB No. 2069 at 7-8 (2007).  The Board has found this allocation of the burden of going forward with the evidence and the burden of persuasion properly applied in supplier cases.  *MediSource Corp.*, DAB No. 2011 at 2-3 (2006).  The parties have urged no different allocation in this case.

**V.  Findings and Conclusions**

I find and conclude as follows:

1.  On March 2, 2009, Petitioner pleaded guilty and was convicted of a felony in the United States District Court for the Western District of New York on one count of "Aiding and Abetting a False Statement Related to Health Care Fraud," in violation of 18 U.S.C. § 1035(a)(2).  CMS Ex. 3 at 1; CMS Ex. 9 at 1.

2.  Petitioner was sentenced to probation for a term of three years and ordered to pay restitution in the amount of $131,138.  CMS Ex. 9 at 4.

3.  By letter, dated June 17, 2009, the Medicare contractor NGS notified Petitioner that his Medicare billing privileges were being revoked effective March 9, 2009, based on his felony conviction of a charge of filing false statements in connection with payments for health care benefits pursuant to 42 C.F.R. § 424.535(a)(3).  Petitioner was also advised that he failed to notify the contractor within 30 days of a final adverse action, as required by 42 C.F.R. § 424.535(a)(9).  CMS Ex. 4.

4.  Petitioner requested reconsideration of the revocation of his billing privileges before a contactor hearing officer, and an unfavorable decision, dated August 12, 2009, was issued by the hearing officer.  CMS Ex. 7.

5.  CMS may revoke the billing privileges of a Medicare provider or supplier if the provider, supplier, or owner of the provider or supplier is convicted of a federal or state felony offense that CMS determines to be detrimental to the best interests of the program and its beneficiaries (including financial crimes), but not if the conviction was more than 10 years preceding enrollment, or revalidation of enrollment.  42 C.F.R. § 424.535(a)(3).

6.  Petitioner's crime, aiding and abetting a false statement related to health care fraud, constitutes a financial crime.  42 C.F.R. § 424.535(a)(3)(i)(B).

7.  CMS was authorized to revoke the billing privileges of Petitioner, upon determining that the felony conviction of "Aiding and Abetting a False Statement Related to Health Care Fraud" is a crime that CMS has found is detrimental to the Medicare program or its beneficiaries.

8.  Petitioner's Medicare billing privileges were properly revoked by CMS.

## VI. Discussion

### A. Summary judgment is appropriate.

CMS filed a motion for summary judgment to which Petitioner filed a response. Petitioner argues that there are triable issues of fact that preclude summary judgment and argues for an evidentiary hearing, stating that there were extraordinary circumstances involved in his participation in the criminal scheme that formed the basis of his conviction. P. Brief at 9. However, Petitioner does not dispute that on March 2, 2005, he was convicted in the United States District Court for the Western District of New York of one count of "Aiding and Abetting a False Statement Related to Health Care Fraud," in violation of 18 U.S.C. § 1035(a)(2). In particular, he does not dispute the fact that his conviction was based on a fully-informed, voluntary, and counsel-assisted plea of guilty. P. Brief at 4; Request for Hearing at 1-2; CMS Ex. 2; CMS Ex. 6 at 1; CMS Ex. 9 at 1. Petitioner identifies no other material fact that is in dispute but rather advances only arguments that I may not consider in deciding this case.

Summary judgment is appropriate, and no hearing is required, where either: there are no disputed issues of material fact and the only questions that must be decided involve application of law to the undisputed facts; or, the moving party must prevail as a matter of law even if all disputed facts are resolved in favor of the party against whom the motion is made. *See White Lake Family Med., P.C.,* DAB No. 1951 (2004); *Lebanon Nursing & Rehab. Ctr.*, DAB No. 1918 (2004). A party opposing summary judgment must allege facts which, if true, would refute the facts relied upon by the moving party. *See, e.g.,* Fed. R. Civ. P. 56(c); *Garden City Med. Clinic*, DAB No. 1763 (2001); *Everett Rehab. & Med. Ctr.*, DAB No. 1628 at 3 (1997) (in-person hearing required where non-movant shows there are material facts in dispute that require testimony); *Thelma Walley*, DAB No. 1367 (1992); *see also New Millennium CMHC, Inc.*, DAB CR672 (2000); *New Life Plus Ctr., CMHC,* DAB CR700 (2000).

The undisputed facts before me establish that Petitioner did not satisfy the requirements necessary to participate in the Medicare program as a supplier. The Board has on multiple occasions discussed the well-settled principles governing summary judgment. *See, e.g., 1866ICPayday.com, L.L.C.,* DAB No. 2289 at 2-3 (2009). Summary judgment is appropriate if a case presents no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id*. at 2; *Illinois Knights Templar Home*, DAB No. 2274 at 3-4 (2009), and cases cited therein.

The moving party may show the absence of a genuine factual dispute by presenting evidence so one-sided that it must prevail as a matter of law, or by showing that the non-moving party has presented no evidence "sufficient to establish the existence of an element essential to [that party's] case, and on which [that party] will bear the burden of proof at trial." *Livingston Care Ctr. v. Dep't of Health & Human Servs.*, 388 F.3d 168,

173 (6th Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  To avoid summary judgment, the non-moving party must then act affirmatively by tendering evidence of specific facts showing that a dispute exits.  *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *see also Vandalia Park*, DAB No. 1939 (2004); *Lebanon Nursing & Rehab. Ctr.*, DAB No. 1918 (2004).  To defeat an adequately supported summary judgment motion, the non-moving party may not rely on the denials in its pleading or briefs but must furnish evidence of a dispute concerning a material fact.  *Illinois Knights Templar*, DAB No. 2274 at 4; *Livingston Care Ctr.*, DAB No. 1871 at 5 (2003).

In examining the evidence for purposes of determining the appropriateness of summary judgment, I must draw all reasonable inferences in the light most favorable to the non-moving party.  *Livingston Care Ctr.*, 388 F.3d at 172; *1866ICPayday.com, L.L.C.*, DAB No. 2289 at 3; *Brightview Care Ctr.*, DAB No. 2132 at 2, 9 (2007); *Guardian Health Care Ctr.*, DAB No. 1943 at 8 (2004); *but see Brightview*, DAB No. 2132 at 10 (entry of summary judgment upheld where inferences and views of non-moving party are not reasonable).  Moreover, drawing factual inferences in the light most favorable to the non-moving party does not require that I accept the non-moving party's legal conclusions.  *Cf. Guardian Health Care Center*, DAB No. 1943 at 11 ("A dispute over the conclusion to be drawn from applying relevant legal criteria to undisputed facts does not preclude summary judgment if the record is sufficiently developed and there is only one reasonable conclusion that can be drawn from those facts.").

This case requires an application of the law to the undisputed facts.  The issue in this case turns on the legal interpretation of the regulations, specifically, 42 C.F.R. §§ 424.535 and 424.530.  This case must be decided against Petitioner as a matter of law based on the undisputed material facts.  Accordingly, summary judgment is appropriate.

>    **B.  Petitioner did not satisfy the requirements necessary to participate in the Medicare program as a supplier of services.**

>    >    **1.  Petitioner's conviction is a sufficient basis for the revocation of his billing privileges pursuant to 42 C.F.R. § 424.535(a)(3).**

The essential elements necessary to support revocation of a provider or supplier's billing privileges, based on a qualifying felony as outlined in 42 C.F.R. § 424.535(a)(3), are that: (1) the provider, supplier, or any owner of the provider or supplier be convicted of a federal or state felony offense that CMS has determined to be detrimental to the best interests of the program and its beneficiaries; and (2) the felony conviction occurred within 10 years preceding the provider or supplier's enrollment, or revalidation of enrollment, in the Medicare program.  *Abdul Razzaque Ahmed, M.D.*, DAB No. 2261 at 19 (2009).  I find that the two essential elements necessary to support the revocation of

Petitioner's billing privileges, pursuant to 42 C.F.R. § 424.535, are patent in the record before me.

### a. Petitioner was convicted of a qualifying felony, which CMS has determined is detrimental to the best interests of the Medicare program and its beneficiaries.

The undisputed facts in the record before me establish that the first essential element listed above has been met. Specifically, on March 2, 2009, in the United States District Court for the Western District of New York, Petitioner was convicted of a felony after pleading guilty to one count of "Aiding and Abetting a False Statement Related to Health Care Fraud" in violation of 18 U.S.C. § 1035(a)(2). CMS Ex. 9 at 1. Further, Petitioner does not dispute that the criminal activities for which he was convicted were a "financial crime," as outlined in 42 C.F.R. § 424.535(a)(3)(i)(B). As a matter of law, I find that a violation of 18 U.S.C. § 1035(a)(2) is a "financial crime" within the regulation's meaning.

Moreover, Petitioner has admitted to participating in a scheme where false claims regarding medical treatment provided to beneficiaries were filed to the Medicare program. He admitted that he falsely certified Medicare forms stating that he provided medical services, when, in fact, he knew that he had not and acknowledged that the purpose of the scheme was to "receive money from Medicare." CMS Ex. 1; CMS Ex. 2 at 6.

The information against Petitioner charged that from January 2003 through September 2004, Petitioner knowingly and willfully made materially false and fraudulent statements and misrepresentations in connection with the payment and delivery of health care services. Specifically, Petitioner caused Medicare claim forms to be submitted for reimbursement in which he falsely represented that he had rendered treatment to Medicare beneficiaries. CMS Ex. 1. In his plea agreement, Petitioner admitted to submitting reimbursement claim forms to the Medicare program, which falsely certified that medical care provided to program beneficiaries was medically necessary, and certifying that he personally provided services to beneficiaries when he had not. Petitioner also admitted that his criminal activities were part of a larger scheme devised by his former employer to defraud the Medicare program. P. Brief at 5; CMS Ex. 2. The court accepted Petitioner's guilty plea. CMS Ex. 9 at 1. Petitioner was sentenced to three years probation and ordered to pay restitution in the amount of $131,138 to the Medicare program   CMS Ex. 9 at 2, 4.

It is undisputed that the crime Petitioner admitted to committing is a felony under federal law and is a financial crime within the plain meaning of the regulation. Applying the same analysis as the Board in *Ahmed*, I find that the crime which Petitioner was

convicted of is similar to insurance fraud and within the regulation's reach.[3] *Ahmed*, DAB No. 2261.  Thus, the first essential condition to support revocation of Petitioner's billing privileges, as outlined in section 424.535, has been satisfied based upon Petitioner's plea and conviction of a felony pursuant to 42 C.F.R. § 424.535(a)(3)(i)(B).

### b. Petitioner's conviction was within 10 years preceding his revalidation enrollment.

The revalidation of Petitioner's enrollment occurred when the CMS contractor NGS obtained information that Petitioner was convicted of a felony offense.  *See Robert R. Tzeng, M.D.*, DAB No. 2169 (2008).  NGS was then authorized to make the determination to revoke Petitioner's enrollment and billing privileges.  The parties do not dispute that Petitioner's March 2, 2005 conviction occurred within 10 years preceding his enrollment, or revalidation of enrollment, and, therefore, the second essential element to support revocation of Petitioner's billing privileges, based on section 424.535, has been satisfied.

### C. CMS is authorized to revoke Petitioner's Medicare billing privileges.

CMS revoked Petitioner's Medicare billing privileges pursuant to the authority granted by section 1866(j) of the Act, and by implementing regulations at 42 C.F.R. § 424.535. The regulations governing provider and supplier enrollment or revalidation of enrollment specifically afford CMS discretionary authority to revoke Petitioner's enrollment, where, as in this case, CMS determines the offense to be detrimental to the best interests of Medicare and its beneficiaries.  42 C.F.R. § 424.535(a)(3)(i).  As noted, subsection (B) specifically identifies financial crimes as a basis for revocation of supplier enrollment and billing privileges.  42 C.F.R. § 424.535(a)(3)(i)(B).  Moreover, section 1842(h) of the Act authorizes the Secretary to make the determination of whether an offense is detrimental, and the implementing regulations at section 424.535 delegate that authority to CMS.  I have no authority to look behind CMS's exercise of its discretion, nor do I have the authority to look behind CMS's decision that Petitioner's offense is detrimental to the best interest of Medicare and its beneficiaries.  *Letantia Bussell*, M.D., DAB No. 2196 at 12-13 (2008); *see also Michael J. Rosen, M.D.*, DAB No. 2096 at 14 (2007).

When a provider or supplier whose billing privileges are revoked by CMS for one of the reasons enumerated at 42 C.F.R. § 424.535 challenges the determination by requesting a

---

[3]  I do not suggest that CMS is necessarily precluded from finding that a "financial crime" might be a felony not specifically listed in section 424.535(a)(3)(i)(B).  Although the regulation provides examples of the types of crimes CMS has determined to be financial crimes, the use of the words "such as" clearly indicates that CMS did not intend the listed crimes to represent, or constitute, an all-inclusive catalogue.

hearing, what may be challenged in such a hearing is whether a regulatory basis exists to revoke the provider or supplier's billing privileges.  However, what may not be challenged is whether CMS properly exercised its discretion to invoke that authority in an individual case.  Nothing in the regulations suggests that I may look behind CMS's exercise of discretion and substitute my judgment for that of CMS in deciding whether to revoke billing privileges in an individual case, where the authority to revoke is present.

### D. Petitioner's extenuating-circumstance defense is not a bar to CMS's authority to revoke Petitioner's billing privileges.

In his request for hearing and his response brief, Petitioner argues that there were extreme and unusual circumstances that forced him to participate in the crime for which he was convicted.  Specifically, Petitioner states that he provided crucial information for the prosecution of the principles of his employer, All Care Medical Clinic (All Care).  Petitioner also avers that All Care had ties to, and was controlled by, the "Russian Mafia," which posed a risk to Petitioner's life and the lives of his loved ones.  P. Brief at 1, 4.  Petitioner further states that he broke his ties to All Care on September 27, 2004.  P. Brief at 6; CMS Ex. 2 at 6.  Petitioner relies on the following pertinent language in 42 C.F.R. § 424.535(e) to argue that CMS should have reversed his revocation:

> If the revocation was due to adverse activity (sanction, exclusion, or felony) against an owner, managing employee, or an authorized or designed official; or a medical director, supervising physician, or other personnel of the provider or supplier furnish Medicare reimbursable service, the revocation may be reversed if the provider or supplier terminates and submits proffer that it had terminated its business relationship with that individual within 30 days of the revocation notification.

Petitioner misreads the regulation.  It is not applicable in instances in which the "adverse activity" is taken against the Medicare provider or supplier itself.  CMS argues that the regulation's preamble specifically indicates that the provision applies to situations where a provider or supplier's billing privileges are revoked "due to adverse activity."  CMS Reply at 4.  I find that CMS is correct in that there is specific language in the provision reserving a reversal of a revocation decision to CMS's discretion.  I also agree with CMS that Petitioner's revocation was the result of his own felony conviction and not the actions of his former employer's.  CMS maintains that the Medicare contractor did take into consideration Petitioner's explanation for the commission of his crime in rendering its reconsideration, although it was not under any obligation to do so.  CMS Reply at 4-6.  However, even if CMS did not take into consideration the mitigating factors, this does not, in and of itself, create a reviewable issue for me.  The regulation at section 424.535(a)(3) permits CMS to make a case-specific determination and to revoke a supplier's billing privileges based on that determination.  Furthermore, whether a crime is

detrimental to Medicare is a matter of agency discretion that an ALJ is not authorized to review or look behind.

Petitioner argues that there are equitable considerations here that CMS should have, but failed to, take into account. It is well-settled that I am not authorized to address Petitioner's equitable arguments. I also may not second-guess CMS's judgment in this case, once I have determined that CMS has the authority to revoke Petitioner's billing privileges. Petitioner states that neither CMS nor its Medicare contractor considered as "mitigating factors" that he cooperated with the federal government in providing information regarding another employee of All Care, and that he had a limited role in the scheme. P. Brief at 5. CMS is not required to take into consideration "mitigating factors." The Board in *Ahmed* has stated that, pursuant to 42 C.F.R. § 424.535(a)(3), "CMS may – in its discretion – revoke a supplier's billing privileges based solely on its receiving notice of a conviction or a guilty pleas to a felony that it has determined to be detrimental to Medicare and its beneficiaries." *Ahmed*, DAB No. 2261 at 17-18 (emphasis in original). Petitioner has received the due process afforded him under the statute and regulations. Therefore, I am not required to consider mitigating, or other, factors in deciding whether to uphold a revocation.[4]

In this case, the record establishes that CMS had a valid legal predicate – namely, a qualifying conviction for a felony that CMS determined to be detrimental to Medicare – to revoke Petitioner's billing privileges. CMS's decision to revoke Petitioner's billing privileges based on the existence of that legal predicate is a discretionary judgment that I may neither review nor substitute my discretion for that of CMS. *Ahmed*, DAB No. 2261 at 19 (citing *Letantia Bussell, M.D.*, DAB No. 2196 at 12-13 (2008) (ALJ review is limited to deciding whether CMS "established a legal basis for its actions.")).

CMS has established a basis for the revocation of Petitioner's billing privileges that Petitioner has not overcome. Accordingly, I conclude that Petitioner did not satisfy the requirements necessary to participate in the Medicare program as a supplier of services.

---

[4] Petitioner claims that to be denied a hearing regarding extenuating circumstances is "unconscionable and violative of due process." Petitioner states that it recognizes that I do not have jurisdiction over claims of violation of due process. Petitioner's arguments are duly noted and preserved for another forum.

## VII. Conclusion

For the reasons stated above, CMS's motion for summary judgment is granted, and CMS's determination to revoke Petitioner's billing privileges is upheld.

                                                                                                        _____/s/_____
                                                                                                         Richard J. Smith
                                                                                                         Administrative Law Judge