IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| | : |
| MIKHAIL STRUTSOVSKIY, | : |
| Defendant. | : |

09 CR 072-S

## PLEA AGREEMENT

The defendant, MIKHAIL STRUTSOVSKIY, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a Plea Agreement with the terms and conditions as set out below.

## I.   THE PLEA AND POSSIBLE SENTENCE

1.   The defendant agrees to waive indictment and plead guilty to a one-count Information charging a violation of Title 18, United States Code, Section 1035 (False Statement Related to Health Care Fraud), which carries a maximum possible sentence of a term of imprisonment of 5 years, a fine of $250,000, or both, a mandatory $100 special assessment, and a term of supervised release of up to 3 years.   The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that the Court must require restitution in a maximum amount of $131,138 to be paid to the United States as part of the sentence, pursuant to Sentencing Guidelines Section 5E1.1 and Title 18, United States Code, Section 3663A.

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant's serving a sentence of imprisonment longer than the statutory maximum set forth in paragraph 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

4. The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that, if this case proceeded to trial, the government would be required to

prove beyond a reasonable doubt the following elements of the crime:

    a. the defendant made a statement that was false;

    b. the statement was false as to a material matter;

    c. the false statement was made in connection with the delivery of and payment for a health care service; and

    d. the defendant acted knowingly.

## FACTUAL BASIS

5.    The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

### BACKGROUND

    a.    Medicare was a federally funded program administered under the auspices of the United States Department of Health and Human Services ("HHS"), the purpose of which was to provide health care for entitled beneficiaries, primarily the elderly and disabled. As such, Medicare is a health care benefit program as defined in Title 18, United States Code, Section 24(b).

    b. HHS contracted with a fiscal intermediary, Health Now Upstate Medicare, to process and pay claims submitted by Medicare "Part B" providers for the upstate New York region, which includes the Western District of New York. "Part B" providers include, among others, licensed physicians and physical therapists.

    c.    All medical providers wishing to be reimbursed for medical treatment/service rendered to Medicare eligible patients must be registered and certified by

Medicare.   Health care providers so registered and certified by Medicare receive a "provider number" that must be used when submitting a claim for payment to Medicare.

d.  In order to be covered under the Medicare program, a treatment/service rendered by a Part B provider must be medically necessary.   In order to receive payment for a treatment/service, a medical provider must submit a claim form (HCFA 1500) setting forth the patient's name, the treatment/service provided, date of treatment/service, the diagnosis which renders the service/treatment medically necessary, and a certification by the provider that the treatment/service was both medically necessary and actually rendered.

e. Pursuant to 42 U.S.C. § 1320a-7b, a health care provider rendering a treatment/service must charge and collect a "co-pay" payment from a Medicare patient, unless a written waiver is obtained, in advance, from HHS based on a patient's inability to pay.

f. Pursuant to New York State Business Corporation Law Section 1503, a professional service corporation for the practice of medicine must be owned and operated by a licenced physician or physicians.

g. All medical treatments/services rendered by a medical professional service corporation ("MPSC") must be performed by, or at the direction and supervision of, a licensed health care professional.   All reports, diagnoses, prognoses and prescriptions issued by the MPSC must be signed by a licenced physician in the corporation.   The ownership structure requirement was enacted to ensure that qualified and knowledgeable licenced physicians make treatment/service decisions based on medical necessity and patient need rather than by profit driven factors.

h.  Often times an MPSC will contract with a management/billing company which performs management and administrative services, including claim filing and other billing for treatment/service rendered to patients by the MPSC.  Management companies generally charge 8% - 15% of

-4-

the revenue received from billings for this service. Management companies can not participate in the decision making relative to patient care and treatment.

i.  All Care Management of Western New York ("All Care") was a corporation doing business in the Western District of New York which purportedly performed management and administrative services for individual health care providers and MPSCs.  All Care was located at 2940 Delaware Avenue, Kenmore, New York.

j. During the relevant period of September 2002, through September 27, 2004, Robert Stein a/k/a Michael Solovey ("Stein") and Marina Kats were the *de facto* owner/operators of All Care.  The *de facto* owner/operators of All Care were not licenced medical providers.

k. During the period of September 2002, through September 27, 2004, the defendant, MIKHAIL STRUTSOVSKIY, was a physical therapist licensed by the State of New York.

l. In November 2002, the defendant, as sole owner, formed a MPSC under name of Physical Therapy and Rehabilitation ("PT&R").

m.  From the inception of PT&R, it was located at 2940 Delaware Avenue, Kenmore, New York, in the same office as All Care.

n. The defendant utilized All Care for "management" services, including the submission of claim forms to Medicare.

**THE CRIMINAL CONDUCT**

o. During the period of September 2002, through September 27, 2004, the defendant, MIKHAIL STRUTSOVSKIY, with and by Robert Stein a/k/a Michael Solovey and Marina Kats, knowingly and willfully submitted, and caused to be submitted, false and fraudulent claim forms (HCFA 1500)

to Medicare that falsely stated that the defendant had personally provided physical therapy to Medicare beneficiaries, when, in truth and in fact, the defendant did not personally provide the physical therapy.  If the Medicare patient had received the physical therapy, it was not provided by a licenced therapist.

p.  It was part of the scheme that the *de facto* owners of All Care reached a financial arrangement with the defendant.  Under the financial arrangement with the defendant, All Care paid the defendant a monthly or hourly rate for his professional services regardless of the amount or level of treatment/service rendered by him during his "employment" with All Care.

q. It was further part of the scheme that in order to generate payments from Medicare, personnel at All Care caused to be prepared and submitted to Health Now Upstate Medicare fraudulent claim forms which falsely certified that the medical treatments/services rendered to patients were determined by the medical providers, including the defendant, to be medically necessary.  In truth and in fact, many of the treatments/services were not medically necessary and were provided as a matter of routine only because the defendant and the *de facto* owners agreed they would be provided to all patients in order to receive money from Medicare.

r. It was a further part of the scheme that the *de facto* owners of All Care had signature authority for the bank accounts into which Medicare remitted payment to the defendant.  As a result, All Care controlled 100% of payments received by the defendant from Medicare for the treatments/services allegedly performed by, or under the direct supervision of, the defendant.

s. It was a further part of the scheme that the *de facto* owners and others at All Care improperly enticed Medicare eligible patients to seek treatment/service from the defendant, with the promise that the legally required co-payment would not be collected from them, along with the promise that the patients would receive gifts and payments for receiving treatment/service from the defendant and other health care providers associated with All Care.

**THE DEFENDANT**

t. During his association with All Care as a physical therapist, the defendant was in medical school in Baltimore, MD, from January 2003 through June 2003, and thereafter, from July 2003 through September 27, 2004, the defendant was in a medical residency program at the Erie County Medical Center (ECMC) through the State University of New York at Buffalo medical program.

u. During the period of January 2003 through June 2003, on days when Strutsovskiy was in medical school in Baltimore and not present in the Buffalo area, Stein and Kats arranged for Medicare patients at All Care to receive physical therapy and massage treatment by providers not registered or certified by Medicare to provide and bill such services. Pursuant to the agreement between the defendant and the other participants, the defendant would periodically (usually on weekends) travel to Buffalo and sign Medical claim forms and/or medical documentation to support such claim forms, on which the defendant would falsely certify that he had personally rendered the physical therapy that had been rendered by unlicenced and/or unregistered individuals to patients on dates the defendant was not present at the office or even in the Buffalo area.

v. During the period of July 2003 through September 27, 2004, on days when Strutsovskiy was performing residency duties at ECMC and not present in the office of All Care, Stein and Kats arranged for Medicare patients at All Care to receive physical therapy and massage treatment by providers not registered or certified by Medicare to provide and bill such services. Pursuant to the agreement between the defendant and the other participants, the defendant would periodically (usually on weekends) present himself at the All Care office solely to sign Medical claim forms and/or medical documentation to support such claim forms, on which the defendant would falsely certify that he had personally rendered the physical therapy that actually had been rendered by unlicenced and/or unregistered individuals to patients on dates the defendant was not present at the office.

w.  As a result of the fraudulent claim forms caused
to be submitted to Medicare by the defendant and others
at All Care on which the defendant falsely certified that
he had personally rendered treatment,  Medicare paid the
defendant approximately $131,413.94 to which he was not
entitled.

### III.  SENTENCING GUIDELINES

6.  The defendant understands that the Court must consider
but is not bound by the Sentencing Guidelines (Sentencing Reform
Act of 1984).

### BASE OFFENSE LEVEL

7.  The government and the defendant agree that Guidelines §
2B1.1(a) applies to the offense of conviction and provides for a
base offense level of 6.

### SPECIFIC OFFENSE CHARACTERISTICS
### USSG CHAPTER 2 ADJUSTMENTS

8.  The government and the defendant agree that the following
specific offense characteristic does apply:

> the total loss was in excess of $120,000 (namely,
> $131,138) and, thus, there is a ten offense level
> increase pursuant to Guidelines § 2B1.1(b)(1)(F).

## USSG CHAPTER 3 ADJUSTMENTS

9. The government and the defendant agree that the following adjustment to the base offense level does apply:

> the 2-level upward adjustment of Guidelines §
> 3B1.3 (abuse of trust/special skill).

## ADJUSTED OFFENSE LEVEL

10. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **18**.

## ACCEPTANCE OF RESPONSIBILITY

11. At sentencing, the government agrees not to oppose the recommendation that the Court apply the three (3) level downward adjustment of Guidelines §§ 3E1.1(a) and (b) (acceptance of responsibility), which would result in a total offense level of **15**.

## CRIMINAL HISTORY CATEGORY

12.   It  is  the  understanding  of  the  government  and  the
defendant that the defendant's criminal history category is **I**.  The
defendant  understands  that  if  the  defendant  is  sentenced  for,  or
convicted of, any other charges prior to sentencing in this action,
the  defendant's  criminal  history  category  may  increase.    The
defendant  understands  that  the  defendant  has  no  right  to  withdraw
the  plea  of  guilty  based  on  the  Court's  determination  of  the
defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13.   It  is  the  understanding  of  the  government  and  the
defendant that, with a maximum total **offense level of 15** and
**criminal history category of I**, the defendant's sentencing range
would be a term of imprisonment of **18 to 24 months**, a fine of
$4,000 to $40,000, and a period of supervised release of **2 to 3**
years.   Notwithstanding this, the defendant understands that at
sentencing the defendant is subject to the maximum penalties set
forth in paragraph 1 of this agreement.

14. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this Plea Agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

15. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

16. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant

to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to the submission of fraudulent billing to Medicare which is not time-barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.  GOVERNMENT RIGHTS AND RESERVATIONS

17. At sentencing, the government agrees to take no position as to the specific sentence within the Guidelines range determined by the Court. The government reserves the right to take a position as to the amount and method of payment for restitution and/or fine.

18. The defendant understands that the government has reserved the right to:

> a.   provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific amount of restitution and the method of payment; and

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information regarding the recommendation or factor.

19. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

20. The defendant understands and agrees that the Court at, the time of sentencing, may order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this Plea Agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of

payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

21. The defendant understands that, pursuant to Title 18, United States Code, Section 3600, the defendant may have the right to request DNA testing of evidence in the possession of the government. As a condition of this agreement, the defendant voluntarily waives, for all purposes, any right to request DNA testing of any such evidence.

## VI. APPEAL RIGHTS

22. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an

appeal of the defendant's sentence by the government, the defendant reserves its right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section I of this agreement.

23. The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

24. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ **13**, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII.  COOPERATION

25.   The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, in any way involving or related to submission of fraudulent claims to Medicare.   The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pretrial and trial proceedings as the government shall deem necessary.

26.   The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement.   The defendant's obligation to testify truthfully and completely shall extend to proceedings in local, state and federal courts in jurisdictions which have agreed to abide by this agreement.

27.   In exchange for the defendant's plea of guilty and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the

Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to submission of fraudulent claims to Medicare committed up to the date of this agreement and about which the defendant provides complete and truthful information.


28. Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.


29. Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines 3 levels as provided for in Guidelines § 5K1.1 which, if granted by the Court, would result in an offense level of 12 and a sentencing range of 10 to 16 months. The defendant understands that the decision to make such a motion is within the sole discretion of the government and that the decision to grant such a motion, and the extent of any

downward departure, are matters solely within the discretion of the Court.

30. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of any person or entity.

31. It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the government or refuse to testify truthfully and completely. Should the defendant be sentenced prior to the completion of the defendant's cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement extends past sentencing.

32. In the event the government believes the defendant has violated any of the conditions of the "Cooperation" section of this

agreement, the government, in addition to its other rights as set forth in the "Cooperation" section of this agreement, reserves the right: (a) to modify any recommendation the government agreed to make in a motion pursuant to Guidelines § 5K1.1 and/or Title 18, United States Code, Section 3553(e); and (b) to petition the Court, before or after sentencing, for an order declaring that the defendant has breached the "Cooperation" section and relieving the government of its obligations under this section.

33. In the event the government petitions the Court to declare that the defendant has breached the "Cooperation" section of this agreement, whether the defendant has violated any of the conditions of the "Cooperation" section shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence. In order to establish any violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

34. If the "Cooperation" section of this agreement is declared breached by the Court:

a.   the defendant shall thereafter be subject to prosecution for any federal criminal violations of which the government has knowledge, including but not limited to, perjury and obstruction of justice;

b.   the government may withdraw any motion filed pursuant to Sentencing Guidelines § 5K1.1, Title 18, United States Code, Section 3553(e) and/or Rule 35(b);

c.   the defendant has no right to withdraw the plea of guilty;

d.   the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410 and Sentencing Guidelines § 1B1.8 and the defendant expressly agrees that all statements, testimony and tangible objects provided by the defendant (with the exception of statements made in open court during guilty plea proceedings), whether prior or subsequent to this agreement, can be used directly and indirectly in any and all criminal proceedings against the defendant; and

e.   the defendant agrees that any charges that were dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government. Furthermore, the defendant agrees not to assert the statute of limitations as a defense to any criminal offense involving or related to any way involving or related to submission of fraudulent claims to Medicare. which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

35.  At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court.  The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement.  In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1 and/or Title 18, United States Code, Section 3553(e).

36.  The defendant's attorney is expressly permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## VIII.  TOTAL AGREEMENT AND AFFIRMATIONS

37.  This Plea Agreement represents the total agreement between the defendant, MIKHAIL STRUTSOVSKIY, and the government. There are no promises made by anyone other than those contained in this agreement.  This agreement supersedes any other prior

agreements, written or oral, entered into between the government and the defendant.

KATHLEEN M. MEHLTRETTER
Acting United States Attorney
Western District of New York

BY: _____
JOHN E. ROGOWSKI
Assistant United States Attorney

Dated: March 02 , 2009

I have read this agreement, which consists of 22 pages. I have had a full opportunity to discuss this agreement with my attorney, PATRICK J. BROWN, Esq. I agree that it represents the total agreement reached between the government and me. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
MIKHAIL STRUTSOVSKIY
Defendant

Dated: March 7 , 2009

_____
PATRICK J. BROWN, Esq.
Attorney for the Defendant

Dated: March 7 , 2009