UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY
CO.,

                           Plaintiffs,

                                                **Case No. 12-CV-0330**

v.

MIKHAIL STRUTSOVSKIY, M.D.
a/k/a MICHAEL STRUT, M.D.,
RES PHYSICAL MEDICINE & REHABILITATION
SERVICES, P.C.,
AARON HIRSCH,
DEAN TRZEWIECZYNSKI,
KENNETH ANDRUS,
VASCU.FLO, INC., and
VASCUSCRIPT, INC.,

                           Defendants.

_____


### MEMORANDUM OF LAW IN SUPPORT TO
### DEFENDANT MIKHAIL STRUTSOVSKIY, M.D. a/k/a MICHAEL STRUT, M.D.'S and
### RES PHYSICAL MEDICINE & REHABILITATION SERVICES, P.C.'S
### MOTION FOR SUMMARY JUDGMENT

                                       **THE KNOER GROUP, P.L.L.C.**
                                       Robert E. Knoer, Esq.
                                       *Attorneys for Defendants Strutsovskiy*
                                       *and RES Physical Medicine &*
                                       *Rehabilitation Services, P.C.*
                                       424 Main Street, Suite 1820
                                       Buffalo, New York 14202
                                       (716) 332-0032
                                       rknoer@knoergroup.com

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………………………iv

Preliminary Statement…..……………………………………………………………………...1

Statement of Facts……………………………………………………………………………2

Summary of the Argument…………………………………………………………………...3

Argument…………………………………………………………………………………5


I. GEICO'S REMAINING CAUSES OF ACTION FAIL TO
   ESTABLISH FRAUD………………………………………………………………….5

    *Treatments Were Provided As Claimed*……………………………………………6

    *Medical Necessity*……………………………………………………………………6

    *Pleading Fraud Under New York Law and Federal Law*………………………………7

    *GEICO Fails To Establish Justifiable Reliance*……………………………………….9

    *No Fault is at Its Essence a Contract: Contract Principles Apply*………………….......14

    *The Federal Cases Allowing Fraud Claims Arising Out
    Of No-Fault Reimbursements Do Not Prevail Here*………………………………..…14

    *This Court Must Look to New York for Guidance on the
    Interplay of Fraud and No Fault*……………………………………………………...16

    *Reliance Is Especially Absent In The Claims Related To
    Drug Prescriptions*…………………………………………………………………18


II. NO-FAULT DETERMINATIONS AS TO MEDICAL NECESSITY
    SHOULD BE ADDRESSED TO THE COMPREHENSIVE SYSTEM
    CREATED BY NEW YORK…………………………………………………………...19

    *RICO is Not Appropriate Here*………………………………………………….…20

    *RICO is Not An Appropriate Cause of Action Where a Comprehensive
    Statute Such as the NY No-Fault Statute Already Provides a Process*

*to Resolve the Dispute*……………………………………………………………..21

*Supplemental Jurisdiction Should Not Be Exercised Here*………………………………..22

III. THE COUNTERCLAIM FOR DAMAGES SHOULD BE GRANTED……………...23

CONCLUSION…………………………………………………………………………….24

**TABLE OF AUTHORITIES**

**Statutes**

FRCP 9(b)……………………………………………………………………………7

New York Insurance Law Article 51……………………………………………...*supra*


**Regulations**

11 NYCRR § 65……………………………………………………………………*supra*


**Case Law**

*ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699 (SDNY 2013) ………………………12, 13

*Allstate Ins. Co. v. Ahmed Halima*, 2009 U.S. Dist. LEXIS 22443 (EDNY 2009)…………...…23

*Allstate Insurance Company v. Mun,* 751 F.3d 94, 101 (2d Cir. 2014)…………………………16

*Apace Comm. Ltd. V. Burke,* 522 F.Supp.2d 512 (WDNY 2007)………………………….....7

*Beth Israel Med. Ctr. v. Verizon Bus. Network Servs.*, No. 11 Civ. 4509, 2013
U.S. Dist. LEXIS 49825, 2013 WL 1385210 (SDNY 2013)…………………………………….8

*Continental Airlines, Inc. v. Lelakis*, 129 F.3d 113 1997 U.S. App. LEXIS 32027,
1997 WL 701363 (2d Cir. 1997)…………………………………………………………………13

*Danann Realty Corp. v. Harris*, 5 NY2d 317, 322 (1959)………………………………………12

*Dash v. Seagate Tech. (US) Holdings, Inc.,* 2014 U.S. Dist. LEXIS 88780
(EDNY 2014)…………………………………………………………………………...9

*Fair Price Med. Supply Corp. v. Travelers Indem. Co.,* 10 NY3d 556 (2008)………….16, 17, 20

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)…………….....8, 23

*Flier v. Cayuga County*, 2006 U.S. Dist. LEXIS 65994 (NDNY 2006)…………………………7

*Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 397 (SDNY 2000)…………………………………20

*Hintergerger v. Catholic Health System,* 2012 U.S. District Lexis 37066
(WDNY 2012)…………………………………………………………………………………..22

*Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986 (EDNY 1995)………………………20

*Morales Elec. Contr., Inc. v. Siemens Bldg. Techs., Inc.,* 2012 U.S. Dist. LEXIS
43258, (EDNY 2012)……………………………………………………………………………14

*Nat'l Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
89 Fed. Appx. 287, 292 (2d Cir. 2004)…………………………………………………………13

*Savitsky v. Mazzella*, 210 Fed.Appx 71 (2d Cir. 2006)……………………………………..7, 10

*Schmidt v. Fleet Bank*, 16 F.Supp. 2d 340, 346 (SDNY 1998)…………………………………20

*Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 2014 U.S. Dist. LEXIS
63242 (EDNY May 7, 2014)……………………………………………………………………14

*In State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005)………………………..

*Tanzman v. La Pietra,* 8 A.D.3d 706 at 707 (3d Dept. 2004)………………………………………12

*Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002)…………………………………………7

*Watkins v. Smith*, 2012 U.S. Dist. LEXIS 165762 (SDNY 2012)…………………………………18

*Wright v. Eastman Kodak Co.*, 445 F.Supp.2d 314 (WDNY 2006)…………………………7, 10

## **Secondary Sources**

*2-27 New Appleman New York Insurance Law § 27.02*…………………………………..10-11

## PRELIMINARY STATEMENT

This action was commenced by Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co., GEICO Casualty Co., hereinafter referred to as "GEICO" by the filing and eventual service of a Summons and Complaint, dated April 18, 2012 (Docket 1).

GEICO filed with the Complaint a RICO Statement as required by local rule (Docket 2).

The Complaint was served upon Defendant Mikhail Strutskovskiy, M.D. a/k/a Michael Strut, M.D. on April 18, 2012 (Docket 7). The Complaint was served upon Defendant Aaron Hirsch on April 18, 2012 (Docket 9). The Complaint was served upon Defendant Dean Trzewieczynski on April 18, 2012 (Docket 10). The Complaint was served upon Defendant Kenneth Andrus on April 18, 2012 (Docket 11). The Complaint was served upon Vascu.Flo, Inc. on April 18, 2012 (Docket 12). The Complaint was served upon VascuScript, Inc. on April 18, 2012 (Docket 13).

An Answer to the Complaint was filed on June 15, 2012 (Docket 29) by Aaron Hirsch and Vascu.Flo, Inc. An Answer with Counterclaim was filed on June 15, 2012 by Respondents RES Physical Medicine and Rehabilitation Services, P.C. and Mikhail Strutskovskiy, M.D. a/k/a Michael Strut, M.D. hereinafter ("Strut") and/or ("RES").

The Complaint was dismissed as against Defendants Trzewieczynski, Andrus and VascuScript, Inc. without prejudice prior to the filing of a responsive pleading on October 6, 2012 (Docket 56). The Complaint was dismissed without prejudice as to Defendants Aaron Hirsch and Vascu.Flo, Inc. by Stipulation filed April 24, 2013 (Docket 63).

Discovery ensued with the remaining parties pursuant to an Amended Case Management Order the deadline for the filing of Dispositive Motions was extended to October 31, 2014 (Docket 73). This Motion is timely filed.

**STATEMENT OF FACTS**

The detailed recitation of facts with regard to the Causes of Action and Counterclaim are set forth in the Declaration of Robert E. Knoer and the Affidavit of Mikhail Strut, M.D., together with the exhibits attached thereto.

Dr. Strut and RES are duly authorized medical providers that provide treatment and services to GEICO insureds involved in automobile accidents under the New York State "No-Fault Insurance Law".

GEICO denies reimbursement of claims submitted by Dr. Strut and RES on the basis that Strut and RES were not proper providers as required under law; that treatments were not provided; that treatments and services were not medically necessary; that treatments and services were not properly submitted for reimbursement by code.

The allegations with regard to Strut and RES not being eligible providers under New York No-Fault law have been thoroughly discredited. The co-defendants that GEICO alleged were "shadow owners" of the medical practice have been dismissed from the case voluntarily by GEICO.

GEICO has denied reimbursement and investigated and challenged Dr. Strut since October of 2010 and has denied reimbursement and challenged RES submittals for reimbursement since its formation in January 2011.

GEICO denies the reimbursements on the basis that the treatments and services are not medically necessary. GEICO has arbitrated the same issues that underlie the federal suit in the New York Arbitration forum No-Fault claims resolution system. Strut and RES have overwhelmingly been successful in having arbitrators approve their claims as submitted or with minor modifications throughout those arbitrations.

GEICO did not rely on Strut or RES in denying or paying any of the claims that were submitted. GEICO has no basis to allege reasonable reliance as necessary to show fraud.

## SUMMARY OF THE ARGUMENT

GEICO's complaint relies at its core on an allegation of fraud. Not just the Common Law Fraud claim but all of the Causes of Action; RICO, Unjust Enrichment, Aiding and Abetting, depend on GEICO properly pleading and being able to support the fraud allegation. If that thread is pulled then the entire fabric of the complaint unravels.

GEICO asserted baseless allegations of an improper medical practice conspiracy. Those allegations have now been disproved to the point where even GEICO agrees that they were unfounded.

Without the practice management allegations, the only fraud claim GEICO can pursue is the issue of medical necessity and characterization of the treatments provided.

The fraudulent "Medical Practice Management" cases such as the one GEICO now admits does not exist here, are allowed to proceed outside of the No-Fault system in part because the insurer can establish that they had reasonably relied on the right of the defendants to receive reimbursement as a properly licensed provider and therefore had been defrauded.

Whereas GEICO's remaining allegations here, related to claims of medical necessity and causality are exactly what the No-Fault verification and resolution process is designed to resolve.

GEICO did not rely on the submittals by RES and Strut of medical necessity, but rather suspected and investigated the claims. GEICO requested additional verification and even obtained testimony through the No-Fault verification process. GEICO's assertion of reliance necessary to establish fraud is not reasonable here.

The type of treatments provided and the characterization of those treatments in claims submitted by Strut are consistently upheld by independent third party No-Fault arbitrators and courts. GEICO is afforded the opportunity to present documentary evidence, witnesses and legal argument in those proceeding. Strut had the right to rely on those findings as related to his treatment protocols. There can be no finding of intent to defraud based on the types and extent of treatment provided and the characterization of the treatment in CPT Codes where Strut has a reasonable basis to believe that the treatments are reimbursable as submitted in No-Fault. The fraud allegations cannot stand.

To the extent that any specific claim for reimbursement should be rightfully denied that determination can only be made on an individual basis assessing the patient, the treatment and the circumstance present. Differences in opinion between medical experts are not the proper subject of a claim of fraud.

## ARGUMENT

### I. GEICO'S REMAINING CAUSES OF ACTION FAIL TO ESTABLISH FRAUD.

GEICO does not distinguish whether the allegations of fraud related to any specific claim submitted are based on the now disproved existence of a "fraudulent medical practice" or if the claim is based on the allegation of "fraud" as related to medical necessity.

GEICO sets forth three separate bases for its claim of fraud:

"267.      Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that:

(i)  RES has no right to receive payment on any pending bills submitted to GEICO because RES is fraudulently incorporated, owned and controlled by non-physicians and, therefore, is ineligible to bill for or to collect No-Fault Benefits;

(ii) RES and Dr. Strutsovskiy have no right to receive payment on any pending bills submitted to GEICO because Dr. Strutsovskiy and RES engage in unlawful fee- splitting with non-physicians and, therefore, are ineligible to bill for or to collect No-Fault Benefits; and

(iii) RES, Dr. Strutsovskiy, and VascuScript have no right to receive payment on any pending bills submitted to GEICO because the Fraudulent Services and Drugs are not medically necessary, and have been provided – to the extent that they have been provided at all – pursuant to pre-determined, fraudulent protocols solely designed to financially benefit the Defendants, rather than to treat the Insureds who supposedly are subjected to them."

Complaint par.267 [Dkt.1]. *See also* par. 278, 292, 300, 308, 314.

GEICO has no evidence of fraud as to the first two grounds listed as (i) and (ii), and in fact has appeared to abandon the underlying basis of an ineligible medical provider.  That leaves only the third ground that the treatments are basically either "not medically necessary" or not "provided at all"

*Treatments Were Provided As Claimed*

RES and Strut verified that the treatments were provided and that they were eligible for reimbursement through the claim forms submitted. GEICO has not produced any evidence to support a theory that any treatments for which Dr. Strut has submitted a claim for reimbursement were not actually provided.

*Medical Necessity*

The remaining basis for all of GEICO's claims is that some, or according to GEICO apparently all, of the treatments that Dr. Strut provided to GEICO insureds were not "medically necessary". The reference to medical necessity arises from the requirement under NY No-Fault Law that reimbursement claims be based on medically necessary treatments.

A determination of medical necessity requires the opinion of a medical professional. The determination is based on the patient's presentation and history at the time the treatment is provided. Opinions may vary as to an individual patient. Often patients will seek a "second opinion".

What is "medically necessary" for any patient may differ over time depending on the patient's reaction to previous treatment and the resolution of some or all of the patient's symptoms. The NY No-Fault system has a process for insurers to challenge whether any treatment is medically necessary. Reference is made to standards in the medical profession and generally accepted treatment protocols. The analysis requires a weighing of factors and consideration each time of the specific patient; their injuries and prior history.

***Pleading Fraud Under New York and Federal Law***

A finding of fraud cannot be based on a difference of opinion; it has to be based on a provably false statement. GEICO has the burden of proving that justifiable reliance on a provably false statement was the proximate cause of the damages they suffered. New York law is clear as to the required elements to plead and prove fraud.

> "Under NY Law '[t]o state a cause of action for fraud a plaintiff must allege (1) a representation of a material fact, (2) the falsity of the representation, (3) knowledge by the party making the representation that it was false when made, (4) justifiable reliance by the plaintiff, and (5) resulting injury."
>
> > *Wright v. Eastman Kodak Co.*, 445 F.Supp.2d 314 at 318 (W.D.N.Y. 2006); citing *Lerner v. Fleet Bank, N.A.* 439 F.3d 273 (2d Cir. 2006).

To prove fraud under New York law, GEICO must show by clear and convincing evidence that: 1) Dr. Strut made a representation of material fact, 2) the representation was false, 3) Dr. Strut knew the representation was false, 4) GEICO justifiably relied on the misrepresentation, and 5) GEICO suffered damages as a result of his reliance. *See Savitsky v. Mazzella*, 210 Fed.Appx 71, 73 (2d Cir. 2006).

Claims of mail fraud as predicate racketeering acts are subject to the heightened pleading requirement of Rule 9(b). *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002); *Flier v. Cayuga County*, 2006 U.S. Dist. LEXIS 65994, at 24-25 (NDNY 2006) [dismissing RICO claims for, among other reasons, failing to plead alleged predicate acts with sufficient particularity required by Rule 9(b)].

Rule 9(b) of Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." *Apace Comm. Ltd. V. Burke,* 522 F.Supp.2d 512 at 515 (WDNY 2007). To comply with Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent,

(2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 515 (WDNY 2007) quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

GEICO achieves the first 3 elements of pleading required under New York Law and by Fed. R. Civ. P. 9(b): GEICO specifies the "statements" made as those contained in the reimbursement forms submitted. GEICO identifies the "speaker" as Dr. Strut or his medical practice RES. GEICO establishes "where" and "when" the statements were made by the information on the claim form.

However, critically, GEICO fails to explain why any individual claim is fraudulent. Therefore GEICO fails to meet the fourth required element.

GEICO attempts, with sweeping unsupported statement, to allege that Dr. Strut's treatment were "fraudulent" because they were never medically necessary and in some cases not even performed at all. That does not suffice for pleading purposes. The actual fraud must be stated with particularity.

> "While 'the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity,' 'the actual . . . fraud alleged must be stated with particularity.'"
>
>> *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 179-180 (2d Cir. 2004) *Wight v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (internal quotation marks omitted).

> "Conclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements."
>
>> *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs.*, No. 11 Civ. 4509, 2013 U.S. Dist. LEXIS 49825, 2013 WL 1385210, at *4 (SDNY 2013) (quoting *Musalli Factory for Gold & Jewelry Co. v. JP Morgan Chase Bank, N.A.*, 382 F. App'x 107, 108 (2d Cir. 2010)).

"Plaintiff's fraud claim fails to allege facts that give rise to a strong inference of fraudulent intent. When alleging fraud, a plaintiff [*12] must "specifically plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Beth Israel*, 2013 U.S. Dist. LEXIS 49825, 2013 WL 1385210, at *4 (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)). Here, Plaintiff conclusorily alleges that "Defendant intentionally concealed and failed to disclose the true facts about the Thunderbolt Products for the purpose of inducing Plaintiff and the Class to purchase the Thunderbolt Products." (Compl. ¶ 111.) This is not enough to adequately plead fraudulent intent. Accordingly, Defendant's motion to dismiss is granted with respect to Plaintiff's fraud claim and the claim is dismissed."

> *Dash v. Seagate Tech. (US) Holdings, Inc.*, 2014 U.S. Dist. LEXIS 88780 at *11-12 (EDNY June 30, 2014).

GEICO alleged that some of the treatments for which Dr. Strut seeks reimbursement were not "performed at all". There is no identification as to the source of information or factual basis of belief for that statement.

### GEICO Fails To Establish Justifiable Reliance

A further fatal flaw in GEICO's case is the lack of justifiable reliance. Realizing this weakness GEICO attempted to preempt the defense by stating in the complaint:

> "261. Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint."

> Exhibit 1 Complaint par. 261 [Dkt 1].

However discovery and the lack of any specificity as to what acts of concealment doom GEICOs attempt at a defense.

"Under New York law, '[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'"

> *Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314, 318 (WDNY 2006) citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 2006 U.S. App. LEXIS 20326, 2006 WL 2260822, at *13 (2d Cir. 2006).

Reliance is not justifiable when the statements are specifically suspect and investigated by the plaintiff. GEICO began as early as November 2010 to challenge Dr. Strut and RES's reimbursement submittals. (Exhibit 6 Leone Depositions: Strut Affidavit: Exhibit 8).

> "After drawing all inferences in Savitsky's favor, we agree with the district court that he failed to establish a genuine issue of material fact as to whether he justifiably relied on Mazzella's deposition. While Savitsky stated in his complaint and in an affidavit that he relied on Mazzella's representations, these statements were conclusory, and he has produced no evidence of his reliance. See Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) ("Genuine issues of fact are not created by conclusory allegations."). Indeed, the record suggests that rather than relying on Mazzella's representations, Savitsky investigated them and attempted to show they were false."

> *Savitsky v. Mazzella*, 210 Fed. Appx. 71, 73 (2d Cir. 2006).

GEICO was provided with every opportunity to verify the medical necessity and veracity of the claims in the No-Fault system. As succinctly set forth in *Appleman New York Insurance Law*, the verification process is comprehensive and provides extensive means for verification by the insurer:

**"[5] Verification Requests**

**[a] Use of Verification Request**

Once the insurer receives the initial written proof of claim from the claimant or a potential assignee, the carrier may issue a verification request to confirm certain aspects of the claim prior to making a determination on payment.

…………

"Examples of requests for additional verification include requests for more detail concerning a claimant's medical condition or absence record at work prior to the accident. An insurer may also request pertinent medical reports and notes and may request that the forms provided be completely filled out and contain original signatures of the proper parties." n52

………

An examination under oath in the no-fault claim is a request for proof of claim. n54 The Insurance Department has issued opinion letters providing that examination under oath of both insured parties and assignees/health care providers should be treated similarly as medical examinations. The failure to appear at such an examination is a violation of a policy condition and will support a denial of coverage.

The new regulations explicitly state that a claimant must appear and submit to examinations under oath, "as may reasonably be required." n55

The presentation and processing of a claim may continue for several years after the initial application for benefits is received. The insurer may continue to request verifications as the claim is presented."

*2-27 New Appleman New York Insurance Law § 27.02.*

GEICO could, and in some cases did, utilize the rights they had to investigate the nature of Dr. Struts practice and the treatments he provided. (Exhibits 8, 10, and 13). GEICO suspected that the claims being submitted were fraudulent. GEICO was not required to pay them and could have required Dr. Strut to challenge their denial through avenues provided under No-Fault. In fact, GEICO in many cases did just that. Unfortunately for GEICO the claims were by and large upheld in No-Fault arbitrations (Exhibit 7, 19) and in court. (Exhibits 9).

GEICO employed hired gun "peer-review" doctors to examine in detail the claims submitted for medical necessity. Unfortunately these experts produced "cookie cutter" denials that were rejected by the arbitrators. (Exhibit 7, 19)

GEICO's failure to properly challenge the claims in the No-Fault System does not afford them an opportunity for a second bite at the apple on a theory of fraud.

"As to the element of reliance, "[w]here a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he [or she] cannot claim justifiable reliance on [the] defendant's misrepresentations."

> *Tanzman v. La Pietra*, 8 A.D.3d 706 at 707 (3d Dept. 2004) citing *Stuart Silver Assoc. v Baco Dev. Corp.*, 245 A.D.2d 96, 98-99, (1st Dept. 1997).

This has been the law of New York for over half a century:

"The general rule was enunciated by this court over a half a century ago in Schumaker v. Mather (133 N. Y. 590, 596) that "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations."

> *Danann Realty Corp. v. Harris*, 5 NY2d 317, 322 (1959).

GEICO was required to make the effort necessary to protect itself if they felt that past submissions were not eligible for reimbursement for any reason. As to pending claims GEICO had the full tool box of verification processes available. GEICO is required to operate within the No Fault system of claim verification under these circumstances.

"As a matter of law, "a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it."

> *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 703 (SDNY 2013) quoting *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 194-95 (1st Dept. 2012) (internal quotations omitted).

The Second Circuit has found that "under New York law, where 'the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means

available to him of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.'" *Continental Airlines, Inc. v. Lelakis*, 129 F.3d 113 1997 U.S. App. LEXIS 32027, 1997 WL 701363, at *3 (2d Cir. 1997) (quoting *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, (1959)).

> "In a federal case applying New York law, plaintiff's fraud claim was dismissed because, inter alia, the allegations failed to establish that the plaintiff had justifiably relied on defendant Sotheby's representation that a painting, later found to be inauthentic, would be accompanied at sale by a letter from an expert "discussing" the painting. *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1229 (SDNY 1995). The court held that plaintiff's access -- his ability to request the letter himself and see what it said about the painting's authenticity -- negated justifiable reliance. *Id.*"

> *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699 at 704 (SDNY 2013).

Dissatisfied with the procedure that New York designed to evaluate medical necessity and the proper payment of reimbursement claims under No-Fault, GEICO turns to this court on a rambling and largely unsupported theory of "fraud". GEICO complains here about statements that they have not relied on since as early as October 2010. (Deposition of R. Leone. Exhibit 7). "[A] person may not justifiably rely on a representation if "there are 'red flags' indicating such reliance is unwarranted." *Nat'l Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 89 Fed. Appx. 287, 292 (2d Cir. 2004) quoting *In re Mercer*, 246 F.3d 391, 418 (5th Cir. 2001).

The Second Circuit has applied the requirement of a showing of reasonable reliance to claims of fraud in No-Fault reimbursement under a RICO theory:

> "Moreover, "where mail fraud is the predicate act for a civil RICO claim, the proximate cause element articulated in Holmes requires the plaintiff to show

'reasonable reliance.'" Bank of China, N.Y. Branch v. NBM LLC, 359 F.3d 171,
176 (2d Cir. 2004)."

> *Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 2014 U.S.
> Dist. LEXIS 63242, 65-66 (EDNY May 7, 2014).

### No Fault is at Its Essence a Contract: Contract Principles Apply

"In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider
the entire context of the transaction, including factors such as its complexity and
magnitude, the sophistication of the parties, and the content of any agreements
between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc*., 343
F.3d 189 (2d Cir. 2003). With respect to the impact of due diligence obligations on
reasonable reliance, the Second Circuit stated in *Lazard Freres & Co. v. Protective
Life Insurance Co*., 108 F.3d 1531 (2d Cir. 1997):"[W]here . . . a party has been
put on notice of the existence of material facts which have not been documented
and he nevertheless proceeds with a transaction without securing the available
documentation or inserting the appropriate language in the agreement for his
protection, he may truly be said to have willingly assumed the business risk that
the facts may not be as represented. Succinctly put, a party will not be heard to
complain that he has been defrauded when it is his own evident lack of due care
which is responsible for his predicament." *Id.* at 1543 (quoting *Rodas v.
Manitaras,* 159 A.D.2d 341, 343, 552 N.Y.S.2d 618, 620 (1st Dep't 1990)).

> *Morales Elec. Contr., Inc. v. Siemens Bldg. Techs., Inc.,*
> 2012 U.S. Dist. LEXIS 43258, 19-21 (EDNY 2012).

GEICO's theory of fraud regarding medical necessity fails for lack of justifiable reliance.

### The Federal Cases Allowing Fraud Claims Arising Out
### Of No-Fault Reimbursements Do Not Prevail Here

While courts in this circuit have allowed fraud claims based on No-Fault reimbursement
to stand, a closer look at those cases and the facts of this case show a clear and decisive
distinction.

The claims that are allowed to continue under fraud do not center on fraud based on the
medical necessity of the treatment. Those cases are by and large based on lack of a qualified
provider; the "Medical Practice" cases. In those cases the insurer did not have the ability to

determine if the claims were valid because the qualification of the provider is not an element allowed in the No-Fault verification process. The so called *Mallela* cases (*In State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005)) are distinct from the remaining claims here.

GEICO tried to plead a "fraudulent medical practice" here as in the *Mallela* case but the evidence soon failed them. RES was at all times and remains a properly formed and qualified medical provider entitled to No-Fault reimbursement.

Allegations of fraud with regard to the issue of medical necessity are not sufficient on these facts to remove the claims from the no-fault processing system.

Although GEICO will argue, undoubtedly, that other districts in this circuit, especially the Southern and Eastern district, have carved out an exception to the New York Court of Appeals analysis, such exception is inappropriate to these facts and claims.

The Western District is not bound by the determinations of another equally empowered District Court. The Second Circuit Court of Appeals has not ruled directly on the issue. The other district courts allowance of fraud and RICO claims, related to no-fault reimbursement, are at most persuasive, but certainly not precedential. More importantly, the facts of the current case are distinguished from the facts of the cases decided in the other districts in that there is no "bright line" fraud here.

This case has been boiled down to whether treatments were medically necessary. A determination that even GEICO's experts agree is to be made case by case depending on the presentation of the patient at the time of the treatment. This case is at its essence about the difference of opinion as to the medical necessity and treatment provided by Dr. Strut.

The holding in *Allstate Insurance Company v. Mun*, 751 F.3d 94, 101 (2d Cir. 2014) is not in opposite. In that case, the issue before the Second Circuit was whether or not arbitration

was mandatory in a case in which the carrier had made payment within the thirty (30) day period not knowing or suspecting that the provider was engaged in fraud. In that instance, the Court found that the insurer was able to proceed on a basis of fraud and was not required to arbitrate the claim. Here, GEICO suspected Dr. Strut and utilized the no-fault system verification process to its fullest. GEICO cannot be heard to have relied on Dr. Strut's submittals, and therefore the basis of fraud does not exist. In addition GEICO seeks a future declaration which *Mun* does not support.

### *This Court Must Look to New York for Guidance on the Interplay of Fraud and No-Fault*

The New York Court of Appeals addressed head on the interplay between the short timeframes allowed to deny a claim under No-Fault and the possibility of fraud by providers.

> "Moreover, although there may be some merit to Travelers' protest that a 30-day (plus potential tolling) window is generally too short a time frame in which to detect billing fraud, any change is up to the Legislature. 2  As we observed in *Presbyterian* and repeated in *Hospital for Joint Diseases*: "No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits. That is part of the price paid to eliminate common-law contested lawsuits... . The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices"

> > *Fair Price Med. Supply Corp. v. Travelers Indem. Co.,* 10 NY3d 556 at 566 (2008) quoting *Presbyterian Hosp. v. Md. Cas. Co.,* 90 N.Y.2d 274 at 285 (1997).

> "Finally, Travelers and amici curiae argue that, unless we adopt the approach they advocate, insurers in the future will be forced to blanket insureds and their assignees with demands for additional verification in order to combat fraud. A flurry of verification requests, however, is unlikely to burden the no-fault system more than the uncertainty and delay apt to result from judicial expansion of the no-coverage exception. And in this case, of course, Travelers discovered potential

billing fraud well within the 30-day time period. Rather than acting on Fair Price's claims in a timely fashion, however, Travelers waited for almost two full years."

> *Fair Price Med. Supply Corp. v. Travelers Indem. Co.,* 10 NY3d 556 at 566 (2008).

GEICO cannot avoid the obligations of the No-Fault law imposed on a carrier in the balancing of that system by fashioning a broad claim of "fraud" based on a disagreement over individual cases of medical necessity. Especially where there is example after example to the arbitrators disagreeing with GEICO's position.

> "In sum," the Appellate Division concluded, "while [Travelers] certainly was entitled to contest [Nivelo's] claim as fraudulent, it was required to do so within the rules of the no-fault system," [*4] which impose tight deadlines (id. at 286). The Appellate Division thereafter granted Travelers leave to appeal, and asked us whether its opinion and order was properly made. We now affirm, and answer the certified question "Yes."
>> *Fair Price Med. Supply Corp. v. Travelers Indem. Co.,* 10 NY3d 556 at 566 (2008); See e.g., *Allstate Ins. Co. v. Valley Physical Medicine & Rehab., P.C.*, 555 F.Supp. 2d 335 (EDNY 2008) [applying New York law].

On November 24, 2010 GEICO corresponded with Dr. Strut and advised that "GEICO is continuing to seek verification of these claims to verify the legitimacy of the billing practices of Vascu.Flo and Vascuscript. In addition, GEICO is continuing to verify the true relationship of Aaron Hirsch, Dean Trzewieczynski and Dr. Mikhail Strutsovskiy. The faxed letter provided on November 23, 2010 does not adequately explain these relationships."(Ex 7)

As of November of 2010, GEICO no longer accepted that RES was validly billing. Any billing submitted thereafter could not form the basis of fraud because GEICO was not relying in any way on the statements made therein.

GEICO's Special Investigation Unit, and in house litigation department, were on guard protecting GEICO's rights with regard to claims submitted by Dr. Strut. GEICO had no belief in Dr. Strut's claim forms. GEICO had the technology available to flag all of Dr. Strut's claims so that they could be denied. GEICO chose to pay some claims, because they feared if they were wrong, they may be subject to interest and attorney's fees. They cannot now claim "fraud", wherein they had reason to investigate, an opportunity to investigate, and the legal tools available to investigate, but chose a different course for their own economic purposes. There was no reliance on Dr. Strut. Even if any of the claims were false, which they are not, there is no fraud. Without fraud there is no RICO predicate act.

### *Reliance Is Especially Absent In The Claims Related To Drug Prescriptions*

GEICO claims that Dr. Strut improperly prescribed narcotics to his patients. Any damage incurred by GEICO is not based on any claims submitted by Dr. Strut. Dr. Strut did not fill the prescriptions or ask for reimbursement of the cost of prescriptions. GEICO's claims regarding damage for reimbursement of drugs is addressed to the pharmacist defendants that GEICO has settled with and dismissed from the suit "without costs" (Dkt Ex. 4).

GEICO cannot show any "resulting injury" for drug reimbursement based on reliance on statements that Dr. Strut made to them. The injury is based, if at all, on the claims for reimbursement made by the pharmacists.

> "An injury "is necessary . . . to establish civil standing" for a RICO violation. Hecht v. Commerce Clearing House, 897 F.2d 21, 25 (2d Cir. 1990)(RICO conspiracy). In a civil RICO action, the plaintiff is "required to show that a RICO predicate offense not only was a 'but for' cause of his injury but was the proximate cause as well."
>
> > *Watkins v. Smith*, 2012 U.S. Dist. LEXIS 165762 (SDNY 2012) citing *Hemi Group, LLC*, 130 S.Ct. at 989 (citation omitted).

## II.     NO-FAULT DETERMINATIONS AS TO MEDICAL NECESSITY SHOULD BE ADDRESSED TO THE COMPREHENSIVE SYSTEM CREATED BY NEW YORK.

New York was faced with a dilemma when it came to automobile accidents. The only forum available to accident victims for relief was the courts. Many time people were being denied timely wages and needed medical treatment because of delays in the judicial system. In addition insurers were spending money defending cases instead of paying claims. The legislature in a thoughtful weighing of all stakeholder concerns developed a comprehensive approach that provided victims with lost wages and medical benefits without any need to prove "fault".  As a compromise insurers were assured that only "serious injuries" could proceed to court. The result is the New York Comprehensive Motor Vehicle Reparations Act ("No-Fault"). To achieve its goal the system depends on the swift and fair processing of claims:

> "New York's no-fault automobile insurance system is designed 'to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists' " (id. at 317, quoting *Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 860, 800 NE2d 728, 768 NYS2d 423 [2003] [upholding regulations reducing time frames for claiming and proving entitlement to no-fault benefits]). "In furtherance of these goals, the Superintendent of Insurance has adopted regulations implementing the No-Fault Law (Insurance Law art 51), including circumscribed time frames for claim procedures" (*Hospital for Joint Diseases*, 9 NY3d at 317). We described the basic no-fault regime as follows: "The[] regulations require an accident victim to submit a notice of claim to the insurer as soon as practicable and no later than 30 days after an accident  (see 11 NYCRR 65-1.1, 65-2.4 [b]). Next, the injured party or the assignee … must submit proof of claim for medical treatment no later than 45 days after services are rendered (see 11 NYCRR 65-1.1, 65-2.4 [c]). Upon receipt of one or more of the prescribed verification forms used to establish proof of claim, … an insurer has 15 business days within which to request 'any additional verification required by the insurer to establish proof of claim' (11 NYCRR 65-3.5 [b]). An insurer may also request 'the original assignment or authorization to pay benefits form to establish proof of claim' within this time frame (11 NYCRR 65-3.11 [c]). Significantly, an insurance company must pay or deny the claim within

30 calendar days after receipt of the proof of claim (see Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). If an insurer seeks additional verification, however, the 30-day window is tolled until it receives the relevant information requested (see 11 NYCRR 65-3.8 [a] [1])" (Hospital for Joint Diseases, 9 NY3d at 317 [footnotes omitted]).”

> *Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 10 NY3d 556 at 563 (2008).

GEICO seeks to go around this carefully designed system for benefit reimbursement and claim verification. GEICO is dissatisfied with the results that the "No-Fault" system has provided with regard to Dr Struts treatments. This case was not brought because GEICO could not verify claims; it is not brought because GEICO did not verify claims: it is brought because GEICO was unsuccessful in avoiding paying these claims under the No-Fault System.

They seek relief from the No-Fault system in this court. Such relief is a matter for the New York State legislature, not an ill-conceived RICO conspiracy fraud claim.

### RICO is Not Appropriate Here

When analyzing a claim under RICO courts must carefully review the allegations "with appreciation of the extreme sanctions [RICO] provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorney's fees in federal courts simply because they are cast in terms of RICO violations." *Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 1001 (EDNY 1995); see also *Schmidt v. Fleet Bank*, 16 F.Supp. 2d 340, 346 (SDNY 1998) ["[Civil RICO] is an unusually potent weapon - the litigation equivalent of a thermonuclear device"]; *Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 397 (SDNY 2000) [finding that "this Court looks with particular scrutiny at Civil RICO claims to ensure that the Statute is used for the purpose intended by Congress"].

*RICO is Not An Appropriate Cause of Action Where a Comprehensive Statute*
*Such as the NY No-Fault Statute Already Provides a Process to Resolve the Dispute*

New York designed a comprehensive approach to addressing reimbursement for medical treatment provided to auto accident victims. The state legislature considered the competing goals of preventing a flood of negligence claim in the courts and the need to assure swift and appropriate reimbursement to accident victims of lost wages and medical costs.

As discussed in a recent case out of this District the Second Circuit Court of Appeals has considered the proper use of RICO juxtaposed with a more detailed statutory treatment:

> "Courts in this Circuit routinely have found federal RICO claims precluded [*18] where the source of the asserted right is covered by a more detailed federal statute. For example, in *Norman v. Niagara Mohawk Power Corp*., the plaintiffs brought a claim under RICO alleging that their employer retaliated against them when they attempted to bring the employer's pattern of racketeering to the attention of regulatory authorities. 873 F.2d 634, 635 (2d Cir. 1989). The Second Circuit examined the remedies available to employees making such "whistleblower" claims and concluded that section 210 of the Energy Reorganization Act, which provides a remedy for employees who have been retaliated against for making complaints and creates a procedural framework for vindicating their right to be free of such conduct, was the exclusive federal remedy for employee protection. I*d.* at 637. The Second Circuit agreed with the district court's finding that the plaintiffs' complaint, "distilled to its essence, alleges no more than that appellants were discriminated against for having made complaints about safety at a nuclear plant--a section 210 claim," and affirmed dismissal of the RICO claim. Id. at 638. See also, *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc*., 770 F. Supp. 2d 497, 515 (EDNY 2011) [*19] (finding RICO claim preempted because, inter alia, "allowing plaintiffs to pursue a civil RICO claim grounded in the same facts as plaintiffs' FLSA claim would, essentially, create a new private right of action that would allow plaintiffs to seek treble damages--instead of . . . unpaid wages and liquidated damages--and would render meaningless [the FLSA's remedial provisions]"); *Eldred v. Comforce Corp., No*. 08 Civ. 1171, 2010 U.S. Dist. LEXIS 18260, at *28-29 (NDNY March 2, 2010) [finding RICO claim precluded as duplicative of FLSA claim, and noting that "[t]his approach ensures that the '[a]rtful invocation of controversial civil RICO, particularly when inadequately pleaded' does not endanger the uniform

administration of core concerns of the primary enforcement scheme." (quoting *Norman*, 873 F.2d at 637)].

> *Hintergerger v. Catholic Health System,* 2012 U.S. District Lexis 37066 at *17-19 (WDNY 2012).

This same logic applies here where we there is a very comprehensive state statute governing No Fault providers and insurers. This District has recently opined that RICO has a limited role in the presence of a well-designed and comprehensive remedy under another statute.

> "There exists a well-established principle that "a precisely drawn, detailed statute preempts more general remedies." Hinck v. United States, 550 U.S. 501, 506, 127 S. Ct. 2011, 167 L. Ed. 2d 888 (2007). Where Congress devises a "careful blend of administrative and judicial enforcement powers," this principle leads "unerringly to the conclusion that [the statute] provides the exclusive judicial remedy for claims [falling within its [*17] scope]." Brown v. GSA, 96 S. Ct., 1961, 48 L. Ed. 2d 402, 425 U.S. 820, 833-35 (1976)."

> *Hintergerger v. Catholic Health System,* 2012 U.S. District Lexis 37066 at *16-17 (WDNY 2012).

### *Supplemental Jurisdiction Should Not Be Exercised Here*

Without the RICO claim the remainder of the case is at best based on common law fraud and unjust enrichment. Even if these claims should proceed they should not proceed in federal court.

> "As noted above, the District Court declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims after dismissing Plaintiffs' RICO claims prior to trial. See FCAM III, 219 F. Supp. 2d at 588. "The exercise of supplemental jurisdiction is left to the discretion of the district court, and this Court's review is limited to whether the district court abused its discretion." *Ametex Fabrics v. Just in Materials*, 140 F.3d 101, 105 (2d Cir. 1998) (internal quotation marks omitted); see *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). "If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (internal quotation marks omitted). "Moreover, the discretion implicit in the word 'may' in subdivision (c) of [28 U.S.C.] § 1367

permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants." *Purgess*, 33 F.3d at 138; see *Castellano*, 937 F.2d at 758.

> *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 at 182-183 (2d Cir. 2004).

## III. THE COUNTERCLAIM FOR DAMAGES SHOULD BE GRANTED.

Under New York's No-Fault law GEICO is obligated to timely pay claims submitted by an eligible provider on the proper forms.

> "In accordance with New York's No-Fault Laws, Plaintiffs must pay for medically necessary diagnostic tests. See N.Y Ins. Law §§ 5101-109. These benefits may also be assigned for payment of services rendered to qualified "providers of health care services." See 11 N.Y.C.R.R. § 65-3.11. A proper assignment requires that the health care provider submit either (1) "a properly executed Authorization to Pay Benefits" or (2) "a properly executed assignment on . . . the prescribed "Verification of Treatment" using New York State Form NF-3. Id. The services performed must be "necessary for the treatment of the injuries sustained." Id. at § 65-3.16(a)(6) (emphasis added). Within thirty days of receiving a valid claim, an insurance company must pay the claim in full or incur interest charges at two percent per month. Id. at §§ 65-3.8 to 3.9."

> *Allstate Ins. Co. v. Ahmed Halima*, 2009 U.S. Dist. LEXIS 22443 at *5-6 (EDNY 2009).

GEICO acknowledges that RES has submitted claims for reimbursement that have been pending. In choosing this forum and this theory (i.e. fraud) GEICO waived any other basis for denying the claims. As a matter of law all unpaid claims are due together with the interest and attorney's fees allowed by the No-Fault statue and regulations.

## CONCLUSION

All allegations of fraud brought by GEICO for any claims submitted after November of 2010 when the investigation began in earnest must be dismissed. To the extent that any claims were actually arbitrated or litigated, they must be dismissed. To the extent that any claims are based solely on the fact that Dr. Strut and RES were not proper recipients based on licensing and other issues, they must be rejected based on the evidence gathered to date and GEICO's own admissions.

Dated: Buffalo, New York
October 31, 2014

*s/Robert E. Knoer*\
Robert E. Knoer, Esq.\
**THE KNOER GROUP, P.L.L.C.**\
*Attorneys for Defendants Strutsovskiy*\
*and RES Physical Medicine &*\
*Rehabilitation Services, P.C.*\
424 Main Street, Suite 1820\
Buffalo, New York 14202\
(716) 332-0032\
rknoer@knoergroup.com

TO: RIVKIN RADLER LLP
*Counsel for Plaintiffs,*
*Government Employees Insurance Co., GEICO Indemnity Co,*
*GEICO General Insurance Company and GEICO Casualty Co.*
Barry I. Levy, Esq.
Max Gershenoff, Esq.
Susan L. Miller, Esq.
926 RXR Plaza
Uniondale, New York  11556
(516) 357-3000