UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT EMPLOYEES INSURANCE CO.,       Docket No. CV 12-0330
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY CO.,

Plaintiffs,

     -against-
MIKHAIL STRUTSOVSKIY, M.D. a/k/a MICHAEL
STRUT, M.D., RES PHYSICAL MEDICINE &
REHABILITATION SERVICES, P.C., AARON HIRSCH,
DEAN TRZEWIECZYNSKI, KENNETH ANDRUS,
VASCU.FLO, INC. and VASCUSCRIPT, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### PLAINTIFFS' MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RIVKIN RADLER LLP
Barry I. Levy
Max Gershenoff
926 RXR Plaza
Uniondale, New York 11556-0926
RR File: 5100-103
Telephone:   (516) 357-3000
Facsimile:    (516) 357-3333

*Counsel for Plaintiffs Government Employees
Insurance Co., GEICO Indemnity Co., GEICO
General Insurance Company and GEICO Casualty
Co.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS...................................................................................................3

ARGUMENT.......................................................................................................................6

I.     The Standards on a Motion for Summary Judgment.........................................................6

II.    GEICO Consents to Partial Summary Judgment to the Limited Extent That its RICO, Common Law, and Declaratory Judgment Claims are Predicated on Allegations That RES and Strut's Predecessor Unincorporated Medical Practice Were Owned and Controlled by Hirsch and VascuFlo ......................................................8

III.   Defendants' Motion for Summary Judgment Should be Denied to the Extent That GEICO's RICO, Common Law, and Declaratory Judgment Claims are Predicated on Defendants' Submission of Fraudulent, Inflated Billing for Medically Unnecessary and Illusory Services ......................................................................................9

     A.    There is a Genuine Dispute as to Material Facts Regarding Whether Defendants Systematically Submitted Inflated Billing for Medically Unnecessary and Illusory Services Pursuant to a Pre-Determined, Fraudulent Protocol ..............................................................................................9

     B.    GEICO's Fraud-Based Claims are Pleaded With the Requisite Specificity.............12

     C.    GEICO's Claims in This Action are Not Preempted by New York's No-Fault Insurance Laws and Regulations..............................................................14

     D.    GEICO Reasonably Relied on Defendants' Fraudulent Billing ................................16

     E.    Defendants' – or for That Matter GEICO's – Success in Individual No-Fault Collections Arbitration Provides No Basis for Summary Judgment .........................22

     F.    Even if the Court Were to Grant Summary Judgment Dismissing GEICO's RICO Claims, it Nonetheless Would Have Diversity Jurisdiction Over GEICO's Common Law Fraud and Unjust Enrichment Claims...............................24

IV.   Defendants' Motion for Summary Judgment With Respect to Their Counterclaims Likewise Should be Denied..........................................................................................24

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
  2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. 2005) ...............................................................13, 16

Allstate Ins. Co. v. Ahmed Halima,
  2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009) ........................................................13, 15, 20

Allstate Ins. Co. v. Etienne,
  2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. 2010) ......................................................13, 15, 16

Allstate Ins. Co. v. Lyons,
  843 F. Supp. 2d 358 (E.D.N.Y. 2012) ...........................................................13, 14, 19, 20

Allstate Ins. Co. v. Mun,
  751 F.3d 94 (2d Cir. 2014) .............................................................................14, 22, 23

Allstate Ins. Co. v. Valley Physical Med. & Rehab.,
  P.C., 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009) ....................................................13, 20

Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,
  555 F. Supp. 2d 335 (E.D.N.Y. 2008) ....................................................................14, 15

Arnold v. Krause, Inc.,
  233 F.R.D. 126 (W.D.N.Y. 2005) ...............................................................................6

Bridge v. Phoenix Bond & Indem. Co.,
  553 U.S. 639 (2008) ..............................................................................................21

Businesses for a Better New York v. Smith,
  2010 U.S. Dist. LEXIS 96954 (W.D.N.Y.)) ..................................................................22

C.f. Allstate Ins. Co. v. Williams,
  2014 U.S. Dist. LEXIS 170191 (E.D.N.Y. 2014) .............................................................16

c.f., State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.,
  2007 U.S. Dist. LEXIS 74459 (E.D.N.Y. 2007) .............................................................23

C.f. Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG,
  970 F. Supp. 2d 157 (S.D.N.Y. 2013) .........................................................................19

Catholic Health Care West v. US Foodserv.,
  729 F.3d 108 (2d Cir. 2013) .....................................................................................21

ii

Charney v. Zimbalist,
    2014 U.S. Dist. LEXIS 137678 (S.D.N.Y. 2014) ........................................................18

Ehrlich v. Berkshire Life Ins. Co.,
    2002 U.S. Dist. LEXIS 3730 (S.D.N.Y. 2002) ..........................................................18

Fair Price Med. Supply Corp. v. Travelers Indem. Co.,
    10 N.Y.3d 556, 860 N.Y.S.2d 471 (2008) ................................................................15

Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C.,
    2011 U.S. Dist. LEXIS 130721 (E.D.N.Y. 2011) ....................................................13

Hawkins-El v. First Am. Funding,
    891 F. Supp. 2d 402 (E.D.N.Y. 2012) ......................................................................12

Knox v. County of Putnam,
    2012 U.S. Dist. LEXIS 139586 (S.D.N.Y. 2012) ....................................................7, 9

McLaughlin v. Am. Tobacco Co.,
    522 F.3d 215 (2d Cir. 2008) .....................................................................................21

Mills v. Luplow,
    2008 U.S. Dist. LEXIS 79028 (W.D.N.Y. 2008) .......................................................7

Mutual Ben. Life Ins. Co. v. Morley,
    722 F. Supp. 1048 (S.D.N.Y. 1989) ........................................................................18

Sec. Ins. Co. v. Old Dominion Freight Line, Inc.,
    391 F.3d 77 (2d Cir. 2004) ................................................................................6, 7, 9

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) ........................................13, 15, 16

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2010 U.S. Dist. LEXIS 21376 (E.D.N.Y. 2010), aff'd 409 Fed. Appx. 453 (2d
    Cir. 2011) ..................................................................................................................16

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    375 F. Supp. 2d 141 (E.D.N.Y. 2005) ...............................................................13, 15

State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008) ....................................................................15

State Farm Mut. Auto. Ins. Co. v. Kalika,
    2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. 2006) ...........................................13, 14, 15, 16

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003) .................................................................................6, 20

Valle v. Gebler,
     2005 U.S. Dist. LEXIS 38927 (W.D.N.Y. 2005) ................................................22

VanWormer v. Gruppo Rizzi 1857, s.r.l.,
     2007 U.S. Dist. LEXIS 52806 (N.D.N.Y. 2007) ................................................ 7, 9

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion by Defendants Mikhail Strutsovskiy, M.D. a/k/a Mikhail Strut, M.D. ("Strut") and RES Physical Medicine & Rehabilitation Services, P.C. ("RES")(collectively "Defendants") for summary judgment dismissing GEICO's Complaint in this case and granting Defendants' Counterclaim for damages.

It would be completely inappropriate to resolve this case through summary judgment. GEICO has presented considerable evidence to demonstrate that Defendants – a physician and a related medical professional corporation – submitted a massive amount of fraudulent no-fault insurance billing that misrepresented the medical necessity of the underlying pain management and physiatry services and, in many cases, that the underlying services actually were performed in the first instance.

For instance, in opposition to the present motion GEICO has submitted, among other things, the declarations of two very distinguished physicians, Peter Staats, M.D. and Matthew Shatzer, D.O. As the Court will see, Dr. Staats is a professor at The Johns Hopkins University School of Medicine and former Chief of the Division of Pain Medicine in the Department of Anesthesiology and Critical Care Medicine at The Johns Hopkins University School of Medicine, with an exceedingly long list of peer-reviewed publications to his credit and a lengthy record of service on the editorial boards of many leading pain management publications. Dr. Shatzer is the Residency Program Director for Physical Medicine and Rehabilitation at Hofstra-North Shore LIJ School of Medicine and the Chief of Physical Medicine and Rehabilitation at North Shore University Hospital.

As set forth, below, both Dr. Staats and Dr. Shatzer concluded that Defendants routinely misrepresented the complexity of the presenting problems of the GEICO insureds they purported to treat, and fabricated and exaggerated the results of their initial and follow-up examinations. Dr. Staats and Dr. Shatzer also concluded that – based on these fabricated and exaggerated examination "results" – Defendants routinely purported to subject GEICO insureds to medically unnecessary pain management injections and other "treatments", without regard for the insureds' individual circumstances or presentment. What is more, Dr. Staats and Dr. Shatzer concluded that Defendants routinely prescribed large amounts of narcotics and other habit-forming drugs to insureds who did not require them, and in a number cases of continued to prescribe large amounts of such drugs to the insureds despite clear indications that the drugs were being abused or diverted. Overall, both Dr. Staats and Dr. Shatzer concluded that the manner in which Defendants "treated" the GEICO insureds indicated a conscious disregard for their welfare.

Notably, in the present motion, Defendants have not proffered any declaration or testimony from any physician other than Strut, himself, in support of their fraudulent treatment and billing practices. As it appears that – for purposes of this motion – the only physician willing to speak in support of Defendants' practices is Strut, himself, it is important to note that Strut is a convicted felon. It likewise is important to note that Strut's felony conviction was predicated on his involvement in a large-scale Medicare fraud scheme that was quite similar to the fraudulent scheme in the present case, whereby he systematically submitted or caused to be submitted fraudulent Medicare claims for medically unnecessary and illusory services. In addition, Strut is barred for life

from participating in the Medicare program, cannot obtain malpractice insurance, and – as a result – cannot treat patients with ordinary health insurance or Workers' Compensation insurance.[1]

In light of these issues, and other issues described more fully below, there clearly are questions of material fact with respect to whether the "treatments" Defendants purported to provide to GEICO insureds were medically unnecessary or illusory. In addition, there clearly are questions of material fact with respect to whether Defendants provided their supposed "treatments" – to the extent they were provided at all – pursuant to a pre-determined, fraudulent protocol designed to maximize their billing, rather than to treat or otherwise benefit the GEICO insureds who supposedly were subjected to them. These questions cannot be determined as a matter of law and must be resolved by a jury. Accordingly, and as set forth more fully herein, Defendants' motion should be denied to the extent that GEICO's RICO, common law, and declaratory judgment claims are predicated on Defendants' submission of fraudulent, inflated billing for medically unnecessary and illusory services.

## STATEMENT OF FACTS

GEICO respectfully refers the Court to the accompanying Declaration of Robert Leone ("Leone Decl."), Declaration of Peter Staats, M.D. ("Staats Decl."), Declaration of Matthew Shatzer, D.O. ("Shatzer Decl."), Declaration of Jacqueline Thelian, CPC, CPC-I ("Thelian Decl."), Declaration of Max Gershenoff ("Gershenoff Decl."), the exhibits annexed thereto, and GEICO's

---

[1] Defendants' failure to proffer any support for their "treatment" practices beyond Strut's own ipse dixit is all the more notable in light of the fact that Defendants retained an "expert" in this case, Ralph Laraiso, D.O., and produced Dr. Laraiso for a deposition. However – and as discussed more fully below – during his deposition Dr. Laraiso acknowledged that he is not an expert with respect to the prolotherapy injections Defendants purported to provide to GEICO insureds or the medical coding issues that comprise a significant part of GEICO's Complaint. What is more, when presented with specific examples of Defendants' outrageous narcotics prescribing practices, Dr. Laraiso repeatedly indicated that Defendants' practices fell below the standard of care that he or any other reasonable physician would have employed. This, despite the fact that, as discussed below, Dr. Laraiso clearly has had a long and intimate personal relationship with Strut.

3

Response to Defendants' Statement Pursuant to Local Rule of Civil Procedure 56 ("Pl. Rule 56 Response"), for a full statement of the facts relevant to this motion. As set forth therein, there are many issues of material fact that preclude summary judgment in this case. Briefly, however, it is important to note the following:

(i)  GEICO commenced this action on April 18, 2012 against not only Strut and RES, but also against Aaron Hirsch ("Hirsch"), Dean Trzewieczynski ("Trzewieczynski"), Kenneth Andrus ("Andrus"), Vascu.Flo. Inc. ("VascuFlo"), and VascuScript, Inc. ("VascuScript"). See Docket No. 1.

(ii)  In its Complaint, GEICO not only alleged that Strut and RES systematically submitted inflated billing for medically unnecessary and illusory services, but also alleged that: (a) Hirsch and VascuFlo, who are not physicians, unlawfully owned and controlled RES and Strut's predecessor unincorporated medical practice; and (b) Trzewieczynski, Andrus, and VascuScript knowingly billed GEICO for medically unnecessary drugs prescribed by Strut, in collusion with Strut, RES, Hirsch, and VascuFlo. See Docket No. 1, passim.

(iii)  Discovery in this case has provided substantial support for GEICO's allegations that Strut and RES fraudulently submitted inflated billing to GEICO for medically unnecessary and illusory services, and that the drugs billed through VascuScript likewise were medically unnecessary. See, e.g., Staats Decl., ¶¶ 10-12, and Exhibit "A"; Shatzer Decl., ¶¶ 5-7, and Exhibit "A". Moreover, in connection with this action, GEICO retained the services of a professional medical coding expert, Jacqueline Thelian, CPC, CPC-I. Both Ms. Thelian and Dr. Staats concluded that Defendants' billing for various of their "treatments" misrepresented the nature of the services they provided. See Thelian Decl., ¶¶ 5-7, and Exhibit "A"; Staats Decl., ¶¶ 10-12, and Exhibit "A".

(iv)  Notably, though Defendants are moving for summary judgment, they have not produced any testimony or affidavits regarding the legitimacy of their "treatment" and billing practices from any physicians other than Strut, himself. See Affidavit of Mikhail Strut ("Strut Aff."), passim. However, Strut is a convicted felon, with a history of professional discipline, and his felony conviction and professional discipline were predicated on his participation in a Medicare fraud scheme that was similar to the scheme in the present case. See Leone Decl., ¶¶ 6-31.

(v)  Defendants' failure to proffer any physician affidavits or testimony in support of their motion (other than the Strut Aff.) is all the more notable considering that Defendants retained an "expert" in this case, Ralph Laraiso, D.O., and produced Dr. Laraiso for a deposition. See Gershenoff Decl., Exhibit "B". However, during his deposition, Dr. Laraiso gave testimony to the effect that, in a number of cases, the manner in which Defendants "treated" GEICO insureds fell short of the standards of care employed by

4

reasonable physicians, including the standards of care that Dr. Laraiso himself would have employed. Id., pp. 61, 70, 105, 118-157, 162, 167-180, 191-205.[2]

(vi)   While discovery in this case has provided substantial support for GEICO's allegations that Strut and RES fraudulently billed GEICO for medically unnecessary and illusory services, and that the drugs billed through VascuScript likewise were medically unnecessary, discovery in this case has demonstrated that Hirsch and VascuFlo did not unlawfully own RES or Strut's predecessor unincorporated medical practice. See Leone Decl., ¶ 146, and passim.

(vii)  As a result, GEICO settled with Hirsch, VascuFlo, Trzewieczynski, Andrus, and VascuScript. See Docket Nos. 55, 63. Concomitantly, GEICO advised Strut and RES – well over a year ago – that it intended to proceed in this action based solely on its allegations that Defendants systematically billed GEICO inflated amounts for medically unnecessary and illusory services, but not on its allegations that Hirsch and VascuFlo unlawfully owned and controlled RES or Strut's predecessor unincorporated medical practice. See Leone Decl., ¶ 147.

(viii) Even so, in their summary judgment papers, Defendants make much of the fact that discovery in this case has demonstrated that Hirsch and VascuFlo did not unlawfully own RES or Strut's predecessor unincorporated medical practice, apparently in an attempt to call GEICO's other allegations into question. See, e.g., Strut Aff., ¶¶ 35-44; Declaration of Robert Knoer ("Knoer Decl."), ¶¶ 33-43.

(ix)   It therefore is important to briefly note some of the reasons why GEICO believed that Hirsch and VascuFlo unlawfully owned RES and Strut's predecessor unincorporated medical practice. In particular, when Strut began billing GEICO in late 2010: (a) Strut had a history of serving as the nominal or "paper" owner of fraudulently incorporated professional corporations that secretly and unlawfully were owned and controlled by unlicensed non-professionals, in that his felony conviction involved, among other things, his service as the nominal or "paper" owner of a professional

---

[2] As noted above – far from being a disinterested expert – Dr. Laraiso had a long and intimate personal relationship with Strut, which he attempted to conceal during his deposition. Specifically, during his deposition, Dr. Laraiso was presented with the information, waiver of indictment, and plea agreement that resulted in Strut's felony insurance fraud conviction. See Gershenoff Decl., Exhibit "B", pp. 55-56. Then, Dr. Laraiso was asked whether he was "aware that Dr. Strut was prosecuted for a felony relating to health care fraud". Id. He responded, "No, sir." Id., pp. 55-58. Dr. Laraiso then testified that the deposition was the first time he had become aware of the fact that Strut had been prosecuted and had pleaded guilty in his criminal case. Id. **Unfortunately, however, it appears as if Dr. Laraiso was not being truthful in his sworn testimony. In fact, Dr. Laraiso actually submitted a July 5, 2009 letter to Judge William Skretny – who presided over Strut's criminal case – pleading for clemency for Strut in the criminal case. See Leone Decl., ¶ 142, and Exhibit "EE". In the letter, Dr. Laraiso stated that he was "surprised and saddened" when he "first became aware of [Strut's criminal] problem when he came to me for advice just prior to his plea agreement." Id.**

5

corporation that secretly and unlawfully was owned and controlled by unlicensed individuals and was used by Strut and those unlicensed individuals as a vehicle to commit fraud; (b) Strut was a bankrupt convicted felon with no malpractice insurance and no credit; (c) yet Hirsch and VascuFlo permitted Strut to operate from VascuFlo's office suite, using VascuFlo's telephone number and support staff; (d) a significant amount of Strut's initial billing listed VascuFlo, rather than Strut, as the billing and treatment provider; (e) a significant number of the checks GEICO issued in payment of Defendants' claims initially were endorsed for deposit into the account of an entity called the "Lana-VascuFlo Enterprise", whose name was an amalgam of VascuFlo's name and the nickname of Strut's wife, Svetlana; (f) almost all of Strut's narcotics prescriptions were being filled at VascuScript, a pharmacy owned by Hirsch in partnership with Trzewieczynski and Andrus; (g) Strut was billing GEICO for ultrasounds performed with an ultrasound machine that purportedly had been leased for him by Hirsch and VascuFlo, because Strut did not have the credit to lease it himself; and (h) the pattern of medically unnecessary and often dangerous "treatments" Defendants were purporting to provide, and the fraudulent manner in which they were billed to GEICO, suggested that Defendants' medical practice was being operated subject to the pecuniary interests of unlicensed non-physicians, rather than the independent medical judgment of a true doctor-owner. See Leone Decl., ¶¶ 147-163.

(x) As it transpired, however, the reason why it appeared that Hirsch and VascuFlo owned RES and Strut's predecessor unincorporated medical practice was because Strut had defrauded and victimized Hirsch and VascuFlo, as well. See Leone Decl., ¶ 162, and Exhibit "FF".

## ARGUMENT

## I.    The Standards on a Motion for Summary Judgment

As the Court is aware, summary judgment is appropriate only where the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). "In determining whether to grant summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party." Arnold v. Krause, Inc., 233 F.R.D. 126, 131 (W.D.N.Y. 2005)(Arcara, J.). Put another way, summary judgment may be granted only in circumstances where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Sec. Ins. Co. v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). In this context, while a summary judgment motion "may be made with or without supporting affidavits", to the extent that a movant does rely on affidavits the affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... ." Id. (emphasis in original). Attorney affidavits or declarations are "rarely based on personal knowledge to be admissible for a summary judgment motion." Mills v. Luplow, 2008 U.S. Dist. LEXIS 79028 at * 6 (W.D.N.Y. 2008)(internal quotations and citation omitted).[3]

Furthermore, it is "well-settled that a district court may not make credibility determinations on a motion for summary judgment." Knox v. County of Putnam, 2012 U.S. Dist. LEXIS 139586 at * 24 (S.D.N.Y. 2012), citing Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010). "If the credibility of the movant's witness is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied." Id.; see also VanWormer v. Gruppo Rizzi 1857, s.r.l., 2007 U.S. Dist. LEXIS 52806 at * 9 - * 10 (N.D.N.Y. 2007) ("Summary judgment becomes improper when credibility of a witness is crucial to the case. ... Since there is a question regarding the credibility of a key witness, [] there is a question of fact for the jury to decide.")

---

[3] Accordingly, in deciding this motion the Court should disregard the Knoer Decl. to the substantial extent that it goes beyond introducing exhibits and contains factual assertions that are not based upon personal knowledge. See, e.g., Knoer Decl., ¶¶ 24-35, 44-49, 51-55,

7

## II. GEICO Consents to Partial Summary Judgment to the Limited Extent That its RICO, Common Law, and Declaratory Judgment Claims are Predicated on Allegations That RES and Strut's Predecessor Unincorporated Medical Practice Were Owned and Controlled by Hirsch and VascuFlo

As set forth above, while discovery in this case has provided substantial support for GEICO's allegations that Strut and RES fraudulently billed GEICO for medically unnecessary and illusory services, and that the drugs billed through VascuScript likewise were medically unnecessary, discovery in this case has also demonstrated that Hirsch and VascuFlo did not unlawfully own RES or Strut's predecessor unincorporated medical practice. See Leone Decl., ¶ 146, and passim. As a result, GEICO advised Defendants well over a year ago that it did not intend to proceed in this case on the basis of its allegations that RES and Strut's predecessor medical practice were owned and controlled by Hirsch and VascuFlo. See Leone Decl., ¶ 147.

GEICO therefore consents to partial summary judgment dismissing its RICO, common law, and declaratory judgment claims to the limited extent that those claims are predicated on allegations that RES and Strut's predecessor unincorporated medical practice were owned and controlled by Hirsch and VascuFlo. GEICO would have stipulated to the entry of such a partial summary judgment. Nonetheless, Defendants have opted to waste the Court's time by devoting a substantial portion of their summary judgment motion to attacking GEICO's corporate structure allegations. See, e.g., Strut Aff., ¶¶ 28-42; Knoer Decl., ¶¶ 33-43; Defendants' Memorandum of Law ("Def. Mem."), pp. 2-3.

Apparently, Defendants hope that – by attacking GEICO's corporate structure allegations – they will discredit GEICO's other allegations by implication. It therefore is worthwhile to reiterate that, as discussed above, GEICO had a strong, good-faith basis for its corporate structure allegations, despite the fact that they ultimately were controverted through discovery. See Leone Decl., ¶¶ 143-163.

III. **Defendants' Motion for Summary Judgment Should be Denied to the Extent That GEICO's RICO, Common Law, and Declaratory Judgment Claims are Predicated on Defendants' Submission of Fraudulent, Inflated Billing for Medically Unnecessary and Illusory Services**

  A. **There is a Genuine Dispute as to Material Facts Regarding Whether Defendants Systematically Submitted Inflated Billing for Medically Unnecessary and Illusory Services Pursuant to a Pre-Determined, Fraudulent Protocol**

As a threshold matter, the submissions on this motion clearly demonstrate a genuine dispute as to material facts regarding whether Defendants systematically submitted inflated billing for medically unnecessary and illusory services pursuant to a pre-determined, fraudulent protocol.

For instance, Strut contends that Defendants' treatment and billing practices were legitimate. See Strut Decl., ¶¶ 52-83, and passim. Of course, shortly before he began billing GEICO, Strut was convicted of a felony in connection with an insurance fraud scheme that was, in many respects, similar to the scheme alleged in the present case, inasmuch as it involved the systematic submission of fraudulent Medicare billing for medically unnecessary and illusory services. See Leone Decl., ¶¶ 6-15. Moreover, Strut's felony conviction and profligate lifestyle left him in dire financial straits. Id., ¶¶ 16-31. For instance, Strut declared bankruptcy shortly before he began to submit fraudulent billing to GEICO, reporting over $200,000.00 in consumer debt on 13 separate credit cards. Id. What is more, Strut effectively was barred from earning a living as a legitimate physician in that – as a result of his conviction – he was: (i) subjected to professional discipline; (ii) referred to prominently in The Buffalo News as a "scam artist" and "unscrupulous"; (iii) barred for life from billing Medicare; and (iv) unable to obtain malpractice insurance, which effectively has prevented him from treating Workers' Compensation or private insurance patients, either. Id., ¶¶ 16-26. It therefore appears that, during the pertinent period, Strut was an ethically compromised convicted felon with a motive to commit fraud.

In this context, and as noted above, the burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See Old Dominion Freight Line, Inc., supra. Considering that Strut appears to be the only physician willing to contend that Defendants' treatment and billing practices were legitimate, his credibility is critical to Defendants' case. For this reason alone, summary judgment is inappropriate. See, e.g., Knox, supra; VanWormer, supra.

In any case, in opposition to this motion GEICO has proffered – among other things – the Staats Decl., Shatzer Decl., Thelian Decl., and Leone Decl. Dr. Staats and Dr. Shatzer concluded that Defendants routinely misrepresented the complexity of the presenting problems of the GEICO insureds they purported to treat, and fabricated and exaggerated the results of their initial and follow-up examinations. See Staats Decl., ¶¶ 10-12, and Exhibit "A"; Shatzer Decl., ¶¶ 5-7, and Exhibit "A". Dr. Staats and Dr. Shatzer also concluded that – based on these fabricated and exaggerated examination "results" – Defendants routinely purported to subject GEICO insureds to medically unnecessary pain management injections, as well as other "treatments" and diagnostic tests, without regard for the insureds' individual circumstances or presentment. Id. What is more, Dr. Staats and Dr. Shatzer concluded that Defendants routinely prescribed large amounts of narcotics and other habit-forming drugs to insureds who did not require them, and in a number cases of continued to prescribe large amounts of narcotics to the insureds despite clear indications that the drugs were being abused or diverted. Id.[4] Overall, both Dr. Staats and Dr. Shatzer concluded that the manner in

---

[4] Defendants' prescribing practices – as discussed in the Shatzer Decl., Staats Decl., and Leone Decl. – are incredibly disturbing. Even Dr. Laraiso – Defendants' own "expert" – gave testimony indicating that Defendants' prescribing was not in accordance with the standard of care. See Gershenoff Decl., Exhibit "B", pp. 61, 70, 105, 118-157, 162, 167-180, 191-205. Some of the most odious examples – by no means the only ones – include: (i) continuing to prescribe narcotics to an insured with a high-risk pregnancy, while simultaneously misadvising the insured as to the risk the narcotics posed to her fetus and, evidently, not consulting with her obstetrician regarding the narcotics prescriptions (Shatzer Decl., Exhibit "A", pp. 31-32; Leone Decl., ¶¶ 84, 114); (ii) continuing to prescribe narcotics to an insured after the insured – when asked to take a drug test –

which Defendants "treated" the GEICO insureds indicated a disregard for their welfare. Id. Furthermore, both Ms. Thelian and Dr. Staats concluded that Defendants' billing for various of their "treatments" misrepresented the nature of the services they provided. See Thelian Decl., ¶¶ 5-7, and Exhibit "A"; Staats Decl., ¶¶ 10-12, and Exhibit "A". Moreover, Mr. Leone sets forth – at length – considerable evidence to demonstrate that Defendants had a motive to commit fraud, and that Defendants provided their "treatments" to GEICO insureds – to the extent they provided them at all – pursuant to a pre-determined fraudulent protocol designed to maximize their billing, rather than to treat or otherwise benefit the insureds. See Leone Decl., ¶¶ 4-30, 89-132.

In a defective attempt to demonstrate the absence of any factual disputes, Defendants resort to tendentious micharacterizations of Dr. Staats', Dr. Shatzer's, and Mr. Leone's deposition testimony. In particular, Defendants contend that, during his deposition, Mr. Leone gave testimony to the effect that GEICO had no proof that any of Defendants' services were completely illusory, or that Defendants paid kickbacks in exchange for patient referrals. See, e.g., Knoer Decl., ¶¶ 120-121. However, as Mr. Leone points out, this selective presentation of his deposition testimony mischaracterizes his testimony. See Leone Decl., ¶¶ 170-188. In fact, GEICO had – and has – substantial evidence that Defendants billed for complex patient examinations, multiple, individual drug tests, and tendon injections that were never actually provided. Id. Along similar lines, Defendants contend that Dr. Shatzer and Dr. Staats testified – variously – that prolotherapy can be medically useful in some settings, and that medical necessity needs to be determined on a case-by-

---

had refused and instead actually stole prescriptions from Defendants' office (Shatzer Decl., Exhibit "A", pp. 27-28; Leone Decl., ¶¶ 84, 114); and (iii) continuing to prescribe narcotics to an insured who not only ran out of the narcotics Defendants previously prescribed because she took more of them than she was supposed to, but also repeatedly tested positive for cocaine, narcotics, methadone, and marijuana that Defendants had not prescribed (Shatzer Decl., Exhibit "A", pp. 32-33; Leone Decl., ¶ 84, 114). GEICO has presented many similar cases in opposition to this motion (see id.), and looks forward to presenting them to the jury.

case basis. See, e.g., Strut Aff., ¶¶ 72, 138; Knoer Decl., ¶¶ 49-50. However, Defendants omit to mention that Dr. Staats and Dr. Shatzer also testified that none of the prolotherapy "treatments" Defendants purported to provide were medically necessary, and that Defendants did not make a case-by-case determination with respect to the medical necessity of the "treatments" they purported to provide. See Staats Decl., ¶¶ 13-21; Shatzer Decl., ¶¶ 8-11.

Accordingly, there clearly is a genuine dispute as to material facts regarding whether Defendants systematically submitted inflated billing for medically unnecessary and illusory services pursuant to a pre-determined, fraudulent protocol. Defendants' motion therefore should be denied.

### B.  GEICO's Fraud-Based Claims are Pleaded With the Requisite Specificity

Defendants contend that GEICO has not sufficiently alleged its fraud-based claims because the Complaint supposedly relies on a "sweeping unsupported statement" to allege that the Defendants' "treatments" were medically unnecessary or illusory. See Def. Mem., pp. 8-9. However, this argument is belied by a review of the actual allegations in the Complaint and by a review of the great weight of precedent from analogous cases in Courts within the Second Circuit.[5]

For instance, Defendants appear to ignore the detailed allegations, at paragraphs 69-251 of the Complaint, which specify with great particularity exactly how and why Defendants' "treatments" were medically unnecessary or illusory. Furthermore, at paragraphs 252-253 of the Complaint, GEICO alleges that – based on the facts alleged in the preceding paragraphs of the Complaint – all of the bills submitted by Defendants to GEICO misrepresented that the underlying services were medically necessary and actually were provided, when in fact they were not medically necessary and frequently never were provided at all. What is more, GEICO has included – as Exhibits "K" and "L"

---

[5] Even if GEICO's Complaint was not sufficiently particularized – which is not the case – "on summary judgment, courts have excused parties' failures to satisfy Rule 9(b) when other evidence in the record adduced through discovery demonstrates that the plaintiff would be able to replead with the requisite specificity." Hawkins-El v. First Am. Funding, 891 F. Supp. 2d 402, 413 (E.D.N.Y. 2012).

to the Complaint – a detailed chart specifying each of the fraudulent charges Defendants had submitted as of the commencement of this action, by claim number, date of mailing, current procedural terminology code billed, and amount billed. See Gershenoff Decl., Exhibit "C", Exhibits "K", "L".

In light of these particularized allegations, it is difficult to credit Defendants' contention that GEICO's fraud-based claims are not pleaded with the requisite specificity. As the Court may note, Defendants do not cite to a single analogous case where any Court held that similar allegations failed to meet the pleading standards of Rule 9(b). The reason for this is simple: a large number of District Courts from within the Second Circuit consistently have held that substantively similar allegations in analogous cases do meet the pleading standards of Rule 9(b). See, e.g., Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 372-373 (E.D.N.Y. 2012); Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C., 2011 U.S. Dist. LEXIS 130721 at * 24 - * 26 (E.D.N.Y. 2011); Allstate Ins. Co. v. Etienne, 2010 U.S. Dist. LEXIS 113995 at * 25 - * 30 (E.D.N.Y. 2010); State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist. LEXIS 125653 at * 13 - * 15 (E.D.N.Y. 2009); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 2009 U.S. Dist. LEXIS 91291 at * 26 - * 27 (E.D.N.Y. 2009); Allstate Ins. Co. v. Ahmed Halima, 2009 U.S. Dist. LEXIS 22443 at * 17 - * 20 (E.D.N.Y. 2009); State Farm Mut. Auto. Ins. Co. v. Kalika, 2006 U.S. Dist. LEXIS 97454 at * 30 - * 34 (E.D.N.Y. 2006); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 153-154 (E.D.N.Y. 2005); AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666 at * 32 - * 42 (E.D.N.Y. 2005)(all holding complaints with a virtually identical level of detail to be sufficient under Rule 9(b)).[6] Defendants' motion therefore should be denied.

---

[6] Defendants invite the Court to disregard the great weight of precedent in analogous cases from other District Courts within the Second Circuit. See Def. Mem., p. 15. Of course, the consistent opinion of other District Courts within the Second Circuit is, at a minimum, persuasive authority. This is

### C.     GEICO's Claims in This Action are Not Preempted by New York's No-Fault Insurance Laws and Regulations

Faced with the clear sufficiency of GEICO's fraud-based claims, Defendants fall back on a contention that GEICO may not sue in this Court based on allegations that Defendants misrepresented the medical necessity of their "treatments", and instead is limited to pursuing redress in the no-fault insurance arbitration system. See, e.g., Def. Mem., pp. 13-17, 19-22. However, and as the Court may note, Defendants have not come forward with an iota of authority that actually supports this proposition.

The reason for this is, again, simple: Not only the New York State Department of Financial Services ("DFS"), but every single Court within the Second Circuit (and New York Court) that has considered the issue, has concluded that insurers such as GEICO may sue to recover no-fault insurance benefits they were defrauded into paying by misrepresentations as to the medical necessity of the underlying services. For instance, in a November 29, 2000 Opinion Letter, the New York State Department of Insurance (now DFS) explicitly stated that:

> The New York No-Fault reparations law … is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any statute or under common law. There is nothing in the legislative history or case law interpretations of the statute or in Insurance Department regulations, opinions or interpretations of the statute that supports the argument that the statute bars such actions.

> The payment of fraudulently obtained No-Fault benefits, without available recourse, serves to undermine and damage the integrity of the No-Fault system, which was created as a social reparations system for the benefit of consumers. To conclude that the No-Fault statute bars the availability of other legal remedies, where the payment of benefits were secured through fraudulent means, renders the public as [sic] the ultimate victim of such fraud, in the form of higher premiums based upon the resultant increased costs arising from the fraudulent actions.

See November 29, 2000 Opinion Letter, annexed as Exhibit "A" to the Gershenoff Decl.

---

especially true where – as in the present case – not one District Court, but a large number of District Court, have reached substantially identical conclusions.

In deference to this DFS opinion, Courts consistently have rejected arguments to the effect that lawsuits such as this one are barred or preempted by the New York no-fault insurance laws. See, e.g., Allstate Ins. Co. v. Mun, 751 F.3d 94, 101 (2d Cir. 2014)("The weight of New York authority holds that [the prompt payment provisions of the New York no-fault insurance laws do] not constrain later insurer actions seeking recovery for fraud."); Lyons, supra, 843 F. Supp. 2d at 378 (noting that the prompt payment provisions of the no-fault laws do "not bar an insurer who has timely paid a claim from later … suing the claimant for fraud in order to recoup that payment."); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 555 F. Supp. 2d 335, 339 (E.D.N.Y. 2008)(same); Kalika, supra at * 15 (same).

Defendants cite misleadingly to the New York Court of Appeals' decision in Fair Price Med. Supply Corp. v. Travelers Indem. Co., 10 N.Y.3d 556, 860 N.Y.S.2d 471 (2008), for the apparent proposition that GEICO's claims in this action somehow are preempted by New York no-fault insurance law. See Def. Mem., pp. 16-17. Unsurprisingly, however, Defendants omit to mention that every Court to have considered the issue has rejected this argument. See, e.g., State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 224-226 (E.D.N.Y. 2008)(rejecting identical argument based on Fair Price, and observing that "Fair Price did not involve an attempt by an insurer to bring a separate lawsuit for fraud, but rather concerned whether a particular defense asserted by an insurer -- namely, billed-for-services that were never rendered -- could be considered a "no coverage" defense such that it could be raised as a defense even though the claim had not been denied within the requisite 30-day period."); Valley Physical, supra, 555 F. Supp. 2d at 340-341 (rejecting identical argument).

Defendants also appear to argue that many of the analogous cases in which Courts have refused to dismiss insurers' fraud-based claims involved allegations of fraud in the corporate

structure of the defendant professional corporations. See Def. Mem., p. 15. However, Defendants point to no authority to support the position that, absent a misrepresentation about corporate legitimacy, a defendant is not liable for fraudulent misrepresentations regarding the medical need for services or whether they were performed in the first instance. This is because there is no such authority. To the contrary, there have been many cases in which insurers have been permitted to proceed on the basis of misrepresentations regarding the medical legitimacy of the billed-for goods and services, or misrepresentations as to whether a service was provided in the first case. See, e.g., Etienne, supra at * 4 - * 11; Cohan, supra at * 3 - * 6; Valley Physical Med. & Rehab., P.C., supra at * 4, * 28; Halima, supra at * 7 - * 9; Kalika, supra at * 5; CPT Med. Servs., P.C., supra, 375 F. Supp. 2d at 147-148; Olmecs Med. Supply, Inc., supra at * 8 - * 14.[7] Defendants' motion therefore should be denied.

### D.    GEICO Reasonably Relied on Defendants' Fraudulent Billing

Defendants argue that GEICO's common law fraud and civil RICO claims should be dismissed on summary judgment because GEICO supposedly did not reasonably rely on Defendants' fraudulent billing. See Def. Mem., pp. 9-14. For this proposition, Defendants contend – in substance – that: (i) in October 2010, GEICO was suspicious about some of Defendants' claims, and investigated some of Defendants' claims; (ii) thereafter, GEICO began to flag Defendants' claims for further review; (iii) then, in December 2010, May 2011, and July 2011, GEICO requested additional

---

[7] Indeed, several of the cases - specifically, Etienne, Cohan, Kalika, and Olmecs Med. Supply, Inc. – did not include any allegations of fraudulent incorporation or corporate illegitimacy at all. C.f. Allstate Ins. Co. v. Williams, 2014 U.S. Dist. LEXIS 170191 (E.D.N.Y. 2014), adopted by 2014 U.S. Dist. LEXIS 168920 (E.D.N.Y. 2014)(granting insurer default judgment on RICO and common law claims against healthcare providers based on allegations regarding billing for medically useless or illusory services, despite lack of allegations regarding unlawful corporate structure); State Farm Mut. Auto. Ins. Co. v. Cohan, 2010 U.S. Dist. LEXIS 21376 (E.D.N.Y. 2010), aff'd 409 Fed. Appx. 453 (2d Cir. 2011)(denying motion to vacate default judgment against healthcare providers predicated on allegations regarding billing for medically useless or illusory services, despite lack of allegations regarding unlawful corporate structure).

verification of some of Defendants' claims by requiring Strut to appear for an examination under oath in accordance with New York's no-fault insurance laws; and therefore (iv) as a sophisticated plaintiff with suspicions regarding Defendants and the means to seek additional verification of Defendants' claims, GEICO should not be heard to allege that it reasonably relied on any of Defendants' claims. See Def. Mem., pp. 9-14; Knoer Decl., ¶¶ 77-84; Strut Aff., ¶¶ 101-121.

Initially, since Defendants omitted the issue from their papers, it is important to note the regulatory environment in which GEICO must determine whether to pay or deny a no-fault insurance claim. When an insurer such as GEICO receives a no-fault insurance claim from a healthcare provider, it generally must either pay or deny the claim within 30 days. See N.Y. Ins. Law § 5106; 11 N.Y.C.R.R. § 65-3.8; see also Leone Decl., ¶ 39. Within 15 days of receiving a no-fault insurance claim from a healthcare provider/assignee, insurers such as GEICO may opt to request additional verification of the claim. Should an insurer request additional verification of the claim, the 30-day period in which to pay or deny the claim is tolled pending the receipt of the additional verification. See 11 N.Y.C.R.R. § 65-3.8; see also Leone Decl., ¶ 40. However, insurers such as GEICO may not request additional verification of claims unless they have good reasons to do so. See 11 N.Y.C.R.R. § 65-3.2; Leone Decl., ¶ 41. If an insurer cannot show a good reason for a request for additional verification, the 30-day period in which to pay or deny a claim will not be tolled by a request for additional verification. See Leone Decl., ¶ 42. Furthermore, if an insurer denies a healthcare provider's no-fault insurance claim, it must advise the provider of the reasons for its denial with a high degree of specificity. See 11 N.Y.C.R.R. § 65-3.4; see also Leone Decl., ¶ 43. Insurers such as GEICO face substantial negative consequences in the event that they fail to pay or deny a claim within 30 days after receiving the claim, or – if they request additional verification of the claim – within 30 days of receiving such additional verification. See Leone Decl., ¶ 44. For instance, the

insurer generally will be precluded from asserting any defenses to the claim, including defenses to the effect that the underlying services were medically unnecessary, illusory, or otherwise fraudulent. Id. What is more, overdue payments earn monthly interest at a rate of two percent and entitle a claimant to reasonable attorneys' fees incurred in securing payment of a valid claim. See N.Y. Ins. Law § 5106. See Leone Decl., ¶ 45. Thus, as a practical matter, insurers such as GEICO have a very short time-frame in which to make determinations as to whether to pay, deny, or seek additional verification with respect to a no-fault insurance claim, and are limited in the additional verification they may seek. See Leone Decl., ¶ 46. Furthermore, Pursuant to New York Insurance Law § 403, the bills submitted by a healthcare provider to GEICO, and to all other automobile insurers, must be verified by the healthcare provider subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. See Leone Decl., ¶ 47.[8]

In this context, Courts considering the reasonableness of a plaintiff's reliance "consider the entire context of the transaction", which "involve[s] many factors to consider and balance, no single one of which is dispositive". Charney v. Zimbalist, 2014 U.S. Dist. LEXIS 137678 at * 88 (S.D.N.Y. 2014)(internal quotations and citations omitted). Thus, "reasonable reliance is often a question of fact for the jury rather than a question of law for the court." Id.

The reasonableness of GEICO's reliance on Defendants' fraudulent billing therefore must be viewed in the context of the New York no-fault insurance laws, which – as a practical matter –

---

[8] What is more, insurers such as GEICO are legally required to attempt "in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear", and to "not treat the applicant [for no-fault insurance benefits] as an adversary". See N.Y. Ins. Law § 2601; 11 N.Y.C.R.R. 65-3.2. Under Defendants' theory, they would havean insurer rush to judgment without complete facts, a proposition that is not consistent with an insurer's obligation under the statute and regulations.

require insurers to rely on facially-valid claims submitted by or on behalf of licensed healthcare providers. See Leone Decl., ¶ 48. Indeed, an insurer is entitled to rely on the representations of an insured. See, e.g., Ehrlich v. Berkshire Life Ins. Co., 2002 U.S. Dist. LEXIS 3730 at * 35 (S.D.N.Y. 2002)("The law in New York is that the insurer has a right to rely on the representations in the written application if the application is signed by the insured and attached to the policy."); Mutual Ben. Life Ins. Co. v. Morley, 722 F. Supp. 1048, 1054 (S.D.N.Y. 1989)("Under New York law, … the insurance company is entitled to rely on the representations made by the applicant on the application.")[9]

It also is important to emphasize that – though GEICO had suspicions regarding some of Defendants' claims beginning in October 2010 – GEICO did not, until late 2011, have a sufficiently-large sample of Defendants' claims to begin to determine whether Defendants provided their "treatments" pursuant to a pre-determined, fraudulent protocol, in which every patient received a substantially identical diagnosis and treatment plan regardless of their individual circumstances. See Leone Decl., ¶¶ 74, 89, et seq. Moreover, Defendants changed the identity under which they submitted their billing on two different occasions between late 2010 and mid-2011 – submitting some of their initial billing under the VascuFlo name, some under Strut's own name, and then, in early 2011, switching over to submit their billing under RES' name. See Leone Decl., ¶¶ 64, 76-78. As a result, GEICO did not immediately realize that Strut was the owner of RES, because GEICO had been identifying his claims by the tax identification number under which they were submitted, and Strut submitted the RES claims under a new tax identification number. Id. What is more, Strut

---

[9] Likewise, insurers are entitled to rely on the representations of the healthcare providers who take assignments of no-fault insurance benefits from their insureds, and stand in their shoes. C.f. Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG, 970 F. Supp. 2d 157, 168 (S.D.N.Y. 2013).

certified the validity of each of Defendants' bills pursuant to N.Y. Ins. Law § 403. See Leone Decl., ¶ 47.

In this context, numerous Courts have held that insurers are entitled to rely on facially-valid claims submitted by a licensed healthcare provider. Likewise, numerous Courts have explicitly rejected the notion – raised by Defendants in the present case – that the claim verification tools provided by New York's no-fault insurance laws or a plaintiff's putative status as a "sophisticated insurer" militate against reasonable reliance. See, e.g., Lyons, supra 843 F. Supp. 2d at 374-375 ("It is … incorrect to claim that Allstate was remiss in relying on defendants' facially reasonable diagnoses and claims for payment and failing to uncover their falsity. In short, regardless of the strength of Allstate's investigatory capabilities, it is not barred from asserting fraud claims solely for failing to detect — within the no-fault law's 30-day window, no less — the complex fraudulent schemes attributed to defendants here."); Valley Physical, supra at * 15 ("Nor is the Court persuaded by Defendants' argument that Allstate's status as a sophisticated insurer and the verification process provided by New York's No-Fault regulations mean that Allstate can not claim it relied on the materials it received from the defendants or that such reliance was reasonable."); Halima, supra at * 15 - * 17 (denying motion to dismiss in light of plaintiff-insurers' contention that defendants "fraudulently submitted thousands of claims which caused Plaintiffs to pay over one million dollars in unnecessary reimbursements which could not be detected as fraudulent until after a pattern of filed suspicious claims was apparent", so the plaintiff-insurers "could not detect Defendants' fraud because the submissions were facially valid insurance claims authorized by physicians and submitted by a licensed medical services corporation upon which they reasonably relied.")

Notably, though the Lyons, Valley Physical, and Halima decisions involved motions to dismiss, Defendants have not met their burden of demonstrating, "beyond doubt", that GEICO "can

prove no set of facts in support of" its contention that it reasonably relied on Defendants' fraudulent

billing. Ashcroft, supra. At most, Defendants have presented some evidence that GEICO had

suspicions regarding some of Defendants' claims, and that GEICO sought additional verification of

some of Defendants' claims via examinations under oath of Strut. For its part, GEICO has proffered

evidence to the effect that – while it found some of Defendants' claims to be suspicious – it did not

have a sufficient sample of Defendants' claims to determine that all of them were fraudulent until late

2011. See Leone Decl., ¶¶ 74, 89, et seq. Moreover, GEICO has described, at length, the mandatory,

expedited claims handling procedure set forth in New York's no-fault insurance laws, and has

explained how – as a practical matter – the procedure requires insurers to rely on facially-valid

claims. Id., ¶¶ 39-47. Under the circumstances, Defendants have not demonstrated – as a matter of

law – that GEICO did not reasonably rely on their facially-valid claims.

Finally, it is important to note that, while reasonable reliance is an element of a common law

fraud claim, the Supreme Court has held that reasonable reliance is not an element of a civil RICO

claim predicated on mail fraud. See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 649

(2008). To the extent that some form of reliance is necessary, not as an element of GEICO's RICO

claims, but to establish proximate cause, the Second Circuit has held that payment may constitute

circumstantial proof of reliance upon a financial representation. See e.g., Catholic Health Care West

v. US Foodserv., 729 F.3d 108, 119-120 (2d Cir. 2013)(holding it to be a reasonable inference that

customers who pay the amount specified in an inflated invoice would not have done so absent

reliance upon the implicit representation that invoiced amount was honestly owed); McLaughlin v.

Am. Tobacco Co., 522 F.3d 215, 225 (2d Cir. 2008)(holding that "payment may constitute

circumstantial proof of reliance upon a financial representation"). Accordingly, Defendants' motion

should be denied.

**E.** **Defendants' – or for That Matter GEICO's – Success in Individual No-Fault Collections Arbitration Provides No Basis for Summary Judgment**

Defendants go on at some length as to their putative success in recovering money from GEICO in individual no-fault collections arbitration. See, e.g., Def. Mem., pp. 2, 4, 11, 17. Though Defendants do not explicitly make the argument, it appears as if they are trying to assert some sort of collateral estoppel defense. If so, their argument lacks merit.

First, it is well-settled that – for collateral estoppel to bar relitigation of an issue – (i) the identical issue must have been raised in a previous proceeding; (ii) the issue must actually have been litigated and decided in the previous proceeding; (iii) the party against whom the estoppel is asserted must have had a full and fair opportunity to litigate the issue; and (iv) the resolution of the issue must have been necessary to support a valid and final judgment on the merits. See, e.g., Businesses for a Better New York v. Smith, 2010 U.S. Dist. LEXIS 96954 at * 6 (W.D.N.Y.)(Arcara, J.). The burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding. See, e.g., Valle v. Gebler, 2005 U.S. Dist. LEXIS 38927 at * 10 (W.D.N.Y. 2005).

In the present case, Defendants seem to posit that, because individual no-fault insurance arbitrators have issued awards in their favor, it therefore follows that their "treatments" are entirely legitimate and not subject to challenge in this action. However, GEICO did not have a full and fair opportunity to litigate the legitimacy of Defendants' "treatment" and billing practices in the expedited arbitration system required by New York no-fault insurance law. For instance, the expedited no-fault arbitration procedure set forth in 11 N.Y.C.R.R. § 65-4.1 generally contemplates no substantive discovery in advance of the hearing, nor does it generally permit any meaningful examination or cross-examination of witnesses. See Leone Decl., ¶ 57; see also Mun, supra, 751 F.3d

at 99 ("New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. ... Discovery is limited or non-existent. ... Complex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system.") What is more, to the limited extent that any discovery is permitted in advance of a no-fault arbitral hearing, insurers such as GEICO generally are not permitted to seek or obtain pre-hearing discovery that could be used to demonstrate a pattern of medically-unnecessary or illusory treatment occurring across large numbers of patients and claims. Rather, no-fault arbitrators generally refuse to permit any discovery with respect to patterns of treatment practices beyond the discrete claim or claims before them in a given hearing – to the limited extent that they allow any discovery at all. See Leone Decl., ¶ 58. In fact, no-fault arbitrations typically are heard and resolved in minutes, with arbitrators conducting one hearing after another, generally in 15-minute intervals over the course of a day. These circumstances render it impractical for an arbitrator to adequately consider a pattern of fraudulent treatment or even the need for discovery. See Leone Decl., ¶ 59.

Second, Defendants adduce nothing to suggest that the issues in the present case – involving the pattern of fraudulent billing that Defendants submitted over a considerable period of time – were litigated or decided in any discrete arbitral proceedings involving individual claims. In fact, they were not, and could not have been. See, e.g., Mun, supra, 751 F.3d at 99. Third, though Defendants only allude to this fact, they have not been successful in all of their attempts to collect money from GEICO through no-fault arbitration. In some cases, GEICO has been successful. See Leone Decl., ¶ 61.

Finally, Defendants have not come forward with any information to suggest that any of the money that GEICO seeks to recover in this action was paid pursuant to any arbitral awards, despite the fact that it was their burden on this motion to do so. In fact, all of the money that GEICO seeks to

recover in this action is comprised of voluntary payments that GEICO made to Defendants, not money that was paid pursuant to any arbitral awards. See Leone Decl., ¶ 62; c.f., State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C., 2007 U.S. Dist. LEXIS 74459 at * 6 - * 7 (E.D.N.Y. 2007)(on a motion pursuant to Rule 12(b)(6), holding that defendants "cannot prevail without providing the Court with the arbitration awards that they contend preclude the claims relating to overbilling and unnecessary treatment", and further noting that "[e]ven if the court chooses to convert this aspect of defendants' motion to a summary judgment motion, the moving defendants have offered insufficient information for substantive determination of this contention, having submitted only one award which they attached to their pre-motion letter.") Accordingly, Defendants' motion should be denied.

**F.     Even if the Court Were to Grant Summary Judgment Dismissing GEICO's RICO Claims, it Nonetheless Would Have Diversity Jurisdiction Over GEICO's Common Law Fraud and Unjust Enrichment Claims**

Defendants also posit that, if the Court grants summary judgment dismissing GEICO's RICO claims, it should decline to exercise supplemental jurisdiction over GEICO's common law fraud and unjust enrichment claims. See Def. Mem., pp. 22-23.

However, Defendants appear to miss the fact that the parties are alleged to be completely diverse, and that the amount in controversy exceeds $75,000.00. See Gershenoff Decl., Exhibit "C", ¶¶ 1, 7, 8, 15. Accordingly, even if the Court were to dismiss GEICO's RICO claims – and, as discussed above, it should not – the Court nonetheless would have diversity jurisdiction over GEICO's common law fraud and unjust enrichment claims pursuant to 8 U.S.C. § 1332(a)(1).[10]

**IV.    Defendants' Motion for Summary Judgment With Respect to Their Counterclaims Likewise Should be Denied**

Finally, Defendants contend that they are entitled to summary judgment on their counterclaims, which seek – in essence – to recover on all of the pending billing Defendants have

---

[10] In this context, it is worthwhile to note that nothing in Defendants' papers suggests they are entitled to summary judgment on GEICO's unjust enrichment claim.

24

submitted to GEICO. <u>See</u> Def. Mem., pp. 23. However, and as set forth above, there are many disputed fact questions regarding the medical necessity and actual provision of the "services" Defendants purported to provide. By extension, there are many disputed fact questions regarding whether Defendants should be entitled to collect on their pending billing for such "services".

Accordingly, Defendants' motion should be denied.

## CONCLUSION

For the reasons stated herein, Defendants' motion should be denied in its entirety.

Dated: December 19, 2014

Respectfully submitted,

RIVKIN RADLER LLP

By:_____
    Barry I. Levy (BL 2190)
    Max Gershenoff (MG 4648)
    926 RXR Plaza
    Uniondale, NY 11556-0926

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co, GEICO General Insurance Company and GEICO Casualty Co.*