UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

Docket No.:
1:12-cv-00330(LJV)(HKS)

Plaintiffs,

-against-

MIKHAIL STRUTSOVSKIY, M.D.
a/k/a MICHAEL STRUT, M.D.,
RES PHYSICAL MEDICINE &
REHABILITATION SERVICES, P.C.,
AARON HIRSCH,
DEAN TRZEWIECZYNSKI,
KENNETH ANDRUS,
VASCU.FLO, INC., and
VASCUSCRIPT, INC.,

Defendants.
-------------------------------------------------------------X

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE REPORT AND
RECOMMENDATION RECOMMENDING DENIAL OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Respectfully submitted,

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
RR File No.: 005100-00292
Telephone:     (516) 357-3000
Facsimile:     (516) 357-3333

*Counsel for Plaintiffs,*

*Government Employees Insurance Co., GEICO
Indemnity Co., GEICO General Insurance Company
and GEICO Casualty Co.*

Of Counsel:
Barry I. Levy, Esq. (BL 2190)
Max Gershenoff, Esq. (MG 4648)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF RELEVANT FACTS.............................................................................. 4

ARGUMENT......................................................................................................................... 8

I.  The R&R Correctly Determined That GEICO's Claims in This Action
    are Not Precluded or Preempted by New York's No-Fault Laws ........................... 9

II. The R&R Correctly Determined That GEICO was Entitled to Rely on
    Defendants' Verified Claims Submissions and, in any Case, That the
    Question of GEICO's Justifiable Reliance is not Properly Resolved on
    a Motion for Summary Judgment......................................................................... 15

III. The R&R Correctly Discounted Defendants' Arguments to the
     Effect That, Because They Supposedly Have Been Successful
     in Collecting Money from GEICO in Expedited No-Fault
     Arbitration, They Somehow Lacked the Scienter Necessary
     to GEICO's Fraud-Based Claims ........................................................................ 23

IV. The R&R Correctly Determined That Fact Questions Preclude
    Summary Judgment on Defendants' Counterclaim for Payment
    of Their Unpaid Claims ....................................................................................... 29

CONCLUSION ................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,
  888 F. Supp.2d 478 (S.D.N.Y. 2012) ...................................................................16

AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
  2005 U.S. Dist. LEXIS 29666 ....................................................................15, 16

Allstate Ins. Co. v. Ahmed Halima,
  2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009) ........................................15, 21, 22

Allstate Ins. Co. v. Elzanaty,
  916 F. Supp. 2d 273 (E.D.N.Y. 2013)

Allstate Ins. Co. v. Etienne,
  2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. 2010) ....................................................15

Allstate Ins. Co. v. Lyons,
  843 F. Supp. 2d 358 (E.D.N.Y. 2012) ...................................10, 13, 15, 16, 21, 22

Allstate Ins. Co. v. Mun,
  751 F.3d 94 (2d Cir. 2014) ....................................................10, 13, 28, 29

Allstate Ins. Co. v. Valley Physical Med. & Rehab.,
  P.C., 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009) ...........................................15

Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,
  555 F. Supp. 2d 335 (E.D.N.Y. 2008) ...................................................10, 13, 21, 22

Allstate Ins. Co. v. Williams,
  2014 U.S. Dist. LEXIS 170191 (E.D.N.Y. 2014) ....................................................15

Arnold v. Krause, Inc.,
  233 F.R.D. 126 (W.D.N.Y. 2005) ...........................................................................22

Bridge v. Phoenix Bond & Indem. Co.,
  553 U.S. 639 (2008) ...............................................................................................23

Catholic Health Care West v. US Foodserv.,
  729 F.3d 108 (2d Cir. 2013) ...................................................................................23

Charney v. Zimbalist,
  2014 U.S. Dist. LEXIS 137678 (S.D.N.Y. 2014)....................................................19

Ehrlich v. Berkshire Life Ins. Co.,
    2002 U.S. Dist. LEXIS 3730 (S.D.N.Y. 2002)................................................19

Fair Price Med. Supply Corp. v. Travelers Indem. Co.,
    10 N.Y.3d 556, 860 N.Y.S.2d 471 (2008).......................................12, 13

Golden Budha Corp. v. Canadian Land Co.,
    N.V., 931 F.2d 196, 201-202 (2d Cir. 1991) .......................................30

Gordon & Co. v. Ross,
    84 F.3d 542 (2d Cir. 1996) .......................................16

Gov't Emples. Ins. Co. v. Uptown Health Care Mgmt.,
    945 F. Supp. 2d 284 (E.D.N.Y. 2013) .......................................11

Humana, Inc. v. Forsyth, 525 U.S. 299, 307-08, 119 S. Ct. 710, 142 L. Ed. 2d 753
    (1999)................................................................17

Lau v. Mezei,
    2012 U.S. Dist. LEXIS 116608 (S.D.N.Y. 2012).......................................24

McLaughlin v. Am. Tobacco Co.,
    522 F.3d 215 (2d Cir. 2008) .......................................23

Mutual Ben. Life Ins. Co. v. Morley,
    722 F. Supp. 1048 (S.D.N.Y. 1989) .......................................19

Needham & Co., LLC v. Access Staffing, LLC,
    2016 U.S. Dist. LEXIS 111925 (S.D.N.Y. 2016).......................................16

Prendergast v. Pac. Ins. Co.,
    2012 U.S. Dist. LEXIS 43084 (W.D.N.Y. 2012) .......................................24

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) .......................................15

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2010 U.S. Dist. LEXIS 21376 (E.D.N.Y. 2010), aff'd 409 Fed. Appx. 453 (2d
    Cir. 2011)................................................................15

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008) .......................................11

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    375 F. Supp. 2d 141 (E.D.N.Y. 2005).......................................15

State Farm Mut. Auto. Ins. Co. v. Goldstein,
    2004 U.S. Dist. LEXIS 32308 (M.D. Fla. 2004).......................................12

State Farm Mut. Auto. Ins. Co. v. Grafman,
  2007 U.S. Dist. LEXIS 96751 (E.D.N.Y. 2007) ........................................ 13

State Farm Mut. Auto. Ins. Co. v. Grafman,
  655 F. Supp. 2d 212 (E.D.N.Y. 2009) .................................................. 11

State Farm Mut. Auto. Ins. Co. v. Kalika,
  2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. 2006) ................................ 10, 15

State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc.,
  2014 U.S. Dist. LEXIS 151213 (E.D. Mich. 2014) ................................ 12

State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.,
  2015 U.S. Dist. LEXIS 104332 (E.D. Mich. 2015) ................................ 11

Terry v. Ashcroft,
  336 F.3d 128 (2d Cir. 2003) .............................................................. 22

Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG,
  970 F. Supp. 2d 157 (S.D.N.Y. 2013) .................................................. 20

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") respectfully submit this response to the objections filed by Defendants Mikhail Strutsovskiy, M.D. a/k/a Mikhail Strut, M.D. ("Strut") and RES Physical Medicine & Rehabilitation Services, P.C. ("RES")(collectively "Defendants") to the Honorable H. Kenneth Schroeder, Jr.'s December 2, 2016 report and recommendation (the "R&R") recommending denial of Defendants' summary judgment motion in its entirety. See Docket Nos. 96, 98.

Over the course of almost 50 pages of objections, Defendants rehash their original arguments for summary judgment, which in turn relied on either a misapprehension of the actual summary judgment standards, a misrepresentation of the pertinent facts, or – oftentimes – both.

As Plaintiffs noted in their opposition to Defendants' summary judgment motion, it would be completely inappropriate to resolve this case through summary judgment. See Docket Nos. 77-85. GEICO has presented considerable evidence to demonstrate that Defendants – a physician with a previous felony conviction for insurance fraud and his medical professional corporation – submitted a massive amount of fraudulent no-fault insurance billing that misrepresented the medical necessity of the underlying pain management and physiatry services and, in many cases, that the underlying services actually were performed in the first instance.

For instance, in opposition to Defendants' summary judgment motion, GEICO submitted, among other things, the declarations of two very distinguished physicians, Peter Staats, M.D. and Matthew Shatzer, D.O. Dr. Staats is a professor at The Johns Hopkins University School of Medicine and former Chief of the Division of Pain Medicine in the Department of Anesthesiology and Critical Care Medicine at The Johns Hopkins University School of Medicine, with an exceedingly long list of peer-reviewed publications to his credit and a lengthy

record of service on the editorial boards of many leading pain management publications. Dr. Shatzer is the Residency Program Director for Physical Medicine and Rehabilitation at Hofstra-North Shore LIJ School of Medicine and the Chief of Physical Medicine and Rehabilitation at North Shore University Hospital. As GEICO pointed out in opposition to Defendants' summary judgment motion, both Dr. Staats and Dr. Shatzer concluded that Defendants routinely misrepresented the complexity of the presenting problems of the GEICO insureds they purported to treat, and fabricated and exaggerated the results of their initial and follow-up examinations. See Docket No. 77, pp. 1-2; see also Docket Nos. 79, 81, passim. Dr. Staats and Dr. Shatzer also concluded that – based on these fabricated and exaggerated examination "results" – Defendants routinely purported to subject GEICO insureds to medically unnecessary pain management injections and other "treatments", without regard for the insureds' individual circumstances or presentment. Id.

What is more, Dr. Staats and Dr. Shatzer concluded that Defendants routinely prescribed massive amounts of narcotics and other habit-forming drugs to GEICO insureds who did not require them, and in a number cases of continued to prescribe large amounts of such drugs to the insureds despite clear indications that the drugs were being abused or diverted. See Docket No. 77, pp. 1-2; see also Docket Nos. 79, 81, passim. As alleged in GEICO's Complaint, Defendants prescribed these massive and dangerous amounts of narcotics to GEICO insureds as an incentive for the insureds to continue to report to them for their medically unnecessary "treatments".[1] Overall, both Dr. Staats and Dr. Shatzer concluded that the manner in which Defendants "treated" the GEICO insureds indicated a conscious disregard for their welfare. See Docket No. 77, pp. 1-2; see also Docket Nos. 79, 81, passim.

---

[1] See Docket No. 1, ¶¶ 6, 175, et seq.

Notably, in their motion for summary judgment, Defendants did not proffer any declaration or testimony from any physician other than Strut, himself, in support of their fraudulent treatment and billing practices. See Docket Nos. 74-75. Considering that – for purposes of their summary judgment motion – the only physician willing to speak in support of Defendants' practices was Strut, himself, it is important to note that Strut is a convicted felon. It likewise is important to note that Strut's felony conviction was predicated on his involvement in a large-scale Medicare fraud scheme that was quite similar to the fraudulent scheme in the present case, whereby he systematically submitted or caused to be submitted fraudulent Medicare claims for medically unnecessary and illusory services. In addition, Strut was barred for life from participating in the Medicare program, cannot obtain malpractice insurance, and – as a result – could not treat patients with ordinary health insurance or Workers' Compensation insurance.[2]

In light of these issues, and other issues described more fully below, there clearly are questions of material fact with respect to whether the "treatments" Defendants purported to provide to GEICO insureds were medically unnecessary or illusory. In addition, there clearly are questions of material fact with respect to whether Defendants provided their supposed "treatments" – to the extent they were provided at all – pursuant to a pre-determined, fraudulent

---

[2] Defendants' failure to proffer any support for their "treatment" practices beyond Strut's own ipse dixit was all the more notable in light of the fact that Defendants retained an "expert" in this case, Ralph Laraiso, D.O., and produced Dr. Laraiso for a deposition. However – and as discussed more fully below – during his deposition Dr. Laraiso acknowledged that he was not an expert with respect to the prolotherapy injections Defendants purported to provide to GEICO insureds or the medical coding issues that comprise a significant part of GEICO's Complaint. What is more, when presented with specific examples of Defendants' outrageous narcotics prescribing practices, Dr. Laraiso repeatedly indicated that Defendants' practices fell below the standard of care that he or any other reasonable physician would have employed. This, despite the fact that, as discussed below, Dr. Laraiso clearly had a long and intimate personal relationship with Strut.

protocol designed to maximize their billing, rather than to treat or otherwise benefit the GEICO insureds who supposedly were subjected to them. These questions cannot be determined as a matter of law and must be resolved by a jury. Accordingly, and as set forth more fully herein, the Court should adopt Magistrate Judge Schroeder's well-reasoned R&R in its entirety, and deny Defendants' summary judgment motion.

## STATEMENT OF RELEVANT FACTS

GEICO respectfully refers the Court to the Declaration of Robert Leone ("Leone Decl.", at Docket No. 82), Declaration of Peter Staats, M.D. ("Staats Decl.", at Docket No. 79), Declaration of Matthew Shatzer, D.O. ("Shatzer Decl.", at Docket No. 81), Declaration of Jacqueline Thelian, CPC, CPC-I ("Thelian Decl.", at Docket No. 80), Declaration of Max Gershenoff ("Gershenoff Decl.", at Docket No. 78), the exhibits annexed thereto, and GEICO's Response to Defendants' Statement Pursuant to Local Rule of Civil Procedure 56 ("Pl. Rule 56 Response", at Docket No. 84), for a full statement of the facts relevant to Defendants' summary judgment motion. As set forth therein, there are many issues of material fact that preclude summary judgment in this case. Briefly, however, it is important to note the following:

(i) GEICO commenced this action on April 18, 2012 against not only Strut and RES, but also against Aaron Hirsch ("Hirsch"), Dean Trzewieczynski ("Trzewieczynski"), Kenneth Andrus ("Andrus"), Vascu.Flo. Inc. ("VascuFlo"), and VascuScript, Inc. ("VascuScript"). See Docket No. 1.

(ii) In its Complaint, GEICO not only alleged that Strut and RES systematically submitted inflated billing for medically unnecessary and illusory services, but also alleged that: (a) Hirsch and VascuFlo, who are not physicians, unlawfully owned and controlled RES and Strut's predecessor unincorporated medical practice; and (b) Trzewieczynski, Andrus, and VascuScript knowingly billed GEICO for medically unnecessary drugs prescribed by Strut, in collusion with Strut, RES, Hirsch, and VascuFlo. See Docket No. 1, passim.

(iii) Discovery in this case has provided substantial support for GEICO's allegations that Strut and RES fraudulently submitted inflated billing to GEICO for medically unnecessary and illusory services, and that the drugs billed through VascuScript likewise were medically unnecessary. See, e.g., Staats Decl., ¶¶ 10-12, and

4

Exhibit "A"; Shatzer Decl., ¶¶ 5-7, and Exhibit "A". Moreover, in connection with this action, GEICO retained the services of a professional medical coding expert, Jacqueline Thelian, CPC, CPC-I. Both Ms. Thelian and Dr. Staats concluded that Defendants' billing for various of their "treatments" misrepresented the nature of the services they provided. See Thelian Decl., ¶¶ 5-7, and Exhibit "A"; Staats Decl., ¶¶ 10-12, and Exhibit "A".

(iv)   Notably, though Defendants are moving for summary judgment, they have not produced any testimony or affidavits regarding the legitimacy of their "treatment" and billing practices from any physicians other than Strut, himself. See Affidavit of Mikhail Strut ("Strut Aff."), passim, at Docket No. 74-3. However, Strut is a convicted felon, with a history of professional discipline, and his felony conviction and professional discipline were predicated on his participation in a Medicare fraud scheme that was similar to the scheme in the present case. See Leone Decl., ¶¶ 6-31.

(v)    Defendants' failure to proffer any physician affidavits or testimony in support of their motion (other than the Strut Aff.) is all the more notable considering that Defendants retained an "expert" in this case, Ralph Laraiso, D.O., and produced Dr. Laraiso for a deposition. See Gershenoff Decl., Exhibit "B". However, during his deposition, Dr. Laraiso himself gave testimony to the effect that, in a number of cases, the manner in which Defendants "treated" GEICO insureds fell short of the standards of care employed by reasonable physicians, including the standards of care that Dr. Laraiso himself would have employed. Id., pp. 61, 70, 105, 118-157, 162, 167-180, 191-205.[3]

(vi)   While discovery in this case has provided substantial support for GEICO's allegations that Strut and RES fraudulently billed GEICO for medically unnecessary and illusory services, and that the drugs billed through VascuScript likewise were medically unnecessary, discovery in this case has demonstrated that

---

[3] As noted above – far from being a disinterested expert – Dr. Laraiso had a long and intimate personal relationship with Strut, which he attempted to conceal during his deposition. Specifically, during his deposition, Dr. Laraiso was presented with the information, waiver of indictment, and plea agreement that resulted in Strut's felony insurance fraud conviction. See Gershenoff Decl., Exhibit "B", pp. 55-56. Then, Dr. Laraiso was asked whether he was "aware that Dr. Strut was prosecuted for a felony relating to health care fraud". Id. He responded, "No, sir." Id., pp. 55-58. Dr. Laraiso then testified that the deposition was the first time he had become aware of the fact that Strut had been prosecuted and had pleaded guilty in his criminal case. Id. **Unfortunately, however, it appears as if Dr. Laraiso was not being truthful in his sworn testimony. In fact, Dr. Laraiso actually submitted a July 5, 2009 letter to Judge William Skretny – who presided over Strut's criminal case – pleading for clemency for Strut in the criminal case. See Leone Decl., ¶ 142, and Exhibit "EE". In the letter, Dr. Laraiso stated that he was "surprised and saddened" when he "first became aware of [Strut's criminal] problem when he came to me for advice just prior to his plea agreement." Id.**

5

Hirsch and VascuFlo did not unlawfully own RES or Strut's predecessor unincorporated medical practice. See Leone Decl., ¶ 146, and passim.

(vii) As a result, GEICO settled with Hirsch, VascuFlo, Trzewieczynski, Andrus, and VascuScript. See Docket Nos. 55, 63.[4] Concomitantly, GEICO advised Strut and RES – well over a year before Defendants filed their summary judgment motion – that it intended to proceed in this action based solely on its allegations that Defendants systematically billed GEICO inflated amounts for medically unnecessary and illusory services, but not on its allegations that Hirsch and VascuFlo unlawfully owned and controlled RES or Strut's predecessor unincorporated medical practice. See Leone Decl., ¶ 147.

(viii) Even so, in their summary judgment papers, and in their objections to Magistrate Judge Schroeder's R&R, Defendants make much of the fact that discovery in this case has demonstrated that Hirsch and VascuFlo did not unlawfully own RES or Strut's predecessor unincorporated medical practice, apparently in an attempt to call GEICO's other allegations into question. See, e.g., Docket No. 74-3., ¶¶ 35-44; Docket No. 74-2, ¶¶ 33-43; Docket No. 98, pp. 1, 6-7.

(ix) It therefore is important to briefly note some of the reasons why GEICO believed that Hirsch and VascuFlo unlawfully owned RES and Strut's predecessor unincorporated medical practice. In particular, when Strut began billing GEICO in late 2010: (a) Strut had a history of serving as the nominal or "paper" owner of fraudulently incorporated professional corporations that secretly and unlawfully were owned and controlled by unlicensed non-professionals, in that his previous felony insurance fraud conviction involved, among other things, his service as the nominal or "paper" owner of a professional corporation that secretly and unlawfully was owned and controlled by unlicensed individuals and was used by Strut and those unlicensed individuals as a vehicle to commit fraud; (b) Strut was a bankrupt convicted felon with no malpractice insurance and no credit; (c) yet Hirsch and VascuFlo permitted Strut to operate from VascuFlo's office suite, using VascuFlo's telephone number and support staff; (d) a significant amount of Strut's initial billing listed VascuFlo, rather than Strut, as the billing and treatment provider; (e) a significant number of the checks GEICO issued in payment of Defendants' claims initially were endorsed for deposit into the account of an entity called the "Lana-VascuFlo Enterprise", whose name was an amalgam of VascuFlo's name and the nickname of Strut's wife, Svetlana; (f) almost all of Strut's narcotics prescriptions were being filled at VascuScript, a pharmacy owned by Hirsch in partnership with Trzewieczynski and Andrus; (g) Strut was

---

[4] Though Defendants contend, in conclusory fashion, that GEICO supposedly "stipulated" Hirsch, VascuFlo, Trzewieczynski, Andrus, and VascuScript "without payment" (see Docket No. 98, p. 4), Defendants actually have no idea of the terms of GEICO's settlements with Hirsch, VascuFlo, Trzewieczynski, Andrus, and VascuScript, and present no evidence that actually supports their contention. GEICO is, unfortunately, not at liberty to disclose the terms of the settlements.

billing GEICO for ultrasounds performed with an ultrasound machine that purportedly had been leased for him by Hirsch and VascuFlo, because Strut did not have the credit to lease it himself; and (h) the pattern of medically unnecessary and often dangerous "treatments" Defendants were purporting to provide, and the fraudulent manner in which they were billed to GEICO, suggested that Defendants' medical practice was being operated subject to the pecuniary interests of unlicensed non-physicians, rather than the independent medical judgment of a true doctor-owner. See Leone Decl., ¶¶ 147-163.

(x)     As it transpired, however, the reason why it appeared that Hirsch and VascuFlo owned RES and Strut's predecessor unincorporated medical practice was because Strut had defrauded and victimized Hirsch and VascuFlo, as well. See Leone Decl., ¶ 162, and Exhibit "FF".[5]

As set forth above, while discovery in this case has provided substantial support for GEICO's allegations that Defendants fraudulently billed GEICO for medically unnecessary and illusory services, and that the drugs billed through VascuScript likewise were medically unnecessary, discovery in this case has also demonstrated that Hirsch and VascuFlo did not unlawfully own RES or Strut's predecessor unincorporated medical practice. See Leone Decl., ¶ 146, and passim. Accordingly, while Plaintiffs generally opposed Defendants' summary judgment motion, they consented to partial summary judgment dismissing their RICO, common law, and declaratory judgment claims to the limited extent that those claims were predicated on allegations that RES and Strut's predecessor unincorporated medical practice were owned and controlled by Hirsch and VascuFlo. See Docket No. 77, p. 8.

As Plaintiffs noted in their opposition to Defendants' summary judgment motion, they would have stipulated to the entry of such a partial summary judgment. Nonetheless, Defendants have opted to waste the Court's time by devoting a substantial portion of their summary judgment motion, as well as their objections to Magistrate Judge Schroeder's R&R, to attacking

---

[5] As the Court may note, Exhibit "FF" to the Leone Decl. is an Affidavit of Aaron Hirsch, in which Hirsch sets forth, in great detail, exactly how Strut defrauded and victimized him, including – evidently – by forging Hirsch's signature on various documents. See Docket No. 82-37.

7

GEICO's corporate structure allegations. See, e.g., Docket No. 74-3, ¶¶ 28-42;74-2, ¶¶ 33-43; Docket No. 75, pp. 2-3; Docket No. 98, pp. 1, 6-7. Apparently, Defendants hope that – by attacking GEICO's corporate structure allegations – they will discredit GEICO's other allegations by implication. It therefore is worthwhile to reiterate that, as discussed above, GEICO had a strong, good-faith basis for its corporate structure allegations, despite the fact that they ultimately were controverted through discovery. See Leone Decl., ¶¶ 143-163.

## ARGUMENT

Distilled to their essence, Defendants' objections to the R&R amount to the following:

(i)     A contention that New York State's no-fault insurance laws (the Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.) (collectively referred to as the "No-Fault Laws"), supposedly preempt or preclude insurers such as GEICO from pursuing fraud-based claims against healthcare providers based on misrepresentations regarding the medical necessity of healthcare services, or whether such services actually were performed. See Docket No. 98, pp. 8-12; Docket No. 98-1, pp. 6-12.

(ii)     A contention that GEICO supposedly "failed to establish" justifiable reliance in support of its fraud-based claims. See Docket No. 98, pp. 13-19; Docket No. 98-1, pp. 12-18.

(iii)     A contention that, because Defendants supposedly have been successful in their efforts to collect money from GEICO in no-fault collections arbitration, they supposedly believed their services to be medically necessary, and therefore lacked the scienter necessary to support GEICO's fraud-based claims. See Docket No. 98, p. 19.[6]

Based on these objections, Defendants contend that Magistrate Judge Schroeder's R&R is erroneous, and ought not be adopted by the Court. However, and as discussed below, none of

---

[6] In their objections to the R&R, Defendants appear to abandon the argument they initially raised in their summary judgment motion to the effect that GEICO supposedly failed to plead its fraud-based claims with the requisite specificity. See Docket Nos. 98, 98-1, passim, As Magistrate Judge Schroeder observed in the R&R, "Contrary to defendants' argument, GEICO's complaint clearly alleges sufficient facts to support its claim of fraud.". Docket No. 96, p. 13. Indeed, and again as Magistrate Judge Schroeder noted, "it is hard to imagine how plaintiff's complaint could be more specific as to its allegations of fraud against defendants … ." Id., p. 14.

these objections has any merit. Indeed, they are contravened by the great weight of authority in highly-analogous no-fault insurance anti-fraud cases – authority that Defendants struggle unsuccessfully to distinguish.

**I.     The R&R Correctly Determined That GEICO's Claims in This Action are Not Precluded or Preempted by New York's No-Fault Laws**

As Magistrate Judge Schroeder observed in the R&R, the "gravamen of defendants' argument is that GEICO's challenge to the medical necessity of Dr. Strut's treatment should be resolved within the confines of New York's no-fault arbitration system. ... More specifically, defendants argue that because New York's no-fault system permits insurers to challenge the medical necessity of submitted claims, there is no reason that such claims should be considered in this court, even if the basis of such a challenge is fraud." Docket No. 96, p. 7.

However, Defendants – in their underlying summary judgment motion, and in their objections to the R&R – do not adduce an iota of authority that actually supports this proposition. The reason for this is simple: Not only the New York State Department of Financial Services ("DFS"), but every single court within the Second Circuit (and New York state court) that has considered the issue, has concluded that insurers such as GEICO <u>may</u> sue to recover no-fault insurance benefits they were defrauded into paying by misrepresentations as to the medical necessity of the underlying services.

For instance, in a November 29, 2000 Opinion Letter, the New York State Department of Insurance (now DFS) unambiguously stated that:

> The New York No-Fault reparations law ... is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any statute or under common law. There is nothing in the legislative history or case law interpretations of the statute or in Insurance Department regulations, opinions or interpretations of the statute that supports the argument that the statute bars such actions.
>
> The payment of fraudulently obtained No-Fault benefits, without available recourse,

serves to undermine and damage the integrity of the No-Fault system, which was created as a social reparations system for the benefit of consumers. To conclude that the No-Fault statute bars the availability of other legal remedies, where the payment of benefits were secured through fraudulent means, renders the public as [sic] the ultimate victim of such fraud, in the form of higher premiums based upon the resultant increased costs arising from the fraudulent actions.

See November 29, 2000 Opinion Letter, annexed as Exhibit "A" to the Gershenoff Decl.

In deference to this DFS opinion, courts consistently have rejected arguments to the effect that lawsuits such as this one are barred or preempted by the New York no-fault insurance laws. See, e.g., Allstate Ins. Co. v. Mun, 751 F.3d 94, 101 (2d Cir. 2014)("The weight of New York authority holds that [the prompt payment provisions of the New York No-Fault Laws do] not constrain later insurer actions seeking recovery for fraud."); Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 378 (E.D.N.Y. 2012) (noting that the prompt payment provisions of the No-Fault Laws do "not bar an insurer who has timely paid a claim from later … suing the claimant for fraud in order to recoup that payment."); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 555 F. Supp. 2d 335, 339 (E.D.N.Y. 2008)(same); State Farm Mut. Auto. Ins. Co. v. Kalika, 2006 U.S. Dist. LEXIS 97454 at * 15 (E.D.N.Y. 2006)(same).

Though Defendants contend – in particular – that GEICO's civil RICO claims somehow are preempted or precluded by New York's No-Fault Laws, they do not cite any authority that actually supports this particular proposition, either. See Docket No. 98-1, pp. 9-12. Instead, they rely on a line of cases which generally held that RICO claims may be preempted or precluded where the source of the asserted right is covered by a more detailed federal statute. Id., citing Hintergerger v. Catholic Health Sys., 2012 U.S. Dist. LEXIS 37066 at * 17 - * 18 (W.D.N.Y. 2012), and the cases cited therein. Of course, as Magistrate Judge Schroeder observed in the R&R, "[a]s plaintiff's RICO claim does not attempt to circumvent remedies afforded by another federal statute, defendants' argument is without merit." Docket No. 96, p. 17 (emphasis added).

Lest there be any doubt about this point, Defendants' "RICO preemption" arguments are completely contravened by numerous authorities, including the United States Supreme Court and many federal courts within the Second Circuit adjudicating substantially similar no-fault insurance anti-fraud cases. See, e.g., Allstate Ins. Co. v. Elzanaty, 916 F. Supp. 2d 273, 297 (E.D.N.Y. 2013) ("To the extent that the Defendants are arguing that the RICO claims must be dismissed because New York's No-Fault regime preempts the application of the RICO laws, this argument is without merit. As the Supreme Court has stated, 'RICO can be applied in ... harmony with the State's [insurance] regulation.' Humana, Inc. v. Forsyth, 525 U.S. 299, 307-08, 119 S. Ct. 710, 142 L. Ed. 2d 753 (1999)."); Gov't Emples. Ins. Co. v. Uptown Health Care Mgmt., 945 F. Supp. 2d 284, 293 (E.D.N.Y. 2013)(same); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 at * 18 - * 19 (E.D.N.Y. 2008)(rejecting identical RICO preemption argument in no-fault insurance fraud case, and noting that Humana is the controlling case); State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 225 (E.D.N.Y. 2009)(rejecting argument that plaintiff-insurer's civil RICO claims were preempted by New York's No-Fault Laws, where the No-Fault Laws were not "invalidated, impaired or superseded by the application of the RICO laws", and where the plaintiff-insurer's RICO claims "supplement, rather than disturb, New York's insurance regime by providing another vehicle by which to carry forth the substantive policies of the State of New York", including the elimination of fraud in the no-fault insurance system)(internal quotations and citation omitted)[7]

_____

[7] In this context, it also is worthwhile to note the many no-fault insurance anti-fraud cases from outside the Second Circuit in which substantially identical arguments by defendants have been rejected. See, e.g., State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C., 2015 U.S. Dist. LEXIS 104332 at * 35 - * 36 (E.D. Mich. 2015)(rejecting argument that plaintiff-insurer's civil RICO claims were preempted by Michigan's no-fault system because "the Michigan Insurance Code provides a mechanism for handling purportedly fraudulent claims, and that a RICO claim premised on this same conduct would thus impair the Code by providing

11

Against the weight of all of this authority, Defendants – once again – cite misleadingly to the New York Court of Appeals' decision in Fair Price Med. Supply Corp. v. Travelers Indem. Co., 10 N.Y.3d 556, 860 N.Y.S.2d 471 (2008), for the apparent proposition that GEICO's claims in this action somehow are preempted by New York no-fault insurance law. See Docket No. 98-1, pp. 6-9. If this is what Defendants are driving at, their argument has been rejected by every single court to have considered it. As Magistrate Judge Schroeder correctly observed in the R&R, Fair Price is inapposite, because:

> In Fair Price, the New York Court of Appeals precluded an insurance company from defending a complaint seeking payment of a no-fault claim on the ground that the services charged were never provided because, even though it had discovered the potential billing fraud within the 30-day period provided for an insurer to act upon a claim [pursuant to N.Y. Ins. Law § 5106(a)], the insurance company failed to deny the claim for nearly two years after receiving verification of the claim. … In the instant case, in contrast, there is no allegation that the claims at issue have either not been paid in a timely fashion or have been denied in an untimely fashion. Moreover, in State Farm Mutual Automobile Insurance Co. v. Liguori, the district court recognized that
>
>> there is no language in the Fair Price decision suggesting that the insurer would also be precluded from asserting a separate lawsuit for fraud or unjust enrichment against a medical provider that arose from alleged fraudulent conduct by doctors related to that claim. In fact, to the contrary, the Appellate Term decision in Fair Price (which was affirmed by the Appellate Division and Court of Appeals) explicitly stated that, although the 30-Day Rule [set forth in N.Y. Ins. Law § 5106(a)] barred assertion of billing fraud as a defense, the insurer "is not without

recourse outside that contemplated by the Michigan legislature", and observing that "numerous federal courts — including courts in this District — have concluded that the application of RICO to a defendant's purportedly fraudulent billing scheme would not invalidate, impair, or supersede the state statute.")(Internal quotations and citations omitted); State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc., 2014 U.S. Dist. LEXIS 151213 at * 18 - * 19 (E.D. Mich. 2014)(holding that "the application of RICO would not impair, invalidate or supersede Michigan's Insurance Code," given the availability of common law remedies for insurance fraud under Michigan law); State Farm Mut. Auto. Ins. Co. v. Goldstein, 2004 U.S. Dist. LEXIS 32308 at * 12 - * 18 (M.D. Fla. 2004)(plaintiff-insurer's civil RICO claims based on misrepresentations regarding the medical necessity of defendant healthcare providers' services did not circumvent Florida no-fault law, and "permitting State Farm to bring a civil action to address what it alleges are false and fraudulent claims submitted to it would not frustrate any declared state policy.") While these decisions may not be controlling in the Second Circuit, Plaintiffs respectfully submit that they are – at a minimum – persuasive authority.

remedy; after paying such a claim, the insurer, for example, may have an action to recover benefits paid under a theory of fraud or unjust enrichment."

> ... The Court noted a "critical difference" between the question of "whether the 30-Day Rule applies to a defense of fraud (an issue clearly resolved by Fair Price)," and "whether it bars affirmative claims brought after the insurer pays the claim to recover the money that was fraudulently obtained (which Fair Price never addressed)."

Docket No. 96, pp. 9-10; see also Mun, supra, 751 F. 3d at 101 (in which the Second Circuit rejected an identical argument based on Fair Price, and held that "the 30-day process in [N.Y. Ins. Law] § 5106(a) does not constrain later insurer actions seeking recovery for fraud. ... New York courts hold that insurer fraud suits may be pressed long after the 30-day period for processing claims."); Lyons, supra, 843 F. Supp. 2d at 378 ("Courts that have addressed the issue have uniformly held that [N.Y. Ins. Law § 5106(a)'s] 30-day rule is inapplicable to affirmative suits for fraud. Specifically, courts have found that the 30-day rule does not bar an insurer who has timely paid a claim from later (i.e., outside of the 30-day window) suing the claimant for fraud in order to recoup that payment."); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 555 F. Supp. 2d 335, 339 (E.D.N.Y. 2008)(on a motion for reconsideration, rejecting identical Fair Price-based arguments, and holding that the cases "make clear that the obligations under Insurance Law § 5106 only extend to preclude fraudulent billing defenses to claims for payment and do not preclude an insurer from maintaining an affirmative action for fraud or unjust enrichment based on that same billing fraud."); State Farm Mut. Auto. Ins. Co. v. Grafman, 2007 U.S. Dist. LEXIS 96751 at * 44 - * 45 (E.D.N.Y. 2007)(noting that "barring insurers from bringing actions to recoup benefits obtained by fraud would defy logic and public policy", and "If an insurer could not later bring an action for fraud, wrongdoers would have an incentive to flood insurers with bogus claims and would be unjustly enriched when the insurers found themselves unable to uncover the fraud within the 30-day period.")

Defendants attempt to distinguish the cases that unanimously and decisively reject their arguments, by contending that – in some of those cases – the alleged fraud involved misrepresentations regarding the legality of the defendant healthcare providers' corporate structures and, by extension, their eligibility to collect no-fault insurance benefits in the first instance. By contrast, in the present case, Defendants note that Plaintiffs are proceeding solely on allegations that the Defendants falsely represented the medical necessity of their purported healthcare services, or whether they actually were provided in the first instance. According to Defendants, this somehow is relevant to their arguments, though they do not actually specify why it should be relevant to their arguments, much less cite any authority to show why it would be relevant to their arguments. See, e.g., Docket No. 98, p. 8 (arguing that GEICO supposedly may not proceed in this forum, because GEICO is not proceeding on its allegations that Defendants made misrepresentations regarding the legality of their corporate structure, and only is proceeding on its allegations that Defendants misrepresented the medical necessity of their services, or whether they were performed at all); Docket No. 98-1, pp. 20-21 (attempting to distinguish Elzanaty, supra, by observing that "[i]n that case the insurer claimed the provider was absolutely not eligible for reimbursement [because it had an unlawful corporate structure]. It was not a fact intensive question and expert based determination of medical necessity or appropriate coding. The providers were alleged to be ineligible in toto to receive reimbursement.")

However, and as GEICO pointed out in opposition to Defendants' summary judgment motion, Defendants point to no authority to support the position that, absent a misrepresentation about corporate legitimacy, a defendant is not liable for fraudulent misrepresentations regarding the medical need for services or whether they were performed in the first instance. This is because there is no such authority. To the contrary, there have been many cases in which insurers

have been permitted to proceed on the basis of misrepresentations regarding the medical legitimacy of the billed-for goods and services, or misrepresentations as to whether a service was provided in the first case. See, e.g., Lyons, supra, 843 F. Supp. 2d at 366, 369; Allstate Ins. Co. v. Etienne, 2010 U.S. Dist. LEXIS 113995 at * 4 - * 11 (E.D.N.Y. 2010); State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist. LEXIS 125653 at * 3 - * 6 (E.D.N.Y. 2009); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 2009 U.S. Dist. LEXIS 91291 at * 4, * 28 (E.D.N.Y. 2009); Allstate Ins. Co. v. Ahmed Halima, 2009 U.S. Dist. LEXIS 22443 at * 7 - * 9 (E.D.N.Y. 2009); Kalika, supra at * 5; State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 147-148 (E.D.N.Y. 2005); AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666 at * 8 - * 4 (E.D.N.Y. 2005).[8]

Accordingly, the Court should overrule Defendants' objections to Magistrate Judge Schroeder's well-reasoned R&R, adopt the R&R in its entirety, and deny Defendants' summary judgment motion in its entirety.

## II.   The R&R Correctly Determined That GEICO was Entitled to Rely on Defendants' Verified Claims Submissions and, in any Case, That the Question of GEICO's Justifiable Reliance is not Properly Resolved on a Motion for Summary Judgment

As Magistrate Judge Schroeder correctly observed in the R&R:

[D]efendants argue that because GEICO was suspicious of defendants, commenced an investigation into defendants' claims and utilized no-fault procedures for verifying certain claims, cannot claim that it relied upon defendants' representations in processing claims submitted by defendants. ... Because GEICO informed defendants in November

---

[8] Indeed, several of the cases - specifically, Etienne, Cohan, Kalika, and Olmecs Med. Supply, Inc. – did not include any allegations of fraudulent incorporation or corporate illegitimacy at all. C.f. Allstate Ins. Co. v. Williams, 2014 U.S. Dist. LEXIS 170191 (E.D.N.Y. 2014), adopted by 2014 U.S. Dist. LEXIS 168920 (E.D.N.Y. 2014)(granting insurer default judgment on RICO and common law claims against healthcare providers based on allegations regarding billing for medically useless or illusory services, despite lack of allegations regarding unlawful corporate structure); State Farm Mut. Auto. Ins. Co. v. Cohan, 2010 U.S. Dist. LEXIS 21376 (E.D.N.Y. 2010), aff'd 409 Fed. Appx. 453 (2d Cir. 2011)(denying motion to vacate default judgment against healthcare providers predicated on allegations regarding billing for medically useless or illusory services, despite lack of allegations regarding unlawful corporate structure).

of 2010 that it was continuing to verify the legitimacy of defendants' billing practices, defendants argue that GEICO was not relying in any way on the statements made therein so that any billing submitted thereafter cannot support a claim of fraud.

GEICO argues that it was entitled to rely upon Dr. Strut's facially valid claims in making payment pursuant to the no-fault statute and that the nature of Dr. Strut's fraudulent scheme could not be determined immediately due to the nature of the fraud and the variety of entities under which he submitted claims. ... More specifically, GEICO argues that it did not have a sufficient sample of claims to determine that Dr. Strut's claims were fraudulent until late 2011.

Defendants reply that once GEICO became aware of information that rendered its reliance upon the claim forms submitted by Dr. Strut unreasonable, then the requisite reliance necessary to assert a fraud claim can no longer be established. ... Defendants argue that GEICO was not relying upon Dr. Strut's verifications as of November of 2010.

GEICO is entitled to rely upon the verifications submitted by healthcare providers for purposes of the no fault reimbursement scheme even as it investigates the veracity of those verifications for purposes of a broader fraud claim. See Allstate Ins. Co. v. Lyons, 843 F. Supp.2d 358, 375 (E.D.N.Y. 2012) (Allstate was entitled to rely upon defendants' facially reasonable diagnoses and claims for payment and was not barred from asserting fraud claims based upon the delay in detecting the complex fraudulent scheme). In any event, a determination as to when GEICO possessed sufficient information as to render its reliance upon such verifications unreasonable is not appropriate for summary judgment, particularly where, as here, the allegedly fraudulent scheme required comparison of a sufficiently large pool of claims and where defendants billed under different names. See Excel, 879 F. Supp.2d at 270 ("Where it is possible to draw conflicting inferences about when plaintiffs were on notice of the fraud complained of, the issue cannot be determined as a matter of law"); Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 888 F. Supp.2d 478, 484-85 (S.D.N.Y. 2012) (because evaluation of the reasonable reliance element requires consideration of many factors, it is often a question of fact for the jury rather than a question of law for the court); AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. CV-0402934, 2005 U.S. Dist. LEXIS 29666, 2005 WL 3710370, at *14 (Feb. 22, 2005) ("claim that any reliance by the plaintiffs was unreasonable is a question of fact").

Docket No. 96, pp. 14-16.[9]

---

[9] In this context, it is worthwhile to note that – although Defendants' objections to the R&R make reference to both "reasonable reliance" and "justifiable reliance" (see Docket Nos. 98, 98-1, passim) – the proper test of reliance in a fraud case is "justifiable reliance". See, e.g., Needham & Co., LLC v. Access Staffing, LLC, 2016 U.S. Dist. LEXIS 111925 at * 49 - * 50 (S.D.N.Y. 2016). As the Second Circuit has observed, "justifiable reliance" is "a clearly less burdensome test" than "reasonable reliance". Gordon & Co. v. Ross, 84 F.3d 542, 546 (2d Cir. 1996).

Magistrate Judge Schroeder's R&R on the question of reliance was not plucked out of thin air, but rather was predicated on the parties' actual submissions to the Court on Defendants' motion for summary judgment, and the actual, governing law. In particular, Defendants argued that: (i) in October 2010, GEICO was suspicious about some of Defendants' claims, and investigated some of Defendants' claims; (ii) thereafter, GEICO began to flag Defendants' claims for further review; (iii) then, in December 2010, May 2011, and July 2011, GEICO requested additional verification of some of Defendants' claims by requiring Strut to appear for an examination under oath in accordance with New York's no-fault insurance laws; and therefore (iv) as a sophisticated plaintiff with suspicions regarding Defendants and the means to seek additional verification of Defendants' claims, GEICO should not be heard to allege that it reasonably relied on any of Defendants' claims. See Docket No. 75., pp. 9-14; Docket No. 74-2, ¶¶ 77-84; Docket No. 74-3, ¶¶ 101-121.

In this context, and as GEICO observed at length in opposition to Defendants' summary judgment motion (see Docket No. 77, pp. 16-21), it is important to take into account the regulatory environment in which GEICO must determine whether to pay or deny a no-fault insurance claim. When an insurer such as GEICO receives a no-fault insurance claim from a healthcare provider, it generally must either pay or deny the claim within 30 days. See N.Y. Ins. Law § 5106; 11 N.Y.C.R.R. § 65-3.8; see also Leone Decl., ¶ 39. Within 15 days of receiving a no-fault insurance claim from a healthcare provider/assignee, insurers such as GEICO may opt to request additional verification of the claim. Should an insurer request additional verification of the claim, the 30-day period in which to pay or deny the claim is tolled pending the receipt of the additional verification. See 11 N.Y.C.R.R. § 65-3.8; see also Leone Decl., ¶ 40.

However, insurers such as GEICO may not request additional verification of claims unless they have good reasons to do so. See 11 N.Y.C.R.R. § 65-3.2; Leone Decl., ¶ 41. If an insurer cannot show a good reason for a request for additional verification, the 30-day period in which to pay or deny a claim will not be tolled by a request for additional verification. See Leone Decl., ¶ 42. Furthermore, if an insurer denies a healthcare provider's no-fault insurance claim, it must advise the provider of the reasons for its denial with a high degree of specificity. See 11 N.Y.C.R.R. § 65-3.4; see also Leone Decl., ¶ 43.

Insurers such as GEICO face substantial negative consequences in the event that they fail to pay or deny a claim within 30 days after receiving the claim, or – if they request additional verification of the claim – within 30 days of receiving such additional verification. See Leone Decl., ¶ 44. For instance, the insurer generally will be precluded from asserting any defenses to the claim, including defenses to the effect that the underlying services were medically unnecessary, illusory, or otherwise fraudulent. Id. What is more, overdue payments earn monthly interest at a rate of two percent and entitle a claimant to reasonable attorneys' fees incurred in securing payment of a valid claim. See N.Y. Ins. Law § 5106. See Leone Decl., ¶ 45. Thus, as a practical matter, insurers such as GEICO have a very short time-frame in which to make determinations as to whether to pay, deny, or seek additional verification with respect to a no-fault insurance claim, and are limited in the additional verification they may seek. See Leone Decl., ¶ 46.

Furthermore, Pursuant to New York Insurance Law § 403, the bills submitted by a healthcare provider to GEICO, and to all other automobile insurers, must be verified by the healthcare provider subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially

false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. See Leone Decl., ¶ 47.[10]

In this context, and as Plaintiffs noted in opposition to Defendants' summary judgment motion, courts considering whether a plaintiff's reliance was justifiable "consider the entire context of the transaction", which "involve[s] many factors to consider and balance, no single one of which is dispositive". Charney v. Zimbalist, 2014 U.S. Dist. LEXIS 137678 at * 88 (S.D.N.Y. 2014)(internal quotations and citations omitted). Thus, "reliance is often a question of fact for the jury rather than a question of law for the court." Id.

Whether GEICO's reliance on Defendants' fraudulent billing was justifiable therefore must be viewed in the context of the New York No-Fault Laws, which – as a practical matter – require insurers to rely on facially-valid claims submitted by or on behalf of licensed healthcare providers. See Leone Decl., ¶ 48. Indeed, an insurer is entitled to rely on the representations of an insured. See, e.g., Ehrlich v. Berkshire Life Ins. Co., 2002 U.S. Dist. LEXIS 3730 at * 35 (S.D.N.Y. 2002)("The law in New York is that the insurer has a right to rely on the representations in the written application if the application is signed by the insured and attached to the policy."); Mutual Ben. Life Ins. Co. v. Morley, 722 F. Supp. 1048, 1054 (S.D.N.Y. 1989)("Under New York law, … the insurance company is entitled to rely on the representations made by the applicant on the application.")[11]

---

[10] What is more, insurers such as GEICO are legally required to attempt "in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear", and to "not treat the applicant [for no-fault insurance benefits] as an adversary". See N.Y. Ins. Law § 2601; 11 N.Y.C.R.R. 65-3.2. Under Defendants' theory, they would have an insurer rush to judgment without complete facts, a proposition that is not consistent with an insurer's obligation under the statute and regulations.

[11] Likewise, insurers are entitled to rely on the representations of the healthcare providers who take assignments of no-fault insurance benefits from their insureds, and stand in their shoes. C.f.

19

Though Defendants cite to an informal opinion of the DFS Office of General Counsel for the proposition that an insurer such as GEICO may delay payment of claims it believes to be fraudulent, while it pursues an investigation of the claims, this hardly resolves the question of whether GEICO justifiably relied on Defendants' fraudulent no-fault claims. See Docket No. 98, pp. 11-12, citing March 11, 2001 DFS Office of General Counsel opinion. Rather – and as GEICO argued at length in opposition to Defendants' summary judgment motion – though GEICO had suspicions regarding some of Defendants' claims beginning in October 2010 – GEICO did not, until late 2011, have a sufficiently-large sample of Defendants' claims to begin to determine whether Defendants provided their "treatments" pursuant to a pre-determined, fraudulent protocol, in which every patient received a substantially identical diagnosis and treatment plan regardless of their individual circumstances. See Leone Decl., ¶¶ 74, 89, et seq. Moreover, Defendants changed the identity under which they submitted their billing on two different occasions between late 2010 and mid-2011 – submitting some of their initial billing under the VascuFlo name (without VascuFlo or Hirsch's knowledge or consent), some under Strut's own name, and then, in early 2011, switching over to submit their billing under RES's name. See Leone Decl., ¶¶ 64, 76-78. As a result, GEICO did not immediately realize that Strut was the owner of RES, because GEICO had been identifying his claims by the tax identification number under which they were submitted, and Strut submitted the RES claims under a new tax identification number. Id. What is more, Strut certified the validity of each of Defendants' bills pursuant to N.Y. Ins. Law § 403. See Leone Decl., ¶ 47.

Magistrate Judge Schroeder explicitly took these points into account in recommending denial of Defendants' summary judgment motion on reliance grounds. See Docket No. 96, p. 16

Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG, 970 F. Supp. 2d 157, 168 (S.D.N.Y. 2013).

(noting that, under the pertinent law, GEICO is entitled to rely on a healthcare provider's verified no-fault claims, "even as it investigates the veracity of those verifications for purposes of a broader fraud claim" and, in any event, "a determination as to when GEICO ▾possessed sufficient information as to render its reliance upon such verifications unreasonable is not appropriate for summary judgment, particularly where, as here, the allegedly fraudulent scheme required comparison of a sufficiently large pool of claims and where defendants billed under different names.")

In this context, <u>numerous</u> Courts have held that insurers are <u>entitled</u> to rely on facially-valid claims submitted by a licensed healthcare provider. Likewise, <u>numerous</u> Courts have explicitly <u>rejected</u> the notion – raised by Defendants in the present case – that the claim verification tools provided by New York's No-Fault Laws or a plaintiff's putative status as a "sophisticated insurer" militate against justifiable reliance. See, <u>e.g.</u>, <u>Lyons</u>, <u>supra</u> 843 F. Supp. 2d at 374-375 ("It is … incorrect to claim that Allstate was remiss in relying on defendants' facially reasonable diagnoses and claims for payment and failing to uncover their falsity. In short, regardless of the strength of Allstate's investigatory capabilities, it is not barred from asserting fraud claims solely for failing to detect – within the no-fault law's 30-day window, no less – the complex fraudulent schemes attributed to defendants here."); <u>Valley Physical</u>, <u>supra</u> at * 15 ("Nor is the Court persuaded by Defendants' argument that Allstate's status as a sophisticated insurer and the verification process provided by New York's No-Fault regulations mean that Allstate can not claim it relied on the materials it received from the defendants or that such reliance was reasonable."); <u>Halima</u>, <u>supra</u> at * 15 - * 17 (denying motion to dismiss in light of plaintiff-insurers' contention that defendants "fraudulently submitted thousands of claims which caused Plaintiffs to pay over one million dollars in unnecessary reimbursements which

could not be detected as fraudulent until after a pattern of filed suspicious claims was apparent",

so the plaintiff-insurers "could not detect Defendants' fraud because the submissions were

facially valid insurance claims authorized by physicians and submitted by a licensed medical

services corporation upon which they reasonably relied.")

Notably, though the Lyons, Valley Physical, and Halima decisions involved motions to

dismiss, Defendants have not met their burden of demonstrating, "beyond doubt", that GEICO

"can prove no set of facts in support of" its contention that it reasonably relied on Defendants'

fraudulent billing. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)( summary judgment may

be granted only in circumstances where "it appears beyond doubt that the plaintiff can prove no

set of facts in support of [its] claim which would entitle [it] to relief.") Especially where, in

deciding a summary judgment motion, the Court is obligated to "view all evidence in the light

most favorable to the nonmoving party." Arnold v. Krause, Inc., 233 F.R.D. 126, 131 (W.D.N.Y.

2005).

At most, Defendants have presented some evidence that GEICO had suspicions regarding

some of Defendants' claims, and that GEICO sought additional verification of some of

Defendants' claims via examinations under oath of Strut. For its part, GEICO has proffered

evidence to the effect that – while it found some of Defendants' claims to be suspicious – it did

not have a sufficient sample of Defendants' claims to determine that all of them were fraudulent

until late 2011. See Leone Decl., ¶¶ 74, 89, et seq. Moreover, GEICO has described, at length,

the mandatory, expedited claims handling procedure set forth in New York's no-fault insurance

laws, and has explained how – as a practical matter – the procedure requires insurers to rely on

facially-valid claims. Id., ¶¶ 39-47. Under the circumstances, Defendants have not demonstrated

– as a matter of law – that GEICO did not justifiably rely on their facially-valid claims. This question should be reserved for the factfinder.

Finally, it is important to note that, while justifiable reliance is an element of a common law fraud claim, the Supreme Court has held that reliance is not an element of a civil RICO claim predicated on mail fraud. See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 649 (2008). To the extent that some form of reliance is necessary, not as an element of GEICO's RICO claims, but to establish proximate cause, the Second Circuit has held that payment may constitute circumstantial proof of reliance upon a financial representation. See e.g., Catholic Health Care West v. US Foodserv., 729 F.3d 108, 119-120 (2d Cir. 2013)(holding it to be a reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the implicit representation that invoiced amount was honestly owed); McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 225 (2d Cir. 2008)(holding that "payment may constitute circumstantial proof of reliance upon a financial representation").[12]

Accordingly, the Court should overrule Defendants' objections to Magistrate Judge Schroeder's well-reasoned R&R, adopt the R&R in its entirety, and deny Defendants' summary judgment motion in its entirety.

## III. The R&R Correctly Discounted Defendants' Arguments to the Effect That, Because They Supposedly Have Been Successful in Collecting Money from GEICO in Expedited No-Fault Arbitration, They Somehow Lacked the Scienter Necessary to GEICO's Fraud-Based Claims

In their objections to the R&R, Defendants argue that the supposed "fact that Dr. Strut has been overwhelmingly successful in the No-Fault arbitration system in defending his use of these treatments and his billing for these treatments, establishes as a matter of law, that his

---

[12] Nor is justifiable reliance, or any reliance, an element of GEICO's unjust enrichment claim. Defendants' reliance-based arguments – even if credited by the Court (and they should not be) – provide no basis for summary judgment on GEICO's unjust enrichment claim.

submittal of additional treatments [sic] to GEICO cannot be considered 'fraudulent' on the basis that the treatments are not 'medically necessary.'" <u>See</u> Docket No. 98, p. 19. In substance, Defendants appear to be arguing that, because they supposedly have been "overwhelmingly successful" in no-fault collections arbitration, they supposedly believed their supposed "treatments" and billing to be medically necessary and legitimate, and supposedly lacked the requisite fraudulent intent.

This argument is utterly risible. As a threshold matter, it is well-settled that the issue of scienter generally presents a question that should not be resolved on a motion for summary judgment. <u>See</u>, <u>e.g.</u>, <u>Golden Budha Corp. v. Canadian Land Co.</u>, N.V., 931 F.2d 196, 201-202 (2d Cir. 1991)("Ordinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment, being a factual question involving the parties' states of mind."); <u>Prendergast v. Pac. Ins. Co.</u>, 2012 U.S. Dist. LEXIS 43084 at * 20 (W.D.N.Y. 2012)("[a] trial court must be cautious about granting summary judgment when . . . intent is at issue ... [o]rdinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment, being a factual question involving the parties' states of mind")(internal quotations and citations omitted); <u>Lau v. Mezei</u>, 2012 U.S. Dist. LEXIS 116608 at * 14 - * 15 (S.D.N.Y. 2012)("Scienter is an issue of fact that should not typically be resolved on summary judgment unless the plaintiff has failed to present facts that can support an inference of bad faith or an inference that defendants acted with an intent to deceive.")(Internal quotations and citation omitted).

In any case, in opposition to Defendants' motion for summary judgment, Plaintiffs presented a massive amount of evidence that is more than sufficient to raise fact questions regarding Defendants' fraudulent intent. To cite just a few examples:

(i)    Shortly before Defendants began to submit their fraudulent billing to GEICO, Strut was convicted of a felony (in this very court) in connection with an

insurance fraud scheme that was, in many respects, similar to the scheme alleged in the present case, inasmuch as it involved – among other things – the systematic submission of fraudulent Medicare billing for medically unnecessary and illusory services. See Leone Decl., ¶¶ 6-15.

(ii) Moreover, Strut's felony conviction and profligate lifestyle left him in dire financial straits. See Leone Decl., ¶¶ 16-31. For instance, Strut declared bankruptcy shortly before Defendants began to submit fraudulent billing to GEICO, reporting over $200,000.00 in consumer debt on 13 separate credit cards. Id. What is more, Strut effectively was barred from earning a living as a legitimate physician in that – as a result of his conviction – he was: (a) subjected to professional discipline; (b) referred to prominently in The Buffalo News as a "scam artist" and "unscrupulous"; (c) barred for life from billing Medicare; and (d) unable to obtain malpractice insurance, which effectively prevented him from treating Workers' Compensation or private insurance patients, either. See id., ¶¶ 16-26. It therefore appears that, during the pertinent period, Strut was an ethically compromised convicted felon with a strong motive to commit fraud.

(iii) Furthermore, and as noted above, in opposition to the present motion GEICO proffered – among other things – the Staats Decl., Shatzer Decl., Thelian Decl., and Leone Decl. Dr. Staats and Dr. Shatzer concluded that Defendants routinely misrepresented the complexity of the presenting problems of the GEICO insureds they purported to treat, and fabricated and exaggerated the results of their initial and follow-up examinations. See Staats Decl., ¶¶ 10-12, and Exhibit "A"; Shatzer Decl., ¶¶ 5-7, and Exhibit "A".

(iv) Dr. Staats and Dr. Shatzer also concluded that – based on these fabricated and exaggerated examination "results" – Defendants routinely purported to subject GEICO insureds to medically unnecessary pain management injections, as well as other "treatments" and diagnostic tests, without regard for the insureds' individual circumstances or presentment. See Staats Decl., ¶¶ 10-12, and Exhibit "A"; Shatzer Decl., ¶¶ 5-7, and Exhibit "A".

(v) What is more, Dr. Staats and Dr. Shatzer concluded that Defendants routinely prescribed large amounts of narcotics and other habit-forming drugs to insureds who did not require them, and in a number cases of continued to prescribe large amounts of narcotics to the insureds despite clear indications that the drugs were being abused or diverted. See Staats Decl., ¶¶ 10-12, and Exhibit "A"; Shatzer Decl., ¶¶ 5-7, and Exhibit "A".[13]

---

[13] Defendants' prescribing practices – as discussed in the Shatzer Decl., Staats Decl., and Leone Decl. – are incredibly disturbing. As alleged in GEICO's Complaint, it appears that Defendants prescribed large amounts of narcotics and other habit-forming drugs to GEICO insureds who did not require them in order to incentivize the insureds to continue reporting to Defendants for medically-useless and illusory "treatments" that Defendants then could bill to GEICO. See Docket No. 1, ¶¶ 6, 175-182, and passim. Even Dr. Laraiso – Defendants' own "expert" – gave

(vi)   Overall, both Dr. Staats and Dr. Shatzer concluded that the manner in which Defendants "treated" the GEICO insureds indicated a conscious disregard for their welfare. Id. Furthermore, both Ms. Thelian and Dr. Staats concluded that Defendants' billing for various of their "treatments" misrepresented the nature of the services they provided. See Thelian Decl., ¶¶ 5-7, and Exhibit "A"; Staats Decl., ¶¶ 10-12, and Exhibit "A". Moreover, Mr. Leone sets forth – at length – considerable evidence to demonstrate that Defendants had a motive to commit fraud, and that Defendants provided their "treatments" to GEICO insureds – to the extent they provided them at all – pursuant to a pre-determined fraudulent protocol designed to maximize their billing, rather than to treat or otherwise benefit the insureds. See Leone Decl., ¶¶ 4-30, 89-132.

In an apparent attempt to demonstrate that Defendants had some legitimate belief that their purported "treatments" were legitimate and medically necessary – and, by extension – that they lacked the requisite scienter – Defendants once again resort to tendentious mischaracterizations of Dr. Shatzer's deposition testimony. See Docket No.98, pp. 5-6. In particular, Defendants contend that Dr. Shatzer testified that medical necessity needs to be determined on a case-by-case basis, evidently in an attempt to rebut Plaintiffs' strong showing that no legitimate physician or medical practice could have believed Defendants' treatments were

---

testimony indicating that Defendants' prescribing was not in accordance with the standard of care. See Gershenoff Decl., Exhibit "B", pp. 61, 70, 105, 118-157, 162, 167-180, 191-205. Some of the most odious examples – by no means the only ones – include: (i) continuing to prescribe narcotics to an insured with a high-risk pregnancy, while simultaneously misadvising the insured as to the risk the narcotics posed to her fetus and, evidently, not consulting with her obstetrician regarding the narcotics prescriptions (Shatzer Decl., Exhibit "A", pp. 31-32; Leone Decl., ¶¶ 84, 114); (ii) continuing to prescribe narcotics to an insured after the insured – when asked to take a drug test – had refused and instead actually stole prescriptions from Defendants' office (Shatzer Decl., Exhibit "A", pp. 27-28; Leone Decl., ¶¶ 84, 114); and (iii) continuing to prescribe narcotics to an insured who not only ran out of the narcotics Defendants previously prescribed because she took more of them than she was supposed to, but also repeatedly tested positive for cocaine, narcotics, methadone, and marijuana that Defendants had not prescribed. (Shatzer Decl., Exhibit "A", pp. 32-33; Leone Decl., ¶ 84, 114). GEICO has presented many similar cases in opposition to this motion (see id.), and looks forward to presenting them to the jury.

legitimate or medically necessary.[14] However, Defendants omit to mention that both Dr. Shatzer and Dr. Staats also testified that Defendants <u>did not</u> make a case-by-case determination with respect to the medical necessity of the "treatments" they purported to provide. <u>See</u> Staats Decl., ¶¶ 13-21; Shatzer Decl., ¶¶ 8-11. Instead, as Dr. Shatzer observed, "the point of my testimony – and my expert report – was that Defendants did <u>not</u> engage in legitimate medical decision-making on a case-by-case basis." Shatzer Decl., ¶ 9. As Dr. Shatzer noted:

(i) "in a significant number of cases, the results of Defendants' initial and follow-up examinations of the GEICO insureds appear to have been fabricated and exaggerated";

(ii) "the prolotherapy and other pain management injections that Defendants purported to provide to the GEICO insureds were of no medical benefit to the patients";

(iii) "the pharmacological treatments that Defendants provided to the GEICO Insureds – including, in many cases, large quantities of narcotics, tranquilizers, and other habit-forming drugs – were not medically necessary and placed the patients, and possibly others, at risk"; and

(iv) "Dr. Strut, who is the record owner of RES, must have been aware of the fabrications and exaggerations in the initial and follow-up examination reports, as well as the lack of medical necessity for the injections and drugs that were provided to the patients."

Shatzer Decl., ¶ 6.[15]

Against this backdrop, Defendants' apparent contention that their putative success in individual no-fault collections arbitration somehow obviates any fact questions regarding their scienter is absurd. As Defendants are well-aware – and as GEICO explained at length in

---

[14] In their summary judgment motion papers, Defendants similarly mischaracterized Dr. Staats' and Mr. Leone's testimony. <u>See</u>, <u>e.g.</u>, Docket No. 77, pp. 11-12.

[15] Dr. Staats came to similar conclusions about Defendants' conduct: "Dr. Strut, who is board-certified in physical medicine and rehabilitation, who signed the billing and treatment reports at issue, and who ultimately was responsible for the legitimacy of his treatment and billing practices, must have been aware of the deviations from the standard of care that are discussed in this report", including Defendants' routine misrepresentations in their examination reports. Staats Decl., ¶ 11.

opposition to Defendants' summary judgment motion – GEICO did not have a full and fair opportunity to litigate the legitimacy of Defendants' "treatment" and billing practices in the expedited arbitration system required by New York no-fault insurance law. See Docket No. 77, pp. 22-23. For instance, the expedited no-fault arbitration procedure set forth in 11 N.Y.C.R.R. § 65-4.1 generally contemplates no substantive discovery in advance of the hearing, nor does it generally permit any meaningful examination or cross-examination of witnesses. See Leone Decl., ¶ 57; see also Mun, supra, 751 F.3d at 99 ("New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. … Discovery is limited or non-existent. … Complex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system.")

What is more, to the limited extent that any discovery is permitted in advance of a no-fault arbitral hearing, insurers such as GEICO generally are not permitted to seek or obtain pre-hearing discovery that could be used to demonstrate a pattern of medically-unnecessary or illusory treatment occurring across large numbers of patients and claims, such as the pattern alleged herein. Rather, no-fault arbitrators generally refuse to permit any discovery with respect to patterns of treatment practices beyond the discrete claim or claims before them in a given hearing – to the limited extent that they allow any discovery at all. See Leone Decl., ¶ 58. In fact, no-fault arbitrations typically are heard and resolved in minutes, with arbitrators conducting one hearing after another, generally in 15-minute intervals over the course of a day. These circumstances render it impractical for an arbitrator to adequately consider a pattern of fraudulent treatment or even the need for discovery. See Leone Decl., ¶ 59.

Defendants' putative success in no-fault collections arbitration simply shows that they know how to game the no-fault arbitration system to collect on fraudulent claims. This is precisely why the

DFS and every court to consider the issue has held that plaintiff-insurers' claims to recover no-fault insurance benefits they were defrauded into paying are <u>not</u> subject to no-fault arbitration. <u>See</u>, <u>e.g.</u>, <u>Mun</u>, <u>supra</u>; <u>see also</u> <u>Excel</u>, <u>supra</u>, 879 F. Supp. 2d at 262-263. At most, given the details set forth in the Staats Decl., Shatzer Decl., Thelian Decl., and Leone Decl., there are significant questions for the factfinder that preclude summary judgment.

Accordingly, the Court should overrule Defendants' objections to Magistrate Judge Schroeder's well-reasoned R&R, adopt the R&R in its entirety, and deny Defendants' summary judgment motion in its entirety.

## IV. The R&R Correctly Determined That Fact Questions Preclude Summary Judgment on Defendants' Counterclaim for Payment of Their Unpaid Claims

Magistrate Judge Schroeder correctly determined in the R&R that the sworn declarations by Dr. Shatzer, Dr. Staats, and Ms. Thelian "are more than sufficient to create a question of fact as to the appropriateness of defendants' no-fault claims. Accordingly, it is recommended that defendants' motion for summary judgment as to their counterclaim be denied." Docket No. 96, p. 21. As set forth above, and in Magistrate Judge Schroeder's R&R, these declarations identified – in granular detail – exactly how Defendants' no-fault claim submissions fraudulently misrepresented the medical necessity of the underlying services and, in many cases, whether they actually were performed in the first instance. <u>Id</u>., pp. 18-21.

In light of the facts outlined above, it is difficult to decipher Defendants' arguments as to why they ought to be entitled to summary judgment on their counterclaim for their outstanding billing. It appears as if they may be contending that: (i) by commencing this action, GEICO waived its right to contest the legitimacy of Defendants' bills and treatments in any other forum (<u>see</u> Docket No. 98-1, p. 98-1); (ii) GEICO supposedly did not rely on Defendants' misrepresentations, so GEICO's claims in this action should be dismissed on summary judgment

(see Docket No. 98, p. 26); and therefore (iii) the Court should issue a declaratory judgment to the effect that GEICO must pay all of Defendants' outstanding bills. Id.

As the Court may note, Defendants do not cite to any authority that actually supports this proposition. That is because their proposition is wrong. First, while reliance may be an element of GEICO's fraud-based claims to recover money GEICO already paid to Defendants, it is not an element of GEICO's declaratory judgment claim, which seeks a declaration to the effect that Defendants are not entitled to collect on any of their pending billing. Thus, even if Defendants were to obtain summary judgment dismissing GEICO's fraud-based claims on a "lack of reliance" theory (which, as set forth above, would be totally inappropriate), GEICO would be able to proceed on its declaratory judgment and unjust enrichment claim, given that this Court also has diversity jurisdiction. See Docket No. 1, ¶ 23. Second, and more generally, there are – as discussed in GEICO's opposition to Defendants' summary judgment motion, and herein – significant fact questions in this case, including fact questions as to whether GEICO's reliance was justifiable, that preclude summary judgment.

Accordingly, the Court should overrule Defendants' objections to Magistrate Judge Schroeder's well-reasoned R&R, adopt the R&R in its entirety, and deny Defendants' summary judgment motion in its entirety.

## CONCLUSION

For the reasons stated herein, Defendants' objections to the R&R should be overruled in their entirety, the R&R should be adopted in its entirety, and Defendants' summary judgment motion should be denied in its entirety, together with such other and further relief as to the Court seems just and proper.

Respectfully submitted,

RIVKIN RADLER LLP

By: _____

Barry I. Levy (BL 2190)
Max Gershenoff, Esq. (MG 4648)
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000
*Counsel for Plaintiffs, Government Employees
Insurance Co., GEICO Indemnity Co., GEICO
General Insurance Company and GEICO Casualty
Co.*