UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

        Plaintiff,

        v.

MIKHAIL STRUTSOVSKIY, M.D., and
RES PHYSICAL MEDICINE &
REHABILITATION SERVICES, P.C.,

        Defendants.

12-CV-330
DECISION AND ORDER

---

On April 18, 2012, the plaintiff, Government Employees Insurance Company

("GEICO"), commenced this action against Mikhail Strutsovskiy, M.D., and RES

Physical Medicine & Rehabilitation Services, P.C. ("RES").  The complaint generally

alleges a fraudulent billing scheme for insurance claims submitted under the New York

Comprehensive Motor Vehicle Reparations Act.  It asserts causes of action under the

Racketeer Influenced and Corrupt Organizations Act ("RICO") based upon the

defendants' use of the mail to submit fraudulent no-fault bills for services that were not

medically necessary or not performed at all, as well as for common law fraud, aiding-

and-abetting fraud, and unjust enrichment.  Docket Item 1.  GEICO seeks

reimbursement of no-fault payments made to Strutsovskiy and a declaration that it is not

required to pay Strutsovskiy and RES for outstanding no-fault claims submitted on their

behalf.  *Id.*

On October 31, 2014, the defendants moved for summary judgment on both

GEICO's claim and their counterclaim for payment of outstanding no-fault claims, also

requesting attorney fees and interest as provided under the no-fault statute. Docket

Items, 74, 74-2 ¶¶ 264-66, 75. After the parties briefed the motion for summary

judgment, Magistrate Judge H. Kenneth Schroeder, Jr., issued a Report,

Recommendation and Order ("R&R").[1] Judge Schroeder recommended that the

defendants' motion for summary judgment be denied, except as to GEICO's consent to

"partial summary judgment dismissing its RICO, common law, and declaratory judgment

claims to the limited extent that those claims are predicated on allegations that RES['s]

and [Strutsovskiy's] predecessor unincorporated medical practice were owned and

controlled by Hirsh and VascuFlo."[2] *See* Docket Item 96 at 2.

The defendants objected to the R&R, GEICO responded, and the defendants

replied. Docket Items 98, 102, 103. In the meantime, GEICO also moved under

Federal Rule of Procedure 65 for a preliminary injunction to stay arbitration

proceedings, and the defendants responded. Docket Items 100, 104. This Court heard

argument concerning both the objection to the R&R and the motion for a preliminary

injunction on February 8, 2017. Docket Item 105. At the close of argument, the Court

requested additional briefing, which both sides filed. Docket Items 107, 108. After the

argument, GEICO also replied to the defendants' response to the motion for a

preliminary injunction to stay arbitration. Docket Item 106.

---

[1] On June 18, 2012, United States District Judge Richard J. Arcara referred this case to Judge Schroeder under 28 U.S.C. Section 636(b)(1)(A) and (B). Docket Item 32. On March 7, 2016, this case was transferred from Judge Arcara to the undersigned. Docket Item 92.

[2] GEICO entered into a stipulation of dismissal without prejudice with defendants Aaron Hirsh and VascuFlo. Docket Items 63, 64.

Currently before the Court are (1) Judge Schroeder's recommendation to deny in part the motion for summary judgment, and (2) the plaintiff's motion for a preliminary injunction to stay arbitration. For the following reasons, this Court accepts the recommendations in the R&R, Docket Item 96, and grants GEICO's motion for a preliminary injunction to stay arbitration, Docket 100.

## DISCUSSION AND ANALYSIS

### I.    LEGAL STANDARDS

#### A.    Review of Report, Recommendation and Order

This Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

#### B.    Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must assess whether there are any material issues of fact to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" only if it might affect the outcome of the suit. *Id.* at 248. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has demonstrated "the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor[.] . . . [T]he motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment must show "that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

### C.    Federal Rule of Civil Procedure 65

GEICO moves for a preliminary injunction to stay the arbitrations under Federal Rule of Civil Procedure 65. Docket Item 100. "A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). "The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Id.* (quotation omitted). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.* (same). "And, irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.*

## II.    THE DEFENDANTS' OBJECTIONS

The defendants object to the R&R on three grounds.  First, the defendants argue

that GEICO is inappropriately engaging in forum shopping through this action in an

effort to remove itself from arbitration under New York's no-fault insurance scheme.

Docket Item 98 at 8-9.  Second, the defendants argue that GEICO has failed to

establish the element of justifiable reliance for its fraud-based claims.  *Id.* at 13.  Finally,

the defendants argue that GEICO cannot establish the scienter necessary to support

the fraud-based claims because Strutsovskiy has been successful in efforts to collect

money from GEICO in no-fault arbitration.  *Id.* at 20.  This Court addresses each

contention in turn.[3]

### A.    New York State's Comprehensive No-Fault System

New York Insurance Law Section 5106(a) generally requires insurers to pay or

deny no-fault benefits within thirty calendar days after a claim is submitted.  *See also* 11

N.Y.C.R.R. 65-3.8(a)(1) ("No-fault benefits are overdue if not paid within 30 calendar

days after the insurer receives proof of claim").  Failure to comply with this deadline

precludes the insurer from raising most defenses, including lack of medical necessity.

*Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y.2d 274 (1997).  Insurers must provide

a claimant the opportunity to submit to arbitration any dispute involving the insurer's

liability to pay a claim.  N.Y. Ins. Law § 5106(b).

Within the special expedited arbitration procedures set forth in the regulations,

"[d]iscovery is limited or non-existent."  *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir.

---

[3] The Court assumes the parties' familiarity with the facts, which are described in detail in the R&R.

2014) (citing 11 N.Y.C.R.R. § 65-4.5). As a result, claims for fraud are not among those waived by insurers who either pay claims or fail to deny them during the thirty-day period. *See id.* Indeed, the Second Circuit has recognized that "[c]omplex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system." *Id.* More explicitly, the Second Circuit has held that "[t]he weight of New York authority holds that the 30-day process in § 5106(a) does not constrain later insurer actions seeking recovery for fraud." *Id.* at 101.

In their objections, the defendants continue their argument—made earlier in their motion for summary judgment—that GEICO is avoiding no-fault arbitration through an "ill-conceived RICO conspiracy fraud claim." Docket Item 98-1 at 8. But the defendants present no convincing reason why GEICO cannot bring a fraud claim in this Court. And this Court therefore rejects the defendants' assertion that "GEICO should not be allowed to forum shop simply by alleging 'fraud' in medical necessity determinations." *See* Docket Item 98 at 8.

The defendants argue that GEICO's reliance on RICO is inappropriate here because the New York no-fault statute provides a process to resolve the dispute. Docket Item 98-1 at 9. In essence, the defendants argue that RICO is preempted by New York's comprehensive no-fault statute. Docket Item 98-1 at 9. But their argument misunderstands both RICO and preemption. *See* Docket Item 98-1 at 9-12. First, as the Second Circuit noted in *Mun*, New York's comprehensive no-fault statute was not designed to handle fraud and RICO claims. 751 F.3d at 99 ("[c]omplex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be

shoehorned into this system").  So New York's comprehensive no-fault system cannot be expected to resolve the dispute that GEICO raises.

Second, although the defendants are correct that RICO claims are "precluded where the source of the asserted right is covered by a more detailed *federal* statute," *Hintergerger v. Catholic Health Sys.*, 2012 WL 125270, at *6 (W.D.N.Y. Jan. 17, 2012) (emphasis added), there is no *federal* statute upon which they rely.  The defendants assert that the "reference to a *federal* statute was not the focus of the legal cannon" and argue that a RICO claim also can be preempted by a state regulatory scheme, such as New York's no-fault insurance arbitration.  Docket Item 98-1 at 10.  But the preemption doctrine does not contemplate state law preempting federal law; federal law, as the supreme law of the land, can be preempted only by other federal law.  *See* U.S. Const. Art. VI, cl. 2; *Free v. Bland*, 369 U.S. 663, 666 (1962) ("The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.  Article VI, Clause 2.  This principle was made clear by Chief Justice Marshall when he stated for the Court that any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.")  Insofar as the defendants see a conflict between New York's comprehensive no-fault insurance statute and RICO, it is the no-fault scheme that must yield.[4]

Even more telling, the defendants do not cite a single case in which a state statutory scheme has preempted a federal cause of action—let alone a state statute

---

[4] The preemption argument is separate from a res judicata or collateral estoppel argument, which is addressed below.  *See infra* n.6.

7

that specifically has preempted a RICO claim. And although the Supreme Court "[i]n a variety of contexts . . . has held that a precisely drawn, detailed statute pre-empts more general remedies," *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976), none of those contexts include a precisely drawn, detailed *state* statute preempting a *federal* remedy. Because GEICO's RICO claim does not attempt to circumvent remedies afforded by another federal statute, the defendants' preemption argument fails. [5]

The defendants also misapply *Fair Price Medical Supply Corporation v. Travelers Indemnity Company*, 10 N.Y.3d 556 (2008)—a case they previously claimed was inapposite, *see* Docket Item 77 at 20—to argue that GEICO must bring its claims in no-fault insurance arbitration. *See* Docket Item 98-1 at 6-9. In *Fair Price*, the New York Court of Appeals precluded an insurance company from defending a complaint seeking payment of a no-fault claim on the ground that the services charged were never provided. *Fair Price*, 10 N.Y.3d at 565-66. Even though the insurance company had discovered the potential billing fraud within the 30-day period provided for an insurer to pay or deny a claim, it failed to deny the claim for nearly two years and therefore waived its argument. *Id.* at 560-61. Here, in contrast and as Judge Schroeder found, "there is no allegation that the claims at issue have either not been paid in a timely fashion or been denied in an untimely fashion." Docket Item 96 at 9.

---

[5] Nor does comity or the Tenth Amendment rescue the defendants' argument because RICO neither subjects states to legislation nor compels states to enact and enforce a federal regulatory program. *Cf. New York v. United States*, 505 U.S. 144, 160-61 (1992). RICO merely provides an injured private party with a cause of action.

Moreover, as the district court in *State Farm Mutual Automobile Insurance Co. v.*

*Liguori* recognized:

> there is no language in the *Fair Price* decision suggesting that the insurer
> would also be precluded from asserting a separate lawsuit for fraud or
> unjust enrichment against a medical provider that arose from alleged
> fraudulent conduct by doctors related to that claim.

589 F. Supp. 2d 221, 225 (E.D.N.Y. 2008). As both *Liguori* and Judge Schroeder

observed, there is a critical difference between the question of "whether the 30-Day

Rule applies to a defense of fraud (an issue clearly resolved by *Fair Price*)," and

"whether it bars affirmative claims brought after the insurer pays the claim to recover the

money that was fraudulently obtained (which *Fair Price* never addressed)." 589 F.

Supp. 2d at 233; Docket Item 96 at 10. What is more, the Second Circuit has held that

a defendant has no right to elect arbitration under Section 5106 for an insurer's fraud

claims. *Mun*, 751 F.3d at 101. For those reasons, the defendants may not compel

arbitration of GEICO's fraud-based claims, whether the underlying no-fault claims were

paid to the defendants or not. *See Allstate Ins. Co. v. Hisham Elzanaty*, 929 F. Supp.

2d 199, 207 (E.D.N.Y. 2013) (citing several cases finding that the statutory and

contractual arbitration provisions do not apply to a plaintiff's affirmative claims for

recovery or claims for declaratory relief).

Therefore, this case is appropriately before this Court instead of in New York

State no-fault insurance arbitration.

### B.    Justifiable Reliance

To establish fraud under New York State law, a plaintiff must show: "a false

representation of material fact, knowledge by the party who made the representation

that it was false when made, justifiable reliance by the plaintiff, and resulting injury."

*Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006).  The defendants argue that Judge

Schroeder failed to acknowledge that "the evidence is clear that GEICO was

*affirmatively not relying* on [Strutsovskiy's] submittals."  Docket Item 98-1 at 18.  More

specifically, the defendants argue that if GEICO was suspicious about the defendants'

submissions, then GEICO had an obligation to investigate.  Along similar lines, they

assert that GEICO cannot possibly have relied on the defendants' submissions and

representations at least since November 2010—i.e., after it had completed an internal

investigation into Strutsovskiy's submissions.  *Id.* at 13, 15.  The defendants' arguments

are misplaced.

First, the defendants mistakenly argue that "GEICO was required to make the

effort necessary to protect itself if they [sic] felt that [Strutsovskiy's] submissions were

not eligible for reimbursement for any reason" and therefore cannot claim that it relied

on those submissions.  Docket Item 98-1 at 13.  But insurance companies, regardless of

their investigatory capabilities, are "not barred from asserting fraud claims solely for

failing to detect—within the no-fault law's 30-day window, no less— . . . complex

fraudulent schemes."  *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 375 (E.D.N.Y.

2012).  Therefore, contrary to the defendants' position and as Judge Schroeder found,

GEICO is entitled to rely upon the verifications submitted by healthcare providers for

purposes of paying no-fault claims—perhaps even as it investigates the veracity of

those verifications for purposes of a broader fraud claim.  Docket Item 96 at 16.

Second, because the parties draw conflicting, but credible, inferences about

when GEICO became aware of the alleged fraud—and thus stopped relying on the

defendants' submissions—questions of fact about GEICO's reliance preclude summary

judgment. The Second Circuit has stated that "reasonable [or sometimes 'justifiable'] reliance is often a question of fact for the jury rather than a question of law for the court." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011). Specifically in the context of insurance fraud, the Eastern District of New York has held that "[w]here it is possible to draw conflicting inferences about when plaintiffs were on notice of the fraud complained of, the issue cannot be determined as a matter of law." *Liberty Mut. Ins. Co. v. Excel imaging, P.C.*, 879 F. Supp. 2d 243, 270 (E.D.N.Y. 2012). Because it is possible to draw those inferences here, summary judgment on reliance is inappropriate.

More specifically, GEICO argues a timeline different from the defendants' and thus raises a genuine issue of material fact. GEICO states that it was suspicious of and investigated *some* of the defendants' claims beginning in October 2010. Docket Item 102 at 22. But GEICO also claims that it requested additional verification in December 2010, May 2011, and July 2011, and therefore had reached no final conclusions about the defendants' submissions in November 2010. *Id.* Further, and similar to *Excel*, 879 F. Supp. 2d at 271, GEICO argues that the defendants "changed the identity under which they submitted their billing on two different occasions between late 2010 and mid-2011," Docket Item 102 at 25, which delayed GEICO's discovering a fraudulent scheme. Because of the conflicting evidence, and because conflicting inferences can be drawn about when GEICO was on notice of the alleged fraud, summary judgment is inappropriate. *See Excel*, 879 F. Supp. 2d at 270-71 (finding that because, *inter alia*, one defendant frequently changed its nominal owners and submitted facially valid bills,

11

"[a] jury could find that plaintiffs did not discover the fraud because of defendants' conduct").

### C.    Scienter

Finally, the defendants argue that because Strutsovskiy has been successful in defending his use of additional treatments in the no-fault arbitration system, he cannot have the requisite scienter for fraud as a matter of law.  Docket Item 98 at 20.  But like reliance, the issue of scienter is generally not a question that should be resolved on a motion for summary judgment.  Indeed, the Second Circuit has cautioned that "[o]rdinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment . . . ."  *Golden Budha Corp. v. Canadian Land Co., N.V.*, 931 F.2d 196, 201-02 (2d Cir. 1991).  For that reason, "a court may not grant [summary judgment for] lack of scienter unless the plaintiff has failed to present facts that can support an inference of bad faith or an inference that defendants acted with an intent to deceive."  *Wechsler v. Steinberg*, 733 F.2d 1054, 1059 (2d Cir. 1984).

Here, GEICO has presented several facts that support an inference of bad faith or intent to deceive—for example, 1) Strutsovskiy's felony conviction in connection with an insurance fraud scheme involving the systematic submissions of fraudulent Medicare billing for medically unnecessary and illusory services; 2) his dire financial straits; 3) the boilerplate language in his initial examination reports which did not vary among patients; and 4) the declarations of two physicians concluding that the defendants routinely misrepresented the complexity of the problems presented by GEICO insureds whom the defendants purported to treat and routinely prescribed large amounts of narcotics and

other habit-forming drugs to GEICO insureds who did not need them.  *See* Docket Items

82 ¶ 66; 102 at 29-31.  Thus, scienter presents another issue of fact.

Further, the argument that the success of certain no-fault arbitration claims

demonstrates a lack of fraudulent scienter fails for the same reason that GEICO is

entitled to bring a claim for fraud even when it paid no-fault claims.  As GEICO argues,

and as the case law recognizes, complex insurance fraud schemes take time to detect

precisely because such schemes are designed not to be detected.  And that is why the

Second Circuit in *Mun* explicitly held that "[t]he weight of New York authority holds that

the 30-day process in § 5106(a) does not constrain later insurer actions seeking

recovery for fraud."  751 F.3d at 101.  So just as paying claims will not preclude an

issuer from bringing a later lawsuit for fraud, expedited arbitration determinations—with

"limited or non-existent" discovery—do not preclude such lawsuits.[6]  *Id.*

## III.    PRELIMINARY INJUNCTION TO STAY ARBITRATION

Related to its opposition to the defendants' motion for summary judgement,

GEICO has moved for a preliminary injunction staying arbitration of unpaid claims in the

New York no-fault insurance system.  Pending the disposition of GEICO's declaratory

judgment claim, it seeks to 1) stay any and all pending no-fault insurance collection

arbitrations that have been submitted by or on behalf of the defendants, 2) enjoin the

defendants from commencing further no-fault insurance collection arbitrations, and 3)

enjoin the American Arbitration Association from accepting the filling of any arbitration

---

[6] Insofar as the defendants may be arguing that New York no-fault arbitrations preclude GEICO's fraud claims on the basis of res judicata or collateral estoppel, the Second Circuit has held to the contrary.  *See Mun*, 751 F.3d at 101.

demand by or on behalf of the defendants involving GEICO.  Docket Item 100-1 at 5.

Although the issue was not directly before him, Judge Schroeder nonetheless observed

in his R&R that a claimant has the right to compel arbitration of unpaid claims, but that it

is common for federal courts to stay such arbitration where, as here, a plaintiff seeks a

declaratory judgment that a defendant has no right to payment of pending claims.

Docket Item 96 at 12.  This Court agrees and finds that the no-fault arbitrations of the

unpaid insurance claims should be stayed.

### A.     Irreparable Harm

"Irreparable harm means injury for which a monetary award cannot be adequate

compensation."  *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (internal quotation

omitted).  As GEICO notes in its motion to stay arbitration, multiple federal and state

courts have concluded that wasting time and resources in arbitrations that might result

in awards inconsistent with future judicial rulings constitutes irreparable harm sufficient

to stay arbitration.  For example, in *Elzanaty*, the Eastern District of New York found that

> there is a concern . . . with wasting time and resources in an arbitration with
> awards that might eventually be, at best, inconsistent with this Court's ruling,
> and at worst, essentially ineffective. . . .   [A]llowing a large number of
> proceedings to be heard by a mix of arbitrators, each of whom will likely
> come to their own independent and potentially contradictory conclusions,
> will result in harm to [the plaintiff-insurer] from which it cannot recover.

929 F. Supp. 2d at 222.

*Elzanaty* involved plaintiff-insurers suing defendant-healthcare-providers for a

declaratory judgment that the defendant-providers were not entitled to collect on any of

their pending no-fault insurance billing.  *Id.* at 204-05.  The defendant-providers had

commenced arbitration on their pending no-fault insurance claims and then moved to

compel arbitration of those claims.  *Id.* at 205-06.  The court found that the defendant-

14

providers could compel arbitration of the unpaid claims but granted the plaintiff-insurers' motion to stay. *Id.* at 217-22. ("There is no doubt that staying all pending and future arbitrations is the most economic result.").

Similarly, in *Excel*, the same court found that the defendants could compel arbitration of unpaid no-fault insurance claims under Section 5106 but stayed such arbitration pending the disposition of the plaintiff-insurers' declaratory judgment action. 879 F. Supp. 2d at 262-64. As in *Elzanaty*, the court concluded that "[p]ermitting these individual claims to proceed to arbitration while [plaintiffs'] claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case." *Id.* at 264.

Likewise, several New York state courts have stayed no-fault insurance arbitrations under similar circumstances. *See, e.g.*, *Autoone Ins. Co. v. Manhattan Heights Med., P.C.*, 899 N.Y.S.2d 57 (Sup. Ct., Queens Cty. 2009) ("The plaintiffs have shown that the issuance of a preliminary injunction is necessary to prevent the repetitive litigation and arbitration of numerous No Fault claims for reimbursement by medical providers where the insurers raise the same defense of fraudulent incorporation."); *St. Paul Travelers Ins. Co. v. Nandi*, 841 N.Y.S.2d 823 (Sup. Ct., Queens Cty. 2007) ("in view of the multiplicity of lawsuits and the possible inconsistent outcomes in the absence of an injunction, plaintiff has established the elements of irreparable injury and the balancing of the equities in its favor").

The defendants cite *Allstate Insurance Company v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 Fed. App'x 716 (2d Cir. 2017) (summary order), and argue that the Second Circuit's summary order in that case suggests that

the harm here is not irreparable.  Docket Item 104 at 15-16.  But summary orders from

the Second Circuit have no precedential effect precisely because they are "summary"—

i.e., without enough factual detail for a court to know whether or not the precedent might

apply to the facts before it.  CTA2 Rule 32.1.1(a) ("Rulings by summary order do not

have precedential effect."); *see Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011)

("[T]he rationale underlying [Rule 32.1.1] is that such orders, being summary, frequently

do not set out the factual background of the case in enough detail to disclose whether

its facts are sufficiently similar to those of a subsequent unrelated case to make our

summary ruling applicable to the new case.")  Indeed, *Harvey* provides only limited

information about the facts in that case, and so this Court cannot meaningfully compare

the facts and circumstances giving rise to the summary order with those in the case at

bar.  *See id.*  Therefore the Second Circuit's finding in *Harvey* that the plaintiffs failed to

establish the irreparable harm necessary for a preliminary injunction does not color the

analysis here.

### B.    Sufficiently Serious Questions and Balance of Hardships

To be entitled to a stay of arbitration, GEICO also must establish sufficiently

serious questions going to the merits and a balance of hardships tipping decidedly in its

favor.  *Kamerling*, 295 F.3d at 214.[7]

In his R&R, Judge Schroeder found that GEICO alleged sufficient facts to

support its claim of fraud.  Docket Item 96 at 13-14.  The defendants do not appear to

---

[7] A party could instead show a likelihood of success on the merits.  *Kamerling*,
295 F.3d at 214.  But because this Court finds sufficiently serious questions going to the
merits and a balance of hardships tipping decidedly in favor of granting the stay, there is
no reason to address the likelihood of success, and this Court does not do so.

contest that specific finding in their objections.  *See* Docket Items 98, 98-1.  In any

event, this Court has conducted its own review of the facts GEICO alleged, *see supra*

II.C; agrees with Judge Schroeder; and finds that GEICO's allegations raise at least a

serious question about a scheme of fraudulent activity.  For that reason, GEICO has

raised sufficiently serious questions going to the merits.

As the court in *Elzanaty* noted with respect to the similar claims in that case, "the

issuance of a preliminary injunction will not unduly cause hardship to any of the

defendants, but, to the contrary, all parties will benefit from having the issue of

fraudulent incorporation determined in one action."  *Elzanaty*, 929 F. Supp. 2d at 222

(quoting *Autoone Ins.*, 899 N.Y.S.2d 57, at *3).  Like the defendants in *Elzanaty*, the

defendants here "will benefit from the stay if [they] ultimately prevail[] in this matter

because [they] will be entitled to the collection of interest at a rate of two percent every

month that the No-Fault payments are overdue."  *Id.*; *see* 11 N.Y.C.R.R. § 65-3.9(1)(a)

("All overdue mandatory and additional personal injury protection benefits due an

applicant or assignee shall bear interest at a rate of two percent per month, calculated

on a pro-rata basis using a 30-day month.").  So the balance of hardships indeed tips in

favor of the stay.

Because GEICO has demonstrated irreparable harm, has raised sufficiently

serious questions going to the merits, and has shown that the balance of hardship tips

decidedly in its favor, this Court grants GEICO's motion for a preliminary injunction to

stay the pending arbitrations and to enjoin the defendants from filing any additional

arbitrations.  And for the same reasons, this Court denies summary judgement on the

defendants' cross-claim for payment of pending no-fault claims.

## CONCLUSION

For the reasons stated above, and for the reasons stated in Judge Schroeder's R&R, this Court ACCEPTS the R&R, Docket Item 96; DENIES summary judgment on the defendants' counterclaim for payment of outstanding no-fault claims, attorney fees, and interest, Docket Item 74; and DENIES in part the defendants' motion for summary judgment on the claims raised in the complaint, Docket Item 74. Because of the stipulation between and among GEICO and defendants Hirsch and VascuFlo, the Court GRANTS in part the defendants' motion for summary judgment insofar as the complaint alleges RICO, common law, and declaratory judgment claims based upon allegations that the defendants' predecessor medical practice was owned and controlled by Hirsch and VascuFlo, Docket Item 74. Finally, the Court GRANTS the plaintiff's motion for a preliminary injunction to stay the arbitrations of unpaid claims, Docket Item 100.

SO ORDERED.

Dated:      October 26, 2017
            Buffalo, New York


                                          *s/Lawrence J. Vilardo*
                                          Lawrence J. Vilardo
                                          United States District Judge